Case No. 21-16852
Consolidated with
Case No. 22-15775

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Johnny Burris,

        Appellant,

    vs.                    No. 21-16852/22-15775

JP Morgan Chase & Company, et al.    USDC AZ Case No. CV-18-03012

      Respondent

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

## APPELLANT'S CONSOLIDATED OPENING BRIEF
_____

**FOR THE APPELLANT:**
Kevin Mirch SBN 106973
Marie Mirch SBN 200833
1180 Rosecrans Street #104-552
San Diego, CA 92106
(619) 501-6220

# TABLE OF CONTENTS

I.     JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     a.    Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     b.    Timeliness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II    ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI   LEGAL ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     a.    Fundamental fairness standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     b.    Spoilation of Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     c.    Termination Pursuant to FRCP Rule 37(e)(2) . . . . . . . . . . . . . . . . . 11

     d.    Judicially Appointed Experts (Fed. R. Evid. 706). . . . . . . . . . . . . . . 14

           1.    Appointment of an Independent Expert (Fed. R. Evid. 706(a)). 14

           2.    APPOINTED EXPERT'S SCOPE: Expert Process, Duties and Testimony (Fed. R. Evid. 706(b)). . . . . . . . . . . . . . . . . . . . . . 15

           3.    Expert compensation must be shared "proportionately" by the parties (Fed. R. Evid. 706©). . . . . . . . . . . . . . . . . . . . . . . . . . 16

4. Parties may chose their own expert separate from the appointed expert (Fed. R. Evid. 706(e)) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

e. Due Process requires Burris be given the right to cross examine the Independent Forensics Expert. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

f. Other Rules of Evidence & Procedure apply to terminating sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1. Other Rules of Evidence apply. . . . . . . . . . . . . . . . . . . . . . . . 18

2. Testimony must be made under oath. . . . . . . . . . . . . . . . . . . . 19

3. Findings of Fact and Conclusions of Law. . . . . . . . . . . . . . . 20

g. Excusable neglect for late filed documents. . . . . . . . . . . . . . . . . . . 20

VII ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

a. Error: Findings of Fact and Conclusions of Law. . . . . . . . . . . . . . . 22

b. Error: Failing to qualify the District Court's expert and the underlying information contained in his Report. . . . . . . . . . . . . . . . . . . . . . . . . . 25

c. Error: The Court disallowed depositions, interrogatories & evidentiary hearing of the Court's expert. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

d. Error: Failing to set an evidentiary hearing. . . . . . . . . . . . . . . . . . . 27

e. Error: The District Court refused to allow "its expert" to be deposed or otherwise provide sworn testimony. . . . . . . . . . . . . . . . . . . . . . . . . . 29

f.   Error: The District Court did not consider Burris' sworn declaration.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

g.   Error: JPMC is estopped from arguing that Burris destroyed and/or

deleted files since it instructed him to delete his computer documents.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

h.   The District Court erred in finding Burris did not dispute the tactual

findings in the report

1.   Error: District Court finding that Burris did not address and/or

dispute JPMC's Sanction arguments. . . . . . . . . . . . . . . . . . . . 31

2.   Error: Requiring Burris to provide patently improper personal

computer files is error and an abuse of discretion. . . . . . . . . . 34

3.   Error: The District Court erred finding that the day after the

District Court ordered Burris to submit devices and accounts he

deleted relevant files. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

4.   Error: The District Court erred by finding that Burris improperly

reset six personal iPhones . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

5.   Error: The District Court erred in not recognizing admissions in

the Peak Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

6.   Error: The District Court erred in concluding that Burris

iv

improperly moved computer files into the recycle bin. . . . . . . 42

7.    Error: The District Court erred in jumping to a conclusion that Burris did something wrong because he ran Bleachbit which had a feature called "Chaff". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

8.    Error: The District Court found that Burris did not produce the second Dell Computer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

9.    Error: The District Court erred in finding that Burris did not produce his text messages: . . . . . . . . . . . . . . . . . . . . . . . . . . 46

10.   Error. Burris did not "wipe" jump drives. . . . . . . . . . . . . . . 47

g.    The District Court erred in finding that Burris acknowledged that he had engaged in the conduct described in the Court expert's Report.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

h.    The District Court's order was excessive and went beyond the scope of the protective order ::. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

I.    The sanction of dismissal was improper . . . . . . . . . . . . . . . . . . . . . . . 52

VIII   APPEAL OF ORDER AWARDING FEES AND COSTS. . . . . . . . . . . . . . 54

a.    Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

b.    Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

1.    The District Court did not have jurisdiction to impose fees as

further sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

2.  Authority for award of attorneys' fees  . . . . . . . . . . . . . . . . . 57

3.  JPMC did not present any valid legal authority for an award of
    attorneys fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

4.  Fees were not available under FRCP 37(e). . . . . . . . . . . . . . . 58

5.   Fees were not available under FRCP 37(a)-(d) or (f)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

6.  Fees are not available under FRCP 37(b)(2)  . . . . . . . . . . . . . 60

7.  Fees are not available under the Court's inherent authority
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

8.  The fees requested are not reasonable  . . . . . . . . . . . . . . . . . . 62

9.  The fees awarded  are excessive. . . . . . . . . . . . . . . . . . . . . . . . 64

    A.  Relevant time period for sanctions motion -
    7.9.21-8.17.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

    B.   Fees incurred after order of terminating sanctions . . . . . . 66

IX    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 71

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

CERTIFICATE OF E-SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

# TABLE OF AUTHORITIES

## <u>CASES:</u>

*Ahanchian v. Xenon Pictures, Inc.* 624 F.3d 1253, 1258-1259 (9th Cir. 2010) . . . 21

*Allison v. McGhan Med. Corp.*,184 F.3d 1300, 1311 n. 10 (11th Cir. 1999) . . . . 17

*Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Arizona Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1250 (9th Cir. 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) . . . . . . . . . . . . . . . . . . . 23

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61,62

*Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996) . . . 21

*Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993) . . . . . . . . . . 18

*Dennis v. Chang*, 611 F.2d 1302, 1308 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . 62

*Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334 (9th Cir.1985) . . . . . . . . . . . . . 7

*G.K. Las Vegas Lid. Partner. v. Simon Prop. Group*, 671 F. Supp. 2d 1203, 1207 (D. Nev. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*Habib v. General Motors Corp.*, 15 F.3d 72, 75 (6th Cir.1994) . . . . . . . . . . . . . . 22

viii

*Hall v. Baxter Healthcare Corp.*,947 F. Supp. 1387, 1392 n. 8 (D. Or. 1996) . . . 18

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983 . . . . . . . . . 62

*Howard v. Walker*, 406 F.3d 114, 128 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 17

*Hugler v. Southwest Fuel Mgmt., Inc.*, Case No. 5:18-cv-00420-JGB (SHK), 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Joint Eastern and Southern Dist. Asbestos Litig.*, 151 F.R.D. 540, 545 (E.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Phenylpropanolamine (PPA) Products Liability Litigation,460* F.3d 1217 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir. 1987) . . . . . . . . . . . 63

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) . . . . . . 62, 63

*Kyle v. Campbell Soup Co.*, 28 F.3d 928, 930 (9th Cir. 1994) . . . . . . . . . . . . . . . . 7

*Leon v. IDX Systems Corp.* (9th Cir. 2006) 464 F.3d 951 . . . . . . . . . . . . . . . . . . . 9

*Malone v. U.S. Postal Serv.,* 833 F.2d 128 (9th Cir. 1987) . . . . . . . . . . . . . . . . . 9,10

*Meador v. Macy's Corporate Servs.*, 2016 U.S. Dist. LEXIS 128163 (D. Haw. Aug. 26, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Morales v. City of San Rafael*, 96 F3d 359, 363 (9th Cir 1996) . . . . . . . . . . . 71, 72

*Newberry v. County of San Bernardino*, 750 Fed.Appx. 534, 537 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 n. 5 (9th Cir. 1984) . . . . 7

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 21

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P' ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Porter v. City & Cty. of San Francisco* (N.D.Cal. Sep. 5, 2018, No. 16-cv-03771-CW (DMR)) 2018 U.S.Dist.LEXIS 151349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Reddy v. Precyse Solutions LLC*, 2015 U.S. Dist. LEXIS 79352 (E.D. Cal. June 18, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1063 n. 3 (9 . . . . . . . . . . . . . . . . . . . . . . . . 51

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 21

*S.E.C. v. First Pacific Bancorp,* 142 F.3 1186 (9th Cir. 1998) . . . . . . . . . . . . . . . . 20

*Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, at 1385 (9th Cir. 1984) . . . . . . . . 63

*Spencer v. Lunada Bay Boys* 806 F.App'x 564, 568 (9th Cir. 2020) . . . . . . . . . . . 59

*Townsend v. Ihde,* 2015 U.S. Dist. LEXIS 1496 (D.Mon. Jan. 7, 2015) . . . . . . . . 60

*United Nat'l. Ins. Co. v. R&D Latex Corp*., 242 F. 3 . . . . . . . . . . . . . . . . . . . . . . . . 56

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Kitsap Physicians Serv*., 314 F.3d 995 (9th Cir. 2002) . . . . . . . . . 8

*United States v. McConney*, 728 F.2d 1195 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . 7

*United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906 (9th Cir. 1986) . . . . . . . . . 10

*United States v. Town of Colorado City, Ariz*., 2014 U.S. Dist. LEXIS 103501, 2014

x

WL 3724232, at *7 (D. Ariz. July 28, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) . . . . . . . 10, 11

*Youngevity Int'l v. Smith* (S.D.Cal. July 27, 2020, No. 3:16-cv-704-BTM-JLB) 2020 U.S.Dist.LEXIS 227170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

## STATUTES:

15 U.S.C. §78u-6(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §1514A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C.A. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER:

1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 37, at 1194 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Article III, Section 1, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed. R. Evid. 603. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Fed. R. Civ. P. 37(e), Adv. Comm. Notes to 2015 Amendment . . . . . . . . . . . . . 13,60

Fed. R. Civ. Proc. Rule 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Evid. 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

xi

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,23,25

Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,23, 25

Fed. R. Evid. 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16,18

Fed. R. Evid. 706(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15,18

Fed. R. Evid. 706(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Evid. 706© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

Fed. R. Evid. 706(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,23

Federal Rule of Civil Procedure 6(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21

FRCP 37(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,54-57, 62

FRCP 37(b)(2)© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57,60

FRCP 37(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,59,60

FRCP 37(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11,54,58,60

FRCP Rule 37(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,23,25,60-62

FRCP Rule 37(e)(2)© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,60

Merriam-Webster Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Wright Miller, 29 Fed. Prac. Proc. Evid. § 6303 . . . . . . . . . . . . . . . . . . . . . . . 18

# I.

## JURISDICTION

### a.  Subject Matter Jurisdiction

The District Court had jurisdiction pursuant to 28 U.S.C. §1331, 18 U.S.C. §1514A and 15 U.S.C. §78u-6(h).  Appellate Court jurisdiction is pursuant to 28 U.S.C.A. §1291.

### b.  Timeliness

An order granting terminating sanctions against Appellant Johnny Burris ("Burris") and Judgment was entered on October 7, 2021.  *I-ER[1]-23-55.*  Burris filed a notice of appeal on November 2, 2022. *VI-ER-1283.*  Judgment on Costs was initially entered on February 18, 2022. *I-ER-21.*   On May 19, 2022 the District Court entered an Order Awarding attorneys fees of $296,490.50 and amended the award of costs, taxing costs of $66,973.62.  *I-ER-3-20.*   Amended Judgment on Costs was entered on May 20, 2022.  *I-ER-2.*  Burris filed a notice of appeal regarding the fees and costs on May 20, 2022.  *VI-ER-1281.*  The appeals are timely.

*///*

---

[1] "ER" refers to the Excerpts of Record filed concurrently with this brief.

1

## II

## ISSUES

Did the District Court err in granting terminating sanctions pursuant to FRCP 37(e) against Burris?

Did the District Court deny due process and err in adopting the Findings of Fact contained within the unauthenticated unsworn Memorandum of Findings from the Independent Forensics Expert?

Did the District Court err by denying Burris' Motion to file late exhibits?

Did the District Court err in awarding fees and costs?

## III

## STATEMENT OF THE CASE

Johnny Burris (Burris) was a successful JPMC financial advisor practicing in Phoenix, Arizona. *VI- ER-1262 ¶10.* Burris' "book of business" exceeded $100,000,000. Burris was terminated in November 2012 after he refused to violate his fiduciary duty. *VI-ER-1270 ¶¶40-41.* The operative facts all occurred in 2011 and 2012. A full FINRA arbitration involving all relevant ESI was concluded in 2014. *VI-ER-1123-1130.* Burris also filed a whistleblower claim in April 2013 with the Occupational Safety and Health Administration (OSHA). In January 2017 the OSHA Administrator made a ruling in Burris' favor. *III-ER-698 at n. 5.* Over this decade of

2

investigations and hearings, Burris backed up and produced hundreds of thousands of pages of potentially relevant ESI. *III- ER-453 ¶10.*

Thereafter, Burris brought this whistleblower action and asserted the following claims against Defendants: (1) discrimination in violation of §806 of the Sarbanes-Oxley Act of 2002); and (2) discrimination in violation of §922 of the Dodd-Frank Act of 2010 (*VI- ER-1275-1278* ¶¶ 54-67.) Since then, there is no new documentary evidence except: (1) the sanction documents from the 2021 forensic examination; (2) 2019-2020 expert witness reports commenting on 2011 to 2012 events; (3) Plaintiff's damage calculations; and (4) Defendant's expert rebuttal thereof. *IV-ER-554.*

Burris was never the subject of any prior motion for discovery sanctions. He was not compelled to provide equipment for forensic imaging; he did so voluntarily. He also relied on his counsel to cull, sort, and produce the relevant documentation for his lawsuit. Burris provided all the documents necessary for imaging. Realizing that it could not overcome Burris' whistleblower allegations, JPMC sought dismissal based on a spoilation theory. *IV-ER-714- VI ER 1145.* The allegedly spoiled evidence was computer files[2]. *Id.*

---

[2]It should be noted that JPMC has paid the SEC and CFTC $125 million civil penalty for not properly retaining their own electronic records.

3

The District Court approved the appointment of an allegedly "independent" expert to determine whether Burris had destroyed potentially relevant ESI which was not otherwise not retrievable. *VI-ER-1209-1210*. The expert was not independent as he was picked and paid by JPMC whose attorney's wrote part of his report findings.

Initially, the Court's expert did not opine as to whether the computer files were "retrievable". JPMC submitted additional questions and information thereby soliciting an "irrevocably lost" opinion. *III-ER-734-774*. Once the "irrevocably lost" opinion was received, JPMC filed its sanctions motion. Burris opposed the motion by providing a sworn declaration which explained how he "backed up" computer files consistently by saving the same onto new computer equipment. Because he meticulously maintained his computer files, Burris was able to provide 121,516 pages of ESI. *IV-ER-568*. In response to the motion for sanctions and "Updated Memorandum of Findings," Burris provided a sworn declaration explaining how the ESI was backed up, maintained and provided to JPMC. Burris also provided a twenty eight page chart that showed where each of the computer files was located. *IV-ER-568-590; III- ER- 402-430.* Thereafter, Burris asked to question the court's expert

---

https:www.sec.gov/news/press-release/2021-262; https://cftc.gov/PressRoom/PressReleases/8470-21. JP Morgan admitted to the fact they did not retain their own electronic records. *II-ER-119.*

by deposition or during an evidentiary hearing. The court refused that request even though its expert's Report was not signed under oath or authenticated in compliance with Fed. R. Evid. 901(a). *III-ER-275-305,306-309.*

The District Court prohibited any testimony under oath and subject to cross examination. The court justified its decision claiming that a one hour deposition and 10 interrogatories would be too costly. *III-ER-284:6-22,285:6-14.* The actual reason was that the appointed expert was not "independent" and could not sustain his findings upon Burris' cross examination. *VI-ER-1209¶2.1.* JPMC "picked" and "paid" the appointed expert instructing him on which Burris questions to answer. *Id., V-ER-1032;III- ER- 280:23-281:4*

Despite these limitations, the court adopted its expert's report findings of fact and imposed terminating sanctions. *1-ER-24-55.* The terminating sanctions were improper as there was no spoilation of evidence. *V-ER- 872:24-25, "Counsel I did not destroy any relevant ESI"), IV-ER-568-590*, *III- ER- 402-430.*

The two appeals of the Order granting terminating sanctions and the Orders granting fees and Amended Judgment on Taxation of Costs have been consolidated by this Court.

5

**IV**

**SUMMARY OF ARGUMENT**

The District Court erred in entering terminating sanctions against Burris by adopting as Findings of Fact of its allegedly Independent Forensics Expert. The District Court's expert was not independent as he was picked and paid for by JPMC. Burris was not allowed to question the District Court's expert under oath. The District Court's expert did not execute his Report under penalty of perjury. The Report was not authenticated under Fed. R. Evid. 901(a). Burris was denied basic due process rights. The only competent evidence before the court was the sworn Declaration of Mr. Burris which the court ignored. The court found that Burris did not dispute the Report findings, yet Burris' declaration established that the relevant ESI was not destroyed or was available from backed up files transferred to new computer equipment.

The District Court further erred in awarding fees against Burris as an additional discovery sanction. The court had no legal authority to award fees in addition to the underlying dismissal sanction.

///

///

6

# V

## STANDARD OF REVIEW

The abuse of discretion standard of review applies to the following (1) district court's denial of an extension of time pursuant to FRCP 6(b)- <u>Kyle v. Campbell Soup Co.</u>, 28 F.3d 928, 930 (9th Cir. 1994); (2) imposition of spoliation sanctions; evidentiary rulings - <u>Paddack v. Dave Christensen, Inc.</u>, 745 F.2d 1254, 1258 n. 5 (9th Cir. 1984) ; and (3) award of attorney's fees- <u>Ass'n of Cat Water Agencies v. Evans</u>, 386 F.3d 879, 883 (9th Cir. 2004). Accordingly, the Court will reverse where the district court applied the incorrect legal rule or its application of the law to the facts was: (1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the record. <u>United States v. Hinkson</u>,585 F.3d 1247, 1262 (9th Cir. 2009).

The district court's factual findings, including bad faith and prejudice, are reviewed for clear error. <u>Id.</u>; see also <u>Fjelstad v. Am. Honda Motor Co.</u>,762 F.2d 1334, 1337 (9th Cir.1985) . The district court's selection of the applicable legal standards is reviewable de novo. <u>United States v. McConney</u>, 728 F.2d 1195, 1200-01 (9th Cir. 1984).

# VI

# LEGAL ANALYSIS.

### a. Fundamental fairness standard.

The rules of evidence are subject to a "fairness" standard. Fed. R. Evid. 102 provides:

> These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.

These proceedings were <u>not</u> fairly administered. Burris was not allowed to cross examine the court's expert that was chosen and paid for by JPMC. Moreover, the court's expert was not required to provide his Report under penalty of perjury. Whereas, Burris did provide a detailed declaration under oath contesting the court expert's Report. This is unfair.

### b. Spoilation of Evidence.

The district court relied on FRCP 37(e)(2) in sanctioning Burris because it "specifically contemplates the imposition of sanctions based on loss of ESI". *I- ER-41*. Spoliation is the destruction or significant alteration of evidence, or the failure to preserve [evidence,] . . . in pending or reasonably foreseeable litigation. <u>United States v. Kitsap Physicians Serv</u>., 314 F.3d 995, 1001 (9th Cir. 2002)). The applicable

8

standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence. Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015).

Before a district court imposes the sanction of dismissal, it must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995); Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987). Where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive. Adriana International Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). Factor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal. Malone, supra at 132. The harsh sanction of dismissal must be supported by a finding of "willfulness, fault, or bad faith." Leon v. IDX Systems Corp. 464 F.3d 951 at 958 (9th Cir. 2006) . The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." Malone, supra

at 132. (quoting United States v. Nat'l Med. Enters., Inc.,792 F.2d 906, 912 (9th Cir. 1986). A court is required to consider a less onerous remedy than terminating sanctions. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1228 (9th Cir. 2006).

Moreover, due process concerns require a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threaten[s] to interfere with the rightful decision of the case." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 591 (9th Cir. 1983); Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir. 1982).

Terminating sanctions must be supported by admissible evidence. U.S. ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 243 (S.D. Cal. 2015) (noting terminating sanctions "must be supported by some credible evidence, not implications and innuendo".)"A request for sanctions is a serious matter for all involved. The foundation for a motion for sanctions must be solid." Zimmerman AG & Cattle Co. v. Nau Country Ins. Co. (D. Mont., Aug. 1, 2019, CV 18-5-BLG-TJC) [pp. 3].  IN the present case, the Report findings of fact are not admissible evidence subject to cross examination.

**c.**     **Termination Pursuant to FRCP Rule 37(e)(2)**

Rule 37(e)(2) authorizes the following sanctions if the party that was supposed to have preserved the ESI "acted with the intent to deprive another party of the information's use in the litigation":

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

© dismiss the action or enter a default judgment.

"A terminating sanction, [under Rule 37(e)(2)©,] whether default judgment against a defendant or dismissal of a plaintiff's action, [however,] is *very severe*." Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). Dismissal is a permissible sanction only when the deception relates to the matters in controversy, and because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances. Raiford v. Pounds, 640 F.2d 944, 945 (9th Cir. 1981), Wyle v. R.J. Reynolds Industries, Inc. supra at 589 (9th Cir. 1983) .

The moving party has the burden "to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to its cause." United States v. Town of Colorado City, Ariz., 2014 U.S. Dist. LEXIS 103501, 2014 WL 3724232, at *7 (D.

11

Ariz. July 28, 2014). The absence of evidence must be prejudicial to the party alleging spoliation of evidence. Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 627 (C.D. Cal. 2013).

Rule 37(e) requires the following four requirements be met before sanctions may be imposed: "(1) whether the information qualifies as electronically stored information ('ESI'); (2) whether the ESI is 'lost' and 'cannot be restored or replaced through additional discovery'; (3) whether the ESI 'should have been preserved in the anticipation or conduct of litigation'; and (4) whether the responding party failed to take reasonable steps to preserve the ESI." Colonies Partners, L.P. v. Cnty. of San Bernardino, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020) (quoting Fed. R. Civ. P. 37(e)). If those criteria are met, and the reviewing court finds there is "prejudice to another party from [the] loss of the [ESI]," the court may "order measures no greater than necessary to cure the prejudice." FRCP 37(e)(1).

With respect to the second element, "whether the ESI is 'lost' and 'cannot be restored or replaced through additional discovery', the moving party has the burden to show that the evidence was in fact lost and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "A party must show by **competent evidence**, which could take the form of expert testimony or other evidence, that the

ESI sought was actually lost." Colonies Partners, supra, 2020 WL 1496444, at *5

(citing Hugler v. Southwest Fuel Mgmt., Inc., Case No. 5:18-cv-00420-JGB (SHK),

2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017) [emph. added] ).

Here, to support spoliation of electronic evidence by Burris, JPMC Plaintiffs rely

solely on the utra vires Memorandum of Findings from the Independent Forensic

Expert. *VI-ER-1162-1204.* However, the evidence does do not support a showing

under Rule 37(e) that the ESI has been lost and cannot be restored or placed through

additional discovery. The relevant questions are then whether the missing ESI is

relevant and whether it is irreplaceable. With respect to the irreplaceable nature of the

ESI at issue, ESI "often exists in multiple locations," see Adv. Comm. Notes to 2015

Amendment to Rule 37(e)(1), and JPMC did not proffered competent expert testimony

as to whether the missing ESI can restored or replaced with additional discovery.

JPMC did, however, provide evidence that they were seeking ESI from third party

service providers suggesting it was available from another source. *VI -ER-1222-1224.*

 Morever, Burris attested to the fact that he produced all potentionally relevant ESI and

had backed up all of the data. Burris preserved all relevant ESI. *V- ER- 872:24-25,*

*IV-ER- 568*, *III-ER- 402-430.*

**d.** **Judicially Appointed Experts** (Fed. R. Evid. 706).

    **1.** **Appointment of an Independent Expert (Fed. R. Evid. 706(a)).**

The Court may appoint an independent expert.  A Rule 706 expert, is the Court's expert.   When a Rule 706 expert is appointed  by a court, special steps must be taken to a avoid an appearance of impropriety. The Court's expert must be "independent". G.K. Las Vegas Lid. Partner. v. Simon Prop. Group,  671 F. Supp. 2d 1203, 1207 (D. Nev. 2009).    In this case, the Court approved the appointment of an expert it knew was not independent.  The expert was picked and paid for by JPMC.  Thereafter, the JPMC wrote at least part of the independent expert Report which was adopted by the court.  That Report was not subject to attestation or cross examination by Burris.  *See discussion below*.

    Rule 706(a) provides, in pertinent part,  as follows:

> (a)   APPOINTMENT PROCESS. On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

The appointed expert must be independent.    G.K. Las Vegas Lid. Partner. v. Simon Prop. Group, supra at  1207.

14

2. **APPOINTED EXPERT'S SCOPE: Expert Process, Duties and Testimony (Fed. R. Evid. 706(b)).**

An independent expert's duties and testimony are specifically defined in Rule 706(b) which provides:

> (b) EXPERT'S ROLE. The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate. The expert:
> (1) must advise the parties of any findings the expert makes;
> (2) may be deposed by any party;
> (3) may be called to testify by the court or any party; and
> (4) may be cross-examined by any party, including the party that called the expert.

Rule 706(b) requires the court to establish the process under which the appointed expert operates. The process must be in writing or determined orally during a conference attended by the parties. The writing is sometimes referred to as the Forensic Examinations Order. In this case, the Forensic Examinations Order is found in the "Second Addendum to Stipulated Protective Order". (Doc. 61.) *VI-ER -1207-1216* .

That order must discuss specific matters (e.g., depositions, trial testimony and cross-examination). G.K. Las Vegas Lid. Partner. v. Simon Prop. Group, supra at 7 (D. Nev. 2). It is undisputed that the District Court ordered that an independent expert be retained. *VI-ER-1209 at 3:14-28.* The Forensic Examination Order was excessive

15

as it required Burris to provide personal computer records designed to embarrass and intimidate him into settlement (e.g., pornography, girl friend). The District Court abused its discretion in requiring Burris to provide those computer files and undermined its appearance of independence of its Rule 706 expert.

3.  **Expert compensation must be shared "proportionately" by the parties (Fed. R. Evid. 706©)**

In order to preserve the appearance of independence, the parties are required to share the expert's compensation "proportionately". Rule 706© provides:

> ©   COMPENSATION. The expert is entitled to a reasonable compensation, as set by the court. The compensation is payable as follows:
>
> (1)   in a criminal case or in a civil case involving just compensation under the Fifth Amendment, from any funds that are provided by law; and
>
> (2)   in any other civil case, by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs.

In this case, JPMC initially bore the entire cost, but later filed a motion for attorney fees wherein the court allocated the entire cost to Burris. Thus initially and finally the expert's compensation was not borne proportionately between the parties. This was error and an abuse of discretion.

**4.** **Parties may chose their own expert separate from the appointed expert (Fed. R. Evid. 706(e))**

The parties are not confined to the appointed expert's opinion. Any party may call their own experts. Fed. R. Evid. 706(e). The court abused its discretion by dismissing the case before the parties' own experts could testify at an evidentiary hearing. Effectively, the parties' own experts were not allowed to testify, ergo violating Rule 706(e).

**e.** **Due Process requires Burris be given the right to cross examine the Independent Forensics Expert.**

The District Court should have allowed meaningful cross-examination of its expert concerning his forensics report ("Report"). Court-imposed limitations on cross-examination can violate the Confrontation Clause. See Howard v. Walker, 406 F.3d 114, 128 (2d Cir. 2005). A party is entitled to cross-examine an expert witness as to the underlying facts or bases of his conclusions. See Fed. R. Evid. 702, 705. Fed.R.Evid Rule 706 requires the court's expert to "advise the parties of the witness' findings." The court's conduct blocked the full and meaningful development of its expert's correct findings. See In re Joint Eastern and Southern Dist. Asbestos Litig., 151 F.R.D. 540, 545 (E.D.N.Y. 1993) ("[a]ll parties are entitled to receive the fullest practicable disclosure from the 706 Panel"). Moreover, the parties have the right to depose an expert witness. Allison v. McGhan Med. Corp.,184 F.3d 1300, 1311 n. 10

17

(11th Cir. 1999) ("FRE 706 requires the experts . . . are subject to depositions. . . .") (citing <u>Hall v. Baxter Healthcare Corp.</u>,947 F. Supp. 1387, 1392 n. 8 (D. Or. 1996)); <u>Wright Miller, 29 Fed. Prac. Proc. Evid. § 6303</u> ("Rule 706(a) recognizes the right to depose court-appointed experts.") The District Court abused its discretion is blocking the cross examination of its expert and subsequently adopting his Report findings.

**f.**   **Other  Rules of  Evidence & Procedure apply to terminating sanctions.**

**1.**   **Other Rules of Evidence apply.**

Appointed experts are subject to all the  Federal Rules of Evidence.  For example, all  witness testimony must be  taken under oath.  *Fed.  R.  Evid. 603*.

Appointed experts must be "qualified" under Fed. R. Evid. 702 ("knowledge, skill, experience, training, or education").  Their opinions are subject to scrutiny under Fed. R. Evid. 703 (reasonable "facts and data").  The court is the gatekeeper for  expert qualifications and  opinions.  *See* <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993).  A party has an absolute right  to cross-examine appointed  experts witnesses.  *See Fed. R. Evid. 706©.*  The court erred in blocking its expert's deposition and/or testimony at an evidentiary hearing it suggested.  *See discussion below.* The court's conduct made it a JPMC advocate.

## 2. __Testimony must be made under oath.__

The District Court's Order *VI-ER-1214* contemplated that a sworn statement

be provided by the District Court's Independent Expert:

> [GUYER[3]]
> 23    ... The
> 24    order -- order 60 specifically states that the Court may ask
> 25    Peak to submit an affidavit. And I **would like to get this in sworn form**,
>        because as
> 1    you say, **is if you do end up holding an**
> 2    **evidentiary hearing, I'm fine with doing the cross-examination**
> 3    **there,** and I would be fine with not doing the deposition. But
> 4    I'd sure like to have -- on such a critical matter, **I'd really**
> **5**    **like to have that done in sworn form.**
> 6    So I would ask that I be allowed to just propound say
> 7    ten interrogatories

*III-ER-284-285 at 12:23-13:1-7 [emph. added]*.

The appointed expert did not file a sworn affidavit attesting to his Report. He was not

required to answer interrogatories or to sit for his deposition or an evidentiary hearing.

The court's expert was protected from sworn attestation and/or cross examination. At

a minimum, this court should remand this matter for the deposition its expert on his

Report.

---

[3] Attorney Guyer represented Burris in this action.

**3.** <u>**Findings of Fact and Conclusions of Law.**</u>

There were insufficient admissible facts to order terminating sanctions. "Findings of fact" must be supported by admissible evidence. <u>S.E.C. v. First Pacific Bancorp</u>, 142 F.3 1186 (9th Cir. 1998). Fed. R. Civ. Proc. Rule 52 provides, in pertinent part, as follows:

(a) Findings and Conclusions.
...
(5) Questioning the Evidentiary Support. A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.

(6) Setting Aside the Findings. Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

The definition of "clearly erroneous" is "being or containing a finding of fact that is not supported by substantial or competent evidence or by reasonable inferences". *See Merriam-Webster Dictionary*. In this case, the findings of fact are not supported by admissible evidence.

**g.** <u>**Excusable neglect for late filed documents.**</u>

Federal Rule of Civil Procedure 6(b)(1) provides:

(1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1).

This rule, "[is] to  be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983).  Courts consider the following four factors when determining whether a late filing  was the result of excusable neglect: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004) (citing Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P' ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).

 "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts. See, Ahanchian v. Xenon Pictures, Inc.624 F.3d 1253, 1258-1259 (9th Cir. 2010).  Courts have acknowledged that illness may provide sufficient cause for delay. See e.g., Committee for Idaho's High Desert v. Yost, 92 F.3d

814, 824 (9th Cir. 1996); <u>Habib v. General Motors Corp.</u>, 15 F.3d 72, 75 (6th Cir.1994).

In this case, the court erred in not allowing Burris' Table 1 to be considered after it was late filed. That table traced the allegedly lost or destroyed computer files to other computers and/or storage devices. This is significant as Burris was being punished for following established industry standards for properly maintaining computer data. Specifically, the data was protected by regularly "backing up" computer files before transferring the same to new storage devices. The court punished Burris' attempts to protect the data by misinterpreting his conduct as nefarious. This was error as no relevant ESI files were lost. *See discussion below.*

## VII

## <u>ARGUMENT</u>

### a.  <u>Error: Findings of Fact and Conclusions of Law.</u>

The District Court erred by adopting "Findings of Fact and Conclusions of Law" without proper qualification[4] of its expert. Qualification of an expert requires

---

[4] Burris' declaration at ¶24 provides:

> 24. I agree with my lawyer's objection in the first June 2021 deposition session: "One is appointment, one is qualification. He doesn't challenge appointment. **We definitely challenge qualification. That's why we have our consulting experts**."

evidence of competency. *Fed. R. Evid. 702.* There is no sworn testimony as to the court's expert qualifications. Moreover, the expert's report was not authenticated or subject to proper judicial review before its "findings of fact" were adopted by the District Court. *Fed. R. Evid. 901(a); 703.* This judicial review is sometimes referred to as a court's gatekeeper or Daubert responsibilities.

The District Court was responsible for determining its expert's qualifications and reviewing his opinion to assure a proper factual foundation. See <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-76 (1987), Fed. R. Evid. 702; 703. The court adopted its expert's "findings of fact and conclusions of law" without considering its experts qualifications or the factual foundation for his opinion. There was no competent evidence because the District Court's expert was not required to provide a sworn affidavit, sit for his deposition and/or testify at an evidentiary hearing.

Instead, the court adopted the following findings of fact without any foundation:

**Given this backdrop, the Court adopts the undisputed facts in the expert's report and makes the following factual findings:** (1) Plaintiff performed factory resets of six personal iPhones between December 2016 and February 2021, including several resets after the [13:26]commencement of this litigation in September 2018; (2) Plaintiff used iShredder on one of his iPhones as early as August 2018 and as late as December 2020; (3) Plaintiff performed factory resets on both of the laptops he provided for imaging in this matter, with the resets likely occurring in September and October 2020; (4) Plaintiff ran Bleachbit and iShredder on the older laptop in August 2018; (5) Plaintiff ran

---

*IV-ER-578*

23

an anti-forensics feature of Bleachbit called "chaff," whereby Bleachbit creates a user defined amount of gibberish files designed to fill space on the hard drive and overwrite existing data, on the older laptop in March 2020; (6) Plaintiff again ran iShredder on the older laptop in December 2020; (7) Plaintiff attempted to deceive the forensic examiners by passing off a laptop he did not purchase until September 2020 (and which was not commercially available until June 2020) as the newer of the two laptops that was discussed during his March 2020 deposition; (8) Plaintiff purged the content of his invst4u@cox.net email account on several occasions after the initiation of this lawsuit; (9) Plaintiff moved files from the invst4u@cox.net email account into his recycle bin in May 2019 and again in February 2020; (10) Plaintiff made false representations during a December 2020 conversation related to the forensic examination, by claiming that he stopped using the invst4u@cox.net email account in 2017, because he was actually using that email address until at least February 2020 and possibly as late as August 2020; (11) Plaintiff used "wiping" software on the two USB drives he provided for forensic examination on March 16, 2021, including wiping both devices on March 15, 2021, the day before the production; (12) Plaintiff failed to preserve any of his text messages from before October 30, 2020; and (13) Plaintiff failed to provide the correct password to open an iTunes backup of his iPhone 11 created on October 30, 2018.

*I-ER-36:26-37:22.*

Adoption of these findings is error as the same are based on the court's expert's Report which is <u>not</u> authenticated, made under oath and/or subject to proper cross examination. This violated due process. These findings were authored, at least in part, by JPMC's counsel and are the basis for the court's sanction order. Without the findings, there is no basis for the sanctions imposed by the court.

**b.** **Error: Failing to qualify the District Court's expert and the underlying information contained in his Report.**

Before an expert's opinion can be considered, two things must occur: (1) the witness must be qualified as an expert; and (2) the expert's opinion must be based on legitimate information. *Fed. R. Evid. 702, 703*. Expert qualification must be established under oath in an affidavit, deposition, hearing and/or trial testimony. Qualification must be supported by competent evidence that he has sufficient "knowledge, skill, experience, training, or education" to provide an expert opinion. *Fed. R. Evid. 702*. Likewise, an expert opinion must be based on information normally relied upon by other experts in making such opinions. *Fed. R. Evid. 703*. In this case, the Court protected its expert from answering questions under oath concerning his qualifications and Report findings. The court erred in violating its Daubert gatekeeper duties.

**c.** **Error: The court disallowed depositions, interrogatories & evidentiary hearing of the court's expert.**

The District Court erred and violated Burris' due process rights by not allowing cross examination of its expert and/or on his Report findings:

    [6]    THE COURT: Okay. I appreciate that. But another
    [7]    part of the question is, let's say it's part of the record, why
    [8]    is an **expensive** and outside the discovery schedule deposition
    [9]    the answer, as opposed to you propounding additional written
    [10]   questions to Peak that they could answer in writing, or

25

[11]  alternatively, to the extent there's a **future evidentiary**
[12]  hearing, having the person testify at the hearing and have the
[13]  **parties ask questions in that forum,** which would be more
[14]  **efficient**, I think, than holding a deposition.

*III-ER-285:6-14 [emph. added]*.

The proposed deposition would not have been expensive (" ... [GUYER] [A] 60-minute deposition, which we would  do by Zoom, I don't see that as an expensive matter."). *III-ER-285:15-17.*

The requested  deposition was not "outside the discovery schedule".   On April 21, 2021, the court entered a Case Management Order which provided an expert deposition  deadline of September 24, 2021.  *VI -ER-1146 ¶3.*  As of the  August 31ˢᵗ hearing,   expert depositions were still ongoing ("We still have four expert -- we have all the expert depositions left to do, four of them.") .  *III- ER- 281:16-17.*  The court erred in finding that the proposed deposition was "outside the discovery schedule".

The court erred in finding that  unsworn question/answers could replace  formal interrogatories:

[GUYER][14]      So this is somebody who -- you know, oath is there for
[15]    a reason. It's a very important system in our system of
[16]    justice. **And I'd like to get this guy under oath**.

*III-ER-296:14-16 [emph. added]*.

The court acknowledged and questioned why the Report was not made under oath:

> [COURT]
> [10]  I'm just trying to understand why this report was
> [11]   provided in this format as **opposed to an affidavit format**, and
> [12]   whether that distinction matter.

*III-ER-293:10-12 [emph. added].*

> [5]   MR. UNGAR: I don't think this does qualify as an
> [6]   affidavit. But getting him to attest to everything under
> [7]   penalty of perjury, I do not -- I haven't had that conversation
> [8]   with him. In fact, I've never spoken with Mr. Englander, but
> [9]   my colleagues have. **And getting him to attest under oath to**
> **[10]  the veracity of what he's said is not a problem, if that's what**
> **[11]  the Court would like us to do.**

*III-ER-294:3-11 [emph. added].*

Even after JPMC's counsel agreed to the court's expert attesting to the veracity of his Report, the court adopted the expert's findings without even minimal foundation - no attestation, testimony, or cross examination.

**d.   Error: Failing to set an  evidentiary hearing.**

On July 9, 2021, Defendants filed their motion for sanctions. *IV- ER- 78- VI ER 1145.* Although it was initially filed with redactions, an unsealed version was later filed on July 28, 2021 with un-redacted excerpts of the Deposition of Johnny Burris taken on  June 11, 2021. *III-ER-622-793.* On August 26, 2021 the parties filed a Joint

27

Summary of Discovery Dispute, wherein the issue of Plaintiff's late filed Table 1 was addressed. *III-ER-306-314*. A hearing on that matter was held on August 31, 2021.

On August 31, 2021, the court disallowed Burris' request to depose the expert, justifying the same on a more "efficient" forum:

> [COURT]
> [11]    [A]lternatively, to the extent there's a future evidentiary
> [12]    hearing, having the person testify at the hearing and have the
> [13]    parties ask questions in that forum, which would be more
> [14]    efficient, I think, than holding a deposition.

*III-ER-284:11-14.*

> [1]    ... [I]f you do end up holding an
> [2]    **evidentiary hearing**, I'm fine with doing the cross-examination
> [3]    there, and I would be fine with not doing the deposition. But
> [4]    I'd sure like to have -- on such a critical matter, I'd really
> [5]    like to have that done in sworn form.

*III-ER-294:11-14 - 295:5.*

On October 7, 2021, the court entered an order on JPMC's Motion for Sanctions dismissing Burris' complaint without the previously discussed evidentiary hearing. *I-ER-24-54*. The parties' had always anticipated that the court would hold a hearing on the motion for sanctions. *VI-ER-1159*. The court erred in failing to set the evidentiary hearing prior to entering its dismissal order.

**e.**  **Error: The District Court refused to allow "its expert" to be deposed or otherwise provide sworn testimony.**

JPMC also blocked the court's expert from having to answer questions under oath:

> [UNGAR]
> [22]  ...      So I would object to interrogatories only because I
> [23]  think interrogatories are for parties, and that may be -- I
> [24[  don't know what -- Mr. Guyer's a very smart lawyer.

*III-ER-290:15-24.*

The District Court had inherent authority to require that its expert to answer questions under oath by interrogatory.  *Article III, Section 1, United States Constitution*.

**f.**  **The District Court erred in failing to consider Burris' sworn declaration.**

It is troubling that the court stated "Plaintiff [did] not seriously dispute that he deleted ESI".  *I-ER-38:16.*  Burris' declaration testimony is clearly contrary to the court's statement.  It is undisputed that Burris employed industry standards in safeguarding his computer files.  Burris "backed up" and transferred computer files to safer state of the art computers and storage devices.  These steps protected otherwise "older" files from being lost in "aged" computer equipment.  A analysis of the court's findings in light of Burris' declaration amplifies the court's error.

In its order dismissing Burris' complaint, the District Court Order (Doc 110) incorrectly states:

29

> In his response, Plaintiff does not seriously dispute that he deleted ESI... *I-ER-38:16*.

> The Court has found (and Plaintiff does not dispute) that Plaintiff deleted the ESI from six cell phones, two laptops, and two USB devices, purged his email account, and failed to preserve his text messages. Although Plaintiff disputes whether the deleted ESI was potentially relevant-an issue that is addressed in Part 11.D.2.b below-everybody agrees that it is gone. *I-ER-44:9-10*.

These are false statements to which Burris does not agree. Burris did dispute destruction of ESI. He submitted a declaration, deposition testimony and Table 1 all which prove by competent evidence that he did not destroy any "potentially relevant ESI" information. *V-ER-872:24-25, IV-ER-568-590, III-ER-402-430.* Burris provided a detailed 22 page declaration supporting his opposition to JPMC's Motion for Sanctions. The Declaration specifically addresses JPMC's arguments explaining counter-arguments. *IV-ER-568-590.*

### g.  Error: JPMC is estopped from arguing that Burris destroyed and/or deleted files since it instructed him to delete his computer documents.

JPMC is estopped from raising a "Burris destruction of evidence" argument since it instructed Burris to delete all Company information shortly after his termination:

> 14. ... [I]mmediately after my termination, JPMC sent me a letter and confidentiality agreement instructing me to delete any information derived from JPMS sources ...

30

*VI-ER-575 at ¶14.*

JPMC is estopped from asserting that Burris destroyed its records when it instructed

him to do so.

**h.** **The District Court erred in finding Burris did not dispute the tactual findings in the report.**

**1.** **Error: District Court finding that Burris did not address and/or dispute JPMC's Sanction arguments.**

The District Court erred in finding that Plaintiff did not dispute the facts

contained in the expert report :

> Plaintiff, in turn, does not address (let alone dispute) most of the facts set forth above.

*I-ER-36:13-14.*

Burris thoroughly "addressed" and "disputed" the District Court's expert report

in his declaration. Examples are as follows:

> 1. I **backed up** and provided **121,516 pages** of potential ESI[]. This was confirmed by Teris.[] This volume of documents exceed the GB capacity of my computer so had to be backed up to external drives and to hard drives on two Dell Computers. Over 95% of this volume of documents was created in 2011-2012, and exchanged and produced by both parties by the time of the 2014 arbitration. Year after year this document cache had to be migrated to new computer media and storage. *[Footnotes omitted].*

> 41. There was **no "mass destruction of electronically stored information ("ESI")"** as claimed by JPM in its Motion, but in any event, my obligation was to "potentially relevant ESI" and that has been backed up and produced or provided access to.

16. **I do not believe the forensic examiner is correct** ... . I have never intentionally performed any "reset" my computers. See ¶¶17, 21 ("Baseless ... purging"); ¶24 ("challenge qualification"); ¶26 ("all relevant ESI ... maintained."); ¶30 ("... shocking ... expert doesn't know ... ."); ¶31 ("... .I have no idea why any files would not "properly open" for the forensic examiner.")

34. **My process** and goals in **backing up** my computer data have been (1) to retain all the potentially relevant ESI; (2) recover from a system crash, cloud network issue or a hack of some sort; (3) maintain the integrity of my client data. With those process and goals, never to my knowledge did I lose or fail to preserve relevant ESI. **This enabled me to make available for forensic collection a decade of completely backed-up ESI, including privileged communications and work product from a decade's worth of lawyers**. See ¶20 ("The phone ...  computers ...  external drives ...  flash drives ... backed up ... . I gave access to ... forensic examiner. "); ¶32 ("I backed-up and transferred ...  JMPC related document to new storage media ... .).

37. I **eliminate**, or what Mike Ungar described as "deduping", duplicative backup ESI, including relevant ESI. That is a fundamental part of storage media management and maintenance of large data caches like mine, you don't want more than two copies of large gigabites of the same exact files. **The data gets copied from a computer hard drive over to a  external drive, from an old computer onto a new computer from point A to points B, C, and D. All of the back-up ESI gets copied to the next storage media, and Windows detects it is an exact  folder copy and asks "replace" the older version so you are not left with two identical versions on the same storage media**.

38. Like anyone dealing with technology over the past ten years, my programs have run into multiple problems at separate times. I have had limited capacity on my hard drives. I have had hard drive failures. I have had viruses. I have had my email compromised. **Temporary files took up to ~ 700GB of space on my laptop**. If I would have run a wiping program, the program would have removed that data. Yet it did not. As **I emailed Teris that I had about 250MB of space out of 1 terrabyte of memory**. **After hard drive issues, computer problems, and compromised emails, I do everything I can to try and protect the integrity of my systems and any client data**.

39.     I have been making random passwords for a long time based on security recommendations. **I have provided every possible password I knew or could remember**. I tired multiple passcodes I have used in the past for one Iphone backup that Teris was trying to access but **I just do not know and cannot find the passcode.**

40.     As a practice **I rarely text**. At JPM we were **not allowed to use our personal cell phones to text company business**. After my termination from JPM **I largely retained the practice of not texting**. **I occasionally text my clients, but not about my JPM case.** I do not regularly text with attorneys because I prefer email. I occasionally texted another employee who was retaliated against by JPM, but **I screenshot and produced those materials**. **I do not draft documents on my Iphones.**

45.     With regards to **my phones**, although all potentially relevant ESI was backed up to other places, **I also never engaged in "scorched-earth destruction of the data and devices" I was ordered to produce**. I have regularly bought new iPhones. I have passed down the old iPhone to **my wife or kids**. Prior to doing so, I, my wife, a telephone center representative (whether Verizon or AT&T), **a purchaser of a phone (iPhone 11), or my kids would factory reset those phones**. **Over the prior 9 years, I have owned many iPhones**. **When someone sells, transfers, or gives an iPhone or other electronic device to someone, even a family member, as I understand it, he phone is "reset"**. **Prior to a reset, an iPhone is backed up. This is done to retain the data on a device so it can be transferred on the new phone being purchased**. That is precisely what I have had done since I first owned an iPhone and for each subsequent iPhone I have owned, usually by [m]y wife or the more qualified phone service provider. **Hence though I sold a phone, all the relevant data was transferred to the new phone before doing so.**

*IV-ER-568,576,582,583,585, Burris declaration at ¶¶1, 16, 34, 37, 38, 39, 40, 45 [emph. added].*

The District Court erred in finding that Burris did not address and/or dispute its

expert's findings or improperly destroyed computer files  and equipment in violation

of the Court's order. Clearly, Burris backed up all data in separate files before deleting the same from older equipment. At that point, the backed up files were now stored on new equipment. This is an ongoing process in any business or court that is regularly upgrading its computer equipment. To assert wrongdoing without considering Burris' processes and industry standards is error. Blocking the "court's expert" from testifying under oath about his Report findings is error. Due process required the opportunity to cross examine the expert. A thoughtful reading of the Burris' declaration provides substantial evidence to overcome JPMC's sanction motion. This case should not have been dismissed.

**2. Error: Requiring Burris to provide patently improper personal computer files is error and an abuse of discretion.**

The District Court erred in requiring Burris to provide non-relevant highly prejudicial personal information:

> 33. My understanding is and has been that of my stored ESI, only the "potentially relevant ESI" had to be preserved and produced in discovery. None of the following meet that category: **Client communications for my post-JPMC company Burris Wealth Management, pornography, communications with my wife or girl friend, personal and private financial information, communications with my various lawyers over the past decade, and any non relevant text or email (which is virtually all of my texts and emails).** It is not that I was required to turn everything over to the forensic examiner or JPMC and then they get to sift through it all. It is they never have a right to get any access whatsoever to my non-potentially relevant ESI in the first place.

*IV -ER-581 at ¶33.*

JPMC knew these private disclosures were improper as it first filed a redacted sanction motion. *IV-ER-714-733.* Nineteen days later, after Burris refused to dismiss his case, the un-redacted motion was filed. *IV-ER-694-713.* The fact that Burris provided these very personal computer files is evidence that he was not violating the court's orders and/or destroying computer files. If anything was going to be destroyed it would have been the pornography and girl friend files. Those files are prejudicial and not appropriate for public dissemination. The court should have seen through JPMC's extortive attempts to end this litigation and entered judgment pursuant to its inherent authority in favor of Burris. *See Fed. R. Evid. 403, Title III Section 1 of the United States Constitution.* Instead, the court dismissed Burris' case based on its expert's legally incompetent Report. The court's own expert was picked and paid by JPMC whose attorneys drafted part of the Report findings. This was error.

3. **Error: The District Court erred finding that the day after the District Court ordered Burris to submit devices and accounts he deleted relevant files.**

The District Court erred determining Burris did not dispute the facts in the expert's reports in finding:

> Given this backdrop, the District Court **adopts the undisputed facts in the expert's report** and makes the following factual findings:
> ...

(8)      Plaintiff purged the content of his invst4u@cox.net email account on several occasions after the initiation of this lawsuit; (9) Plaintiff moved files from the invst4u@cox.net email account into his recycle bin in May 2019 and again in February 2020; (10) Plaintiff made false representations during a December 2020 conversation related to the forensic examination, by claiming that he stopped using the invst4u@cox.net email account in 2017, because he was actually using that email address until at least February 2020 and possibly as late as August 2020; (11) Plaintiff used "wiping" software on the two USB drives he provided for forensic examination on March 16, 2021, including wiping both devices on March 15, 2021, the day before the production; ... .

*I-ER-36:26-27,37:11-13.*

Burris disputed the District Court's adopted facts as follows:

43.      JPM asserts the day after Court ordered me to submit my devices and accounts, I took some action to "delete files that hit on search terms for potentially relevant ESI" and "used software designed to destroy data to wipe a hard drive." Motion, p. 2. **On December 6, 2020, I had purchased a new Macbook Pro computer** for my wife to replace the Dell she had been using. On **December 7, 2020**, 253 items were deleted according to the Peak Forensics report, p. 17.  This was **1 day after the purchase of the MacBook Pro.** This was no deletion of troves of potentially relevant ESI, but rather **allowing my wife to have her files on her MacBook and for me to divide my files into one computer with JPM** specific data and one computer with BWM data. **My protective order never said I could not reorganize my files to better accommodate my business needs.** At the same time, Peak fails to mention the **huge number of pictures transferred the same day**, indicating the innocuous intent of data organization and management. **I did not delete relevant ESI and I did not use any software to destroy potentially relevant ESI.** As the Peak Forensic report at Ex. 4, and comparison to Table 1 shows search terms hit on a slew of completely irrelevant documents.

*IV-ER-584 ¶43*

> 51.  At Motion p. 7, JPM claimed I **deactivated and purged my invst4u@cox.net account** sometime between September 15, 2020 and October 15, 2020." My cox email account has been compromised before on or about August 8, 2018 according to CreditWise. On October 12, 2020, I received another notification that the email address was again compromised. (Attached as Ex. 3 is a true and correct copy of the notification I received). I had incredibly important attorney client communications and regulator emails held in that email address. Cox apparently is not a secure email with two factor authentication aka 2FA. Hence I thus began to use the email invst4u@icloud.com. **I migrated all the emails from invst4u@cox.net to invst4u@icloud.com.  That is how JPM has these emails**. The iCloud email has 2FA. It is not fool proof, but it is much harder to gain access since you **must have a secondary device to get a confirmation code**. This account was **closed for data protection reasons** and not some nefarious purpose.

*IV-ER-587 at ¶51.*

The District Court erred in stating that Burris admitted misconduct by not disputing that he "purged" computer files.  This statement is incorrect.  Files were only deleted after the same had been "backed up" and transferred to newer computers and storage equipment.  Burris used these industry approved methods to assure that the files would not be destroyed.   The court's interpretation of these facts is error.

### 4.    Error: The District Court erred by finding that Burris improperly reset six personal iPhones .

The District Court erred determining Burris did not dispute the facts in the expert's reports by providing:

Given this backdrop, the Court adopts the **undisputed** facts in the expert's report and makes the following factual findings: (1) Plaintiff performed **factory resets** of six personal iPhones between December 2016 and February 2021, including several resets after the [13:26]commencement of this litigation in September 2018; (2) Plaintiff used iShredder on one of his iPhones as early as August 2018 and as late as December 2020; (3) Plaintiff performed factory **resets** on both of the laptops he provided for imaging in this matter, with the **resets** likely occurring in September and October 2020; (4) Plaintiff ran Bleachbit and iShredder on the older laptop in August 2018; (5) Plaintiff ran an anti-forensics feature of Bleachbit called "chaff," whereby **Bleachbit** creates a user defined amount of gibberish files designed to fill space on the hard drive and overwrite existing data, on the older laptop in March 2020; (6) Plaintiff again ran **iShredder** on the older laptop in December 2020; (7) Plaintiff attempted to deceive the forensic examiners by passing off a laptop **he did not purchase until September 2020** (and which was not commercially available until June 2020) as the newer of the two laptops that was discussed during his March 2020 deposition;

*I-ER-36:26-28,37:1-11 [emph. added]*.

Burris disputed these findings:

43.    JPM asserts **the day after Court ordered me to submit my devices** and accounts, I took some action to "delete files that hit on search terms for potentially relevant ESI" and "used software designed to destroy data to wipe a hard drive." Motion, p. 2. On **December 6, 2020**, I had purchased a **new Macbook Pro computer** for my wife to replace the Dell she had been using. On **December 7, 2020**, 253 items were deleted according to the Peak Forensics report, p. 17. This was **1 day after the purchase of the MacBook Pro.** This was no deletion of troves of potentially relevant ESI, but rather **allowing my wife to have her files on her MacBook and for me to divide my files into one computer with JPM** specific data and one computer with BWM data. **My protective order never said I could not reorganize my files to better accommodate my business needs.** At the same time, Peak fails to mention the **huge number of pictures transferred the same day,**

38

indicating the innocuous intent of data organization and management. **I did not delete relevant ESI and I did not use any software to destroy potentially relevant ESI.** As the Peak Forensic report at Ex. 4, and comparison to Table 1 shows search terms hit on a slew of completely **irrelevant documents**.

23.     As to the forensic examiner's statement that my two USB drives showed "unused space or unallocated space where previously deleted data files would normally reside" that seems right as long as it is understood that I regularly wipe client and personal data from a drive, especially key chain jump drives. **Managing and cleaning storage media particularly to protect sensitive data is a universally recognized best practice to my knowledge.** To my mindset, the chances of undergoing a professional forensic examination must be on par with winning the lottery hence the storage maintenance apps I used like **BleachBit and iShredder** would have almost no customers if their customer base were so limited to those seeking to evade forensic exams. Instead their base would include people like me looking to maintain good health of their drives and privacy of their clients. **Google BleachBit and this is the top of the first results page: "free cache, delete cookies, clear Internet history, shred temporary files, delete logs, and discard junk you didn't know was there."**

25.     As to the forensic examiner's statement that **"BleachBit is advertised as a privacy solution that erases many tracks left by a user and has features specifically designed to thwart forensic examinations,"** I can't find that in their advertisements. More importantly, I have been using BleachBit and iShredder for years **long before I knew I would be in federal court, much less subjected to a rare forensic examination.** If there were such ads, they would have been irrelevant to me when I installed it. I use it to protect unintended disclosure of sensitive client data, to correct problems with sluggish computers and to prevent hard drive failures. **I run BleachBit on a regular basis, sometimes weekly and sometimes multiple times a day. It is used to delete old and junk files**.

26.     **Neither BleachBit, iShredder or other storage maintenance apps I've used over the past decade will "destroy" potentially relevant ESI unless that is the objective or through recklessness, neither of which apply to me.** As I repeated over Ulmer demands that I stop repeating the central issue to be determined by the sanctions motion, **"all relevant ESI has been maintained. If you look at May 26, 2019, the data is exactly the same as it is on May 8, 2020. So if I didn't have that data backed up, you wouldn't have seen a second deletion or an alleged second deletion on February 2020, Counsel."**

30. The forensic examiner declined to comment on this statement by my lawyer in the transcript provided to the forensic examiner: "I'm also going to point out that September 30th of 2020, that was the **automatic install day of -- date of Windows Version 10** which **automatically resets computers, and it's shocking that this expert doesn't know things like that.** It's absolutely shocking." Additionally, those of us with multiple computers do the version upgrades as we use the computers, such that I would on or near the date of upgrade release install Windows 10 on my primary computer, then within a week or two on my secondary computer when I turned to it, as when turned on it will automatically alert to the available fix or upgrade. I always back-up the computer I am upgrading, then reload my data, apps and software, a simple process. So when the FE says that on "October 9, [I] installed wiping and tracks-erasing **software BleachBit** on [my] XPS 91-F laptop, I would **re-install existing software that I use on a regular basis, and/or on a separate or new drive, such as on my new Dell at about that time**.

59. My knowledge about the integrity and appropriate uses of storage management software is that of a consumer. I selected and purchased Windows 10, BleachBit, and iShredder by simple Google research. Attached are documents of the kind I typically view in the regular course of my business:

Exhibit 1.1 is an official Microsoft schedule of Windows 10 upgrades and fixes which show September 30, 2020 was the date of the major Windows 10 operating system upgrade. It also shows the October 13, 2020 security fix upgrade. Exhibit 1.2 is an official Microsoft problem

solving site showing that the September 30, 2020 Windows 10 upgrade erased files and cause problems for those who, unlike me, do not take the precaution of backups. Ex. 1.3 shows that the iPhone 6 that I had was released in 2014, and thus that all of my  subsequent iPhones were acquired long after my employment and arbitration had terminated. Ex. 1.4 shows that the predominant uses of BleachBit are for storage media maintenance  and protection of sensitive information, not evading forensic examination. Ex. 1.5 shows that iShredder is also a prudent storage media maintenance and sensitive information protection application.

*IV-ER-584, 577, 580, 590 at ¶¶43, 25, 26, 30 & 59.*

Burris' explanation is detailed and contrary to the Report findings.  Burris' deposition of the "court's expert" would have ferreted out these inconsistencies, establishing industry standards instead of misconduct.  It was error for the court to block its expert's deposition.  The court's "purged" findings are error.

### 5. Error: The District Court erred in not recognizing admissions in the Peak Report.

The District Court erred in  ignoring  admissions contained within the Peak report.  Burris recognized and reported the same in his declaration:

46.   ... . The Peak report confirms at Exhibit 3, **there are multiple backups of my emails** [Doc 78-1, Ex 3]. **There are 17 separate files for email**. The emails go all the way from **"11/8/2012" to "11/2/2020"** excluding the current email .ost file that was also provided in discovery. **The Peak report specifically confirms the emails have been backed up and in multiple places to ensure the data  was not lost.** Subsequent email backups rendered the prior email backups not necessary and redundant. Furthermore, these backups were even years prior to the protective order.

*IV-ER-585 at ¶46.*

Recognizing that Burris had retained 17 files for emails is evidence that he was not

destroying computer files, but instead, using established industry standards to secure

data. The court erred in failing to consider that actual testimony.

**6. <u>Error: The District Court erred in concluding that Burris improperly moved computer files into the recycle bin.</u>**

The District Court erred determining Burris did not dispute the facts in the

expert's reports by finding:

> Given this backdrop, the Court adopts the **undisputed** facts in the expert's report and makes the following factual findings:
> ... .
>
> (8) Plaintiff purged the content of his invst4u@cox.net email account on several occasions after the initiation of this lawsuit; (9)    Plaintiff moved files from the invst4u@cox.net email account into his recycle bin in May 2019 and again in February 2020; ... .

*I-ER-36:26-27,37:11-14 [emph. added]*.

Burris explained:

> 47.    Defendants claim over the next year, Burris moved hundreds of files that "hit" on relevant case search terms into the **Recycle Bin**, "many of which could never be recovered and were later identifiable only by file name. (Forensic Report, pp. 21-22.)" Of course I moved many files into the recycle bin. **Those files would have been backed up prior to moving them to the recycle bin.** I also renamed many of those same files. The vast majority of the documents referenced are **related to my private business Burris Wealth Management Inc**. Per the report, **I moved 253 files** on

42

**December 7, 2020**, which comports with my purchase of a new computer for my wife and migration of data. These files are not lost.

*IV-ER-586 at ¶46.*

Burris disputed the "recycle bin" issue. The court erred in finding that he purged his Cox computer files. What actually occurred is Burris' "backed up" and transferred the Cox files to a more secure computer location. The court erred in considering only part of what occurred.

7. <u>**Error: The District Court erred in jumping to a conclusion that Burris did something wrong because he ran Bleachbit which had a feature called "Chaff".**</u>

The District Court erred determining Burris did not dispute the facts in the expert's reports in adopting the following as an "undisputed" fact:

(5) **Plaintiff ran an anti-forensics feature of Bleachbit called "chaff,"** whereby Bleachbit creates a user defined amount of gibberish files designed to fill space on the hard drive and overwrite existing data, on the older laptop in March 2020; ... .

*I-ER-37:5-8 [emph. added].*

This was disputed as Burris explained:

8. I pointed out during session 1 of my June 2021 deposition that neither Teris nor Peak defined the key technical terms they used such as ..."chaff" ... . If the Forensic Examination (FE) industry has standardized terminology, I never saw it, and to my knowledge none of these have common and plain meaning such that the FE had no need to define them. ... .

27.     As to the Peak Forensics report stating that "chaff" is designed to generate "gibberish files" **I am not familiar with how it works or what it all does**, but protecting sensitive client information and helping system performance were my reasons for such apps.

49.     I later researched "chaff" because it was mentioned but not defined in Peak's Report. (Motion, p. 6).  **I would not need chaff as I understand it because BleachBit can wipe free space on a drive**.

*IV-ER-589, 571, 579, 587* [*emphasis added*].

The actual testimony is that Burris did not know what Chaff was or how it  worked.

Burris used Bleachbit as a   management tool.  The mere fact that Plaintiff owned

Bleachbit software doesn't mean that he misused the same.    The court erred in

assuming that mere ownership of Bleachbit was sufficient to justify dismissal.  This

was error.

## 8.     **Error: The District  Court found that Burris did not produce the second Dell Computer.**

The District Court ruled that Burris did not produce all of his computers, phones

and storage devices.  This was error.

Burris explained:

54.     In Motion, at p. 8, JPM claims **"Between December 7-8, 2020, Burris produced six iPhones (not including his iPhone 11), a Dell P56f laptop, a Samsung external hard drive, and a Sabrent external hard drive. Burris failed to produce the second Dell laptop that Defendants requested, instead producing a newly purchased Dell P91f laptop in its place**. (Linehan Decl. ¶¶ 40, 52.) The forensic expert found the "missing

44

laptop disclosed during Mr. Burris's March 12, 2020 deposition **likely contains Potentially Relevant ESI that has not been made available for discovery."** (Forensic Report, p.2.)". The **Sabrent external hard drive has the data from the prior Dell computer that was broken.** The SSD was placed in that **"clamshell" after the folder was backed up.** Any subsequent laptop/s were discarded if a problem became evident. However, **the data was backed up as the expert report shows.** This includes **seventeen backups** of email and data. I **produced the newest Dell laptop because it would have had the most recent data migration** and because it has PRESI, not because I thought the examiner would not notice. ... .

IV-ER-588 [*emphasis added*].

People don't keep old computers, laptops and phones after acquiring new equipment. Instead, those devices are turned over to the respective retailers or others. This occurs thousands of times each day in the computer industry. As part of this process, the computer files are backed up and transferred to replacement equipment. This is not nefarious conduct. Its just was happens. It is error to find destruction of equipment without considering whether computer files were "backed up" and transferred to the new equipment. The court erred in finding that Burris' back-up and transfer to more secure equipment was some intentional attempt to destroy computer files.

**9.** **Error: The District Court erred in finding that Burris did not produce his text messages:**

The District Court erred determining Burris did not dispute the facts in the

expert's reports by finding:

> Given this backdrop, the Court adopts the **undisputed** facts in the
> expert's report and makes the following factual findings:
> ... .
> (12) Plaintiff failed to preserve any of his text messages from before
> October 30, 2020; ... .

*I -ER-36:26-27, 37: 20-21.*

> 56. I disagree with JPM's assertion at Motion, p. 9 that I did not
> dispute any of the expert's underlying findings. I raised several disputes
> with the assumptions and findings in the report throughout my deposition.

> 9. ... . But instead, Ulmer badgered me over "where are all your text
> messages", despite JPMC and every other SEC register brokerage
> prohibiting business by text ... . I was confronted with FE results that
> showed 2012 text messages with 2013 metadata dates, text messages that
> were in the arbitration record, but now Ulmer decided seven years late
> to do the deep dive into such utterly irrelevant data in congruencies that
> I would not have the first idea of how to technically explain them.

> 40. As a practice I rarely text. **At JPM we were not allowed to use
> our personal cell phones to text company business.** After my
> termination from JPM I largely **retained the practice of not texting**. I
> occasionally text my clients, but not about my JPM case. I do not
> regularly text with attorneys because I prefer email. I occasionally texted
> another employee who was retaliated against by JPM, but **I screenshot
> and produced those materials**. I do not draft documents on my Iphones.

*IV-ER-589, 572, 583.*

46

It is incorrect that Burris failed to dispute JPMC's text failures. This is error as Burris did produce screen shots of text messages. They are preserved with FINRA and JPMC's counsel as they were preserved in the 2014 FINRA hearing.

**10.** **Error. Burris did not "wipe" jump drives.**

The court erred by providing:

(11) Plaintiff used "wiping" software on the two USB drives he provided for forensic examination on March 16, 2021, including wiping both devices on March 15, 2021, the day before the production;

*I-ER-37: 18-19.*

Burris explained:

56.     I disagree with JPM's assertion at Motion, p. 9 **that I did not dispute any of the expert's underlying findings.** I raised several disputes with the assumptions and findings in the report throughout my deposition.

31.     ... . It obviously was not a **"wiping"** or a "gibberishing" if I understand those term since the forensic examiner states "the files aren't complete and won't properly open". **I have no idea why any files would not "properly open" for the forensic examiner.** And if my lawyers have some big discovery pow-wow with Ulmer lawyers also on October 16, 2020, **it is coincidence and long before any talk about a forensic examination**.

55.     In Motion p. 9, **JPM claims I "wiped" jump drives, but I did not as I understand the term**. I used USB drives for temporary data like moving files from one computer to another. **I do not "store" data on those drives, except the already produced JP Morgan documents**. I normally remove all content so I can reuse the drive. As required, JP Morgan data remained. JPM also claimed "The expert identified more

47

than 4 gigabytes that was deleted and overwritten." Yet, the FE cannot confirm there was any data on the drive and certainly not potentially relevant ESI. **He can only confirm that the drive created a "temporary file". He cannot even confirm the device was "wiped" on March 15, 2021.**

*IV-ER-589, 579.*

**g.** **The District Court erred in finding that Burris acknowledged that he had engaged in the conduct described in the Court expert's Report.**

The District Court erred determining Burris had acknowledged the conduct described in the expert's report by providing:

> ... . Plaintiff seems to acknowledge that he engaged in the conduct described in the expert's report and simply argues that his conduct was not sanctionable because the devices at issue did not contain ESI that was potentially relevant to this litigation. (See, e.g., Doc. 89 at 4 ["[Plaintiff] was not under any prohibition from deleting, moving, or renaming his own personal or professional information, and he had no obligation to produce equipment that was not involved in housing or creating potentially relevant ESI."]

*I- ER-36:15-21.*

Burris did not acknowledge that he engaged in this conduct. Rather, Burris attested under oath the following:

> 7. ... **There was no "mass destruction of electronically stored information ("ESI")" as claimed by JPM, but in any event my** obligation was first to only to identify the sources of potentially relevant ESI for imaging. **Because I neither created nor stored any potentially relevant ESI on my phones, there was no requirement to preserve their storage functions**. During the course of this litigation, I owned and operated a financial planning

48

and advisory business, Burris Wealth Management, Inc. (BWM). ... .

12.   **The bulk of my alleged ESI preservation violations argued in JPMC's exhibits to the Motion for sanctions have nothing to do with "potentially relevant ESI" in this case**. ... . [A]t no time during my employment or termination from JPMC was I allowed or technologically enabled by the company to use my personal email or mobile phones to transact client business or communicate with my supervisors, nor to export any documents offsite. ... .

13.   In addition to the issues raised above about Peak and the issues my counsel has raised regarding Peak's trying to imply intent to destroy "evidence" based on performance enhancing programs I used, I also analyzed the Peak Forensic report's Exhibit 4 [Doc 78-1. p. 31-41] as to their assertions that a subset of 528 listed files were "not found" or "missing". **The vast majority of these files were in fact either not missing, completely irrelevant to this action, or simply overwritten because they had been renamed (and the renamed file produced elsewhere). I have attached an explanation of each at the attached "Table 1".** From my analysis at Table 1, Case 2:18-cv-03012-DWL Document 88 Filed 08/03/21 Page 7 of 23 Burris Declaration 8 one can see **the vast majority of the listed documents related to my BWM clients. None of them were potentially relevant ESI to the best of my knowledge and some subset of allegedly missing documents reside in JPM's possession already**. It was always in my interest to preserve relevant ESI for use in my case.

15.   I have provided all the backups to the forensic examiners, everything JPMC asked for, and everything that the forensic examiner asked for as an officer of the court.

*IV-ER-570, 574, 575 [emphasis added].*

Burris was correct in relying on the language in the Second Addendum to Stipulated Protective Order which provided a specific definition of "Potentially

Relevant ESI", and confirmed by his counsel.   If his interpretation was incorrect, the remedy was not a terminating sanction but an order to compel whatever information he did not believe was potentially relevant ESI, which the court viewed as "potentially relevant" .

**h.** **The District Court's  order was excessive and went beyond the scope of the protective order :**

The District Court erred in finding:

"[Plaintiff] was not under any prohibition from deleting, moving, or renaming his own personal or professional information, and he had no obligation to produce equipment that was not involved in housing or creating potentially relevant ESI."]; id. [JPMC MS] at 7 ["Because he neither created nor stored any potentially relevant ESI on his phones, there was no requirement to preserve their storage functions."].

*I-ER-36:18-21.*

Burris testified as follows:

5.      The protective order as I understood did not require me to provide every piece of equipment I had. **I was only compelled to produce media that contained or previously contained "potentially relevant ESI".** There was no "mass destruction of electronically stored information ("ESI")" as claimed by JPM, but in any event my obligation was first to only to identify the sources of potentially relevant ESI.

6.      **Potentially Relevant ESI did not include every thing on every piece of equipment I had**. The protective order defined "Potentially Relevant ESI" essentially as set of documents in essence related to my claim against JPM, not documents related to

my personal life, my clients or my non-JPMC professional life. *[Footnote omitted]*.

The Second Addendum to Stipulated Protective Order specifically provides:

1.2 "Potentially Relevant ESI" means ESI within the scope of permissible discovery as provided within Federal Rule of Civil Procedure 26 and 34, such as ESI that concerns, substantiates, refers or relates to: Plaintiffs claims or allegations against Defendants or any of Defendants' current or former employees, whether asserted in this matter or in any other legal, administrative, or investigatory proceeding; Defendants' defenses to any of those claims; Plaintiffs employment with or separation from Defendants' customers that Plaintiff serviced while he was still employed with Defendants; Plaintiffs efforts to find other employment after his employment with Defendants ended or otherwise mitigate his purported damages; Plaintiffs tax returns and other statements of income for himself individually and for Burris Wealth Management; J.P. Morgan Private Bank Managed Accounts, Chase Strategic Portfolio Managed Accounts, and any other "proprietary mutual funds" and "bank managed products"offered by Defendants; and/or communications or documents regarding Defendants or any of Defendants' current or former employees exchanged between Plaintiff and any third-party, including with any government or regulatory agency or personnel, current or former employees of Defendants, current or former customers of Defendants, or news journalists and other members of the press or media.

*VI-ER-1208-1209.*

A protective order must be narrowly tailored and cannot be overbroad. See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 n. 3 (9th Cir. 2004). Therefore, the documents, information, items, or materials that are subject to the protective order shall be

described in a meaningful and specific fashion (for example, "personnel records," "medical records," or "tax returns," etc.).[5]

"Client data" was not included in the broad definition quoted above, yet the District Court held that Burris' statement that he would wipe "client data" from a device prior to transferring or selling the was a "damning" admission because "'client data', in context refers to the clients that Plaintiff serviced after leaving Defendants' employment. Information regarding such clients (and the income that Plaintiff earned from them ) was directly relevant to Plaintiff's claim for prospective economic damages, as recognized in the parties' joint definition of "potentially relevant ESI". *I-ER-47:18-22* . The District Court erred because it went well beyond the scope of the protective order when it ruled that Burris' current client data was "potentially relevant ESI" by sua sponte expanding the definition of the same.

## I.    <u>The sanction of dismissal was improper</u>

Prior to the order or terminating sanctions, Burris had never been subjected to a motion for discovery sanctions. He was not told that backing up his ESI to other devices could result in termination of his case. When given full opportunity at deposition to ask about any of the "new" documents that were purportedly discovered

---

[5] JPMS also provided the expert with transcripts of Burris' deposition, which was beyond the scope of the order.

in the forensic review, JPMC identified six documents. Six documents from the tens of thousands of pages that the forensic examination firm imaged:

> (1) an unsigned October 18, 2012 letter from Burris to Morgan Stanley about his U49;
> (2) a September 1, 2017 SEC letter with attachments to Burris that had already been produced in early 202010;
> (3) Ex. 58, a February 18, 2014 unsigned letter from SD;
> (4) an April 2, 2013 email exchange with JC;
> (5) Ex. 61 An August 5, 2013 email exchange with JC; and (6) a December 6, 2013 email exchange with BB.

*IV-ER-557.*

As to the SEC letter, JPMC counsel conceded that the letter had already been produced. Thus, there were five documents, an almost negligible, less than .001% statistical increase in documents provided from the forensics examination compared to what Burris had previously produced through his counsel Ayers. *IV-ER-558.* Assuming arguendo that the foregoing five documents were destroyed and not retrievable from another source, the sanction does not fit the conduct. The court could have issued a evidentiary sanction and precluded Burris from offering the five documents into evidence and/or given a limiting instruction regarding the same. Terminating sanctions were excessive and an abuse of discretion. On top of that the court later also imposed severe monetary sanctions. These sanctions were draconian and not supported bu the evidentiary record in this case.

# VIII

# APPEAL OF ORDER AWARDING FEES AND COSTS

(No. 22-15775)

## a. **Facts**

JPMC filed its motion for sanctions pursuant to FRCP Rules 37(b)(2) and 37(e)(2) seeking the imposition of terminating sanctions against Burris and for fees and costs *IV-ER-714-733* [6]. On page 11 of the motion for sanctions JPMC stated:

> In conformance with this well-established case law, and pursuant to Rules 37(b)(2) and 37(e), the Court should sanction Burris, dismiss this case with prejudice,(10) and award Defendants their costs and attorneys' fees associated with this motion.(11)

At footnotes 10 and 11 JPMC stated:

> 10 The parties agreed to limit the initial sanctions briefing to the questions of: (1) whether Burris should be sanctioned; and (2) if so, whether dismissal is appropriate. (Doc.73 p.2.) If the Court finds that sanctions are warranted but declines to dismiss Plaintiff's claims, Defendants request the opportunity to propose alternative sanctions, including adverse inferences, taking certain matters and facts as established, and prohibiting Burris from introducing certain evidence and testimony.

*III-ER-706.*

---

[6]JPMC re-filed the motion for sanctions without redaction on 7/28/21. *III-ER-694-793 (Doc. 84)*

On October 7, 2021, the court entered an order of terminating sanctions pursuant to FRCP 37(e) against Burris and judgment was entered on the same date. *I -ER-21-55\*. Burris filed a Notice of Appeal on November 2, 2021. *VI-ER-1283*. This divested jurisdiction to the Court of Appeals.

Terminating sanctions were not enough for JPMC. JPMC sought yet more sanctions in the form of attorneys fees in the amount of $291,593.00. *IV-ER-724:8-11*. There is no legal basis upon which JPMC could get attorneys fees in any amount in addition to the terminating sanction it already prevailed on. FRCP 37(e) does not allow an award of fees, and the District Court had already imposed the most drastic sanction of dismissal, which was appealed and thus beyond the jurisdiction of the District Court.

**b.**     **Law and Argument**

**1.**     **The District Court did not have jurisdiction to impose fees as further sanctions**.

The District Court did not have jurisdiction to impose additional sanctions in the form of fees pursuant to FRCP 37(b)(2) or its inherent authority. The Court of Appeals has jurisdiction of appeals from all final decisions of the district courts. 28 U.S.C. § 1291. "Once a notice of appeal takes effect, the district court loses

55

jurisdiction over the matter placed before the appellate court." United Nat'l. Ins. Co. v. R&D Latex Corp., 242 F. 3d 1102, 1109 (9th Cir. 2001).

The Motion for Sanctions sought relief under FRCP 37(b)(2) and 37(e). *III-ER -694-793*. The District Court entered terminating sanctions pursuant to FRCP 37(e), but further indicated it "would have" also entered terminating sanctions under FRCP 37(b)(2). *I-ER-41 ftn. 3*. JPMC's subsequent motion for attorneys' fees effectively sought reconsideration of this order by seeking additional sanctions in addition to the terminating sanctions that had already been imposed. In the motion for sanctions, JPMC specifically stated that it may seek fees as an alternative sanction should the Court decline to impose terminating sanctions. That was clearly stated in the Motion for Fees at page 12 footnotes 10 and 11. Also, on page 12 of the motion for sanctions, JPMC stated:

> In conformance with this well-established case law, and pursuant to Rules 37(b)(2) and 37(e), the Court should sanction Burris, dismiss this case with prejudice, and award Defendants their costs and attorneys' fees associated with this motion.

*IV-ER-706:6-8)*

The District Court had already ruled on sanctions pursuant to FRCP 37(b)(2) and declined to impose the same. JPMC essentially achieved reconsideration of the appealed order on its sanctions motion to add even more sanctions against Burris. This

was improper. When Burris appealed the Order granting the Motion for Sanctions, the District Court lost jurisdiction to impose additional sanctions. Nonetheless, the District Court granted the motion for fees and awarded fees.

**2. JPMC did not present any valid legal authority for an award of attorneys fees**.

JPMC prevailed on its motion for terminating sanctions, and then baldy represented to this Court, "The only remaining question to be addressed is Burris' responsibility for Defendants' attorneys' fees and costs incurred because of his misconduct". *II-ER-172:11-14*. This is false, in fact, in imposing terminating sanctions, the Court specifically stated:

> Plaintiff does not propose any sanctions in lieu of dismissal, instead arguing that 'there is no basis to impose and sanction whatsoever' (Doc. 89 at 1), but the Court would decline to impose lesser sanctions even if Plaintiff had proposed them. .... Thus, the Court finds that although it did not impose alternative sanctions before dismissal, such sanctions are 'not necessary" in this case. (citation) .

*I-ER- 54:11-20.*

The court did not leave the door open for JPMC to file a motion for attorneys' fees. Nonetheless, JPMC filed what was essentially a second motion for discovery sanctions pursuant to Fed.R.Civ.P. 37(b)(2)© and the court's inherent authority. " *II-ER-161:16-18*.

### 3.   <u>Fees were not available under FRCP 37(e)</u>.

As amended in 2015, Federal Rule of Civil Procedure Rule 37(e) states:

If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the [ESI], may order measures no greater than necessary to cure the prejudice; **OR**

(2) only upon finding that the party acted with the intent to deprive another party of the [ESI's] use in the litigation may:

(A) presume that the lost [ESI] was unfavorable to the party;

(B) instruct the jury that it may or must presume the [lost ESI] was unfavorable to the party; **or**

© dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) *emphasis added.*

As the District Court recognized, "Arguably, the implication of this structure is that when a defendant has already succeeded in getting a case thrown out as a terminating sanction under Rule 37(e)(2), that defendant has already obtained all of the relief that is necessary to make it whole and should not be allowed to seek a follow-up of attorneys' fees on top of the terminating sanction". *II-ER-179*.  This conclusion is not just an implication, it is the law.  The use of the word "OR" is not subject to interpretation.  Given the foregoing language, the Court may either (1) "order measures

58

no greater than necessary to cure the prejudice" **OR** .. © dismiss the action".   The Court already chose to dismiss the action, it could not also impose fees  under FRCP 37(e)(1).

Notably absent from Rule 37(e) is the mention of attorneys' fees as a sanction, Significantly, every other provision of Rule 37 that addresses a discovery violation provides for the imposition of attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A),(B); (b)(2)(C);(c)(1)(A),(2);(d)(3);(f).  When applying statutory interpretation the court must presume that the use of "different words in connection with the same subject" signifies that the drafter intended to convey different meanings by its disparate word choice. Arizona Health Care Cost Containment Sys. v. McClellan, 508 F.3d 1243, 1250 (9th Cir. 2007).  Because the drafters included "attorneys' fees" as a possible sanction under the other subsections of FRCP 37, and did not include it under subparagraph (e), it is clear the drafters did not intend to permit an award of attorneys fees under FRCP 37(e).

The authority to impose attorneys' fees is not included in the language of FRCP 37(e).  Nonetheless, courts that  have imposed attorneys' fees as a sanction for the loss of ESI have done so under FRCP 37(e)(1) (measures no greater than necessary to cure the prejudice).  Cases that have awarded fees have done so pursuant to FRCP 37(e)(1). (Spencer v. Lunada Bay Boys 806 F.App'x 564, 568 (9th Cir. 2020) , Youngevity Int'l

59

v. Smith (S.D.Cal. July 27, 2020, No. 3:16-cv-704-BTM-JLB) 2020 U.S.Dist.LEXIS

227170, at *37; Porter v. City & Cty. of San Francisco (N.D.Cal. Sep. 5, 2018, No.

16-cv-03771-CW (DMR)) 2018 U.S.Dist.LEXIS 151349, at *13). The present case

cannot be reconciled with those cases where a fee award has been granted, because the

District Court opted to impose sanctions under FRCP 37(e)(2)© not FRCP 37(e)(1).

### 4.    Fees were not available under FRCP 37(a)-(d) or (f)

FRCP Rule 37(a)-(d) and (f) also cannot be the basis for an award of fees in

this action. In light of the terminating sanctions previously imposed, the imposition of

additional monetary sanctions was unjust. See Fed. R. Civ. P. 37(b)(2)©; see also

Reddy v. Precyse Solutions LLC, 2015 U.S. Dist. LEXIS 79352 (E.D. Cal. June 18,

2015); Meador v. Macy's Corporate Servs., 2016 U.S. Dist. LEXIS 128163 (D. Haw.

Aug. 26, 2016), adopted by 2016 U.S. Dist. LEXIS 127197 (D. Haw. Sept. 16, 2016);

Townsend v. Ihde, 2015 U.S. Dist. LEXIS 1496 (D.Mon. Jan. 7, 2015).

### 5.    Fees are not available under FRCP 37(b)(2)

FRCP 37(b)(2) also cannot be the basis for an award of fees in this action. All

requests for sanctions based on the loss of ESI must come under Rule 37(e). Following

the 2015 Amendments to the Federal Rules, Rule 37(e) is the exclusive remedy for the

loss of ESI. See Fed. R. Civ. P. 37(e), Adv. Comm. Notes to 2015 Amendment;

Stevens v. Brigham Young Univ.-Idaho, No. 4:16-CV-530-BLW, 2019 U.S. Dist.

60

LEXIS 209981, 2019 WL 6499098, at *3 (D. Idaho Dec. 3, 2019). FRCP 37(b)(2) is simply not an option for a fee award in this case.

Moreover, as discussed above, the District Court did not have jurisdiction to reconsider its prior order on sanctions under FRCP 37(b)(2).

### 6. <u>Fees are not available under the Court's inherent authority</u>

The District Court ultimately invoked its inherent authority to impose the additional discovery sanction of an award of attorneys' fees. *I-ER-13.* The Supreme Court in <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752 at 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) held: "Because of their very potency, inherent powers must be exercised with restraint and discretion".

The District Court cannot use its inherent authority to award fees. After December 1, 2015, Rule 37(e) provides the specific - and sole - basis to sanction a party for failing to preserve ESI. Fed. R. Civ. P. 37 Advisory Comm.'s Note, 2015 amend., subdiv. (e)). A court cannot rely on its inherent authority or state law when deciding whether sanctions based on the loss of ESI are appropriate - the standards supplied by Rule 37(e) are exclusive. <u>1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 37</u>, at 1194 (2021). See also <u>Newberry v. County of San Bernardino</u>, supra at , 537. Pursuant to <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), the 2015 Amendment to Rule 37(e) precludes

reliance on inherent authority to sanction ESI spoliation. The advisory notes commentary expressly confirm that Rule 37(e) "forecloses reliance on inherent authority . . . to determine when certain measures [including relief requested in the instant Motion] should be used [to sanction ESI spoliation]," Fed. R. Civ. P. 37 Advisory Comm.'s Note, 2015 amend., subdiv. (e). <u>Chambers</u> thus supports the conclusion that the Court should look exclusively to Rule 37(e) in resolving the Motion for Attorneys Fees.

### 8. <u>The fees requested are not reasonable</u>

There is no legal authority upon which the District Court could have awarded attorneys' fees to JPMC. However, should this Court disagree, it must nonetheless consider whether the District Court properly determined whether the fees were reasonable and necessary. To determine the reasonableness of attorney's fees, the court must be satisfied that the affidavits submitted by the parties are sufficient to enable the court to consider all the factors necessary for such determination. <u>Dennis v. Chang</u>, 611 F.2d 1302, 1308 (9th Cir. 1980).

The standard set by federal courts in determining a lodestar fee in ruling on a motion for attorneys' fees is that when the district court sets a fee, the court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. <u>Hensley v.</u>

Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983). The lodestar method is a two-step procedure for determining a "reasonable attorney fee." After the court calculates the "lodestar figure" by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate," the court then considers whether "it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation." Morales v. City of San Rafael, 96 F3d 359, 363 (9th Cir 1996). Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975)(Kerr), cert. denied, 425 U.S. 951, 96 S.Ct. 1726 (1976). At least five of the Kerr factors have been deemed "subsumed in the initial lodestar calculation." Morales v. City of San Rafael, supra at 363-64 (9th Cir 1996).

"The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services ... If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee ..." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). JPMC did not address the Kerr factors in their motion for fees. Accordingly, there exists no basis for an award of fees. Sealy, Inc. v. Easy Living,

Inc., 743 F.2d 1378, at 1385 (9th Cir. 1984)  (fee award remanded because district court presented no basis for its findings); Hensley, supra at 437.

Here, JPMC failed to meet its  burden  to support its request for attorneys' fees. There is no  mention of the lodestar factors required by  Kerr, other than the hourly rate and number of hours spent.  Nonetheless, the District Court awarded the full amount.

### 9.    **The fees awarded  are excessive**

In the Order awarding fees, the District Court erroneously stated that Burris did not dispute the reasonableness of defense counsel's fees.  *I-ER-14 at ftn 3*. This is incorrect.  Burris provided a detailed chart which was color-coded *(II-ER -36-159)* to draw the District Court's attention to the  fees outside those necessary to prepare and file the motion for sanctions, review the opposition and prepare and file a reply brief. When granting a motion for fees pursuant to its inherent authority, the Court "can shift only those attorney's fees incurred because of the misconduct at issue." Goodyear Tire & Rubber Co. v. Haeger (2017) 137 S. Ct. 1178  at 1186.  The fee award must be "'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based." Id. (citation omitted).   In the present case, the District Court awarded fees that went well beyond the scope of the sanctions motion.

## A.  Relevant time period for sanctions motion - 7.9.21-8.17.21

The motion for sanctions was initially filed on July 9, 2021.  *IV-ER-714*. Then

re-filed on 7/28/21. *IV-ER-694*.  Plaintiff filed his opposition to the sanctions motion

on 8/3/21. *IV-ER-554 (Doc. 89)*.  Defendant filed its reply on 8/17/2021.  *III-ER-340*.

 The time frame that is relevant to assessing fees for the motion for sanctions is

therefore on or about July 9, 2021 through August 17, 2021.  There was no hearing on

the motion, so the writing and filing the brief and reply  are the only relevant tasks.

Defendants submit detailed fees totaling $262,984.00 covering the period of

November 24, 2020 to September 30, 2021.  *II-ER-212- 238*.  This is well beyond the

scope of the sanctions motion.   All entries that do not pertain to the motion for

sanctions should be   stricken.   Exhibit 1 to Burris' opposition is   JPMC's fee

spreadsheet that totals those billing entries that actually related to the motion  for

sanctions which totaled $69,258.50. *(II-ER -36-159)*. The first entry on the spreadsheet

that pertains to a motion for sanctions is on June 6, 2021.  Burris identified the other

entries on the spreadsheet that relate to preparing the motion for sanctions in neon

green highlighting on the spreadsheet submitted as Exhibit 1. *Id.*   The difference in

the total fees listed on the spreadsheet for the period of October 29, 2020 to September

30, 2021 is $262,984.00 - 69,258.50= $193,725.50.  By just removing the value of the

entries that do not pertain to the motion for sanctions, the fees incurred should have been reduced from $262,984.00 to $69,258.50.

Next, the Court must look at the remaining $69,258.50 and determine if that was reasonable. It is not reasonable to allow for fees incurred in "anticipation" of the opposition. Fees related to the opposition should not begin until counsel actually received the opposition to the motion for sanctions on 8/3/21. The "anticipation fees" should be disallowed. Thus the fee total for the motion for sanctions should have been reduced from $69,258.50 to $61,205 ($8053.50 anticipation fees is deducted from $69,258.50).

## B.   Fees incurred after order of terminating sanctions

JPMC did not stop with the fees incurred in drafting and filing the motion for sanctions and reply. It also sought fees incurred afterward from the time period of 10/1/2021 to 1/15/2021 for not just preparing the motion for fees, but also for preparing a proposed settlement agreement with Mr. Burris. These fees total $28,969.00 and should not have been be allowed. Burris submitted as Exhibit 2 edits to the spreadsheet submitted in support of the motion for fees as Sobolewski Affidavit Exhibit 6. The chart included in the opposition summarized Burris objections:

| | |
|---|---|
| 1) fees regarding attorney education researching rules and procedures for motion (Green) | $728.00 |
| 2) Fees re: settlement negotiations (Yellow) | $6881.00 |
| 3) Fees in drafting motion for fees (Pink) | $16,487.00 |
| 4) Fees re costs (Blue) | $495.00 |
| | $24591.00 |

The total amount of fees JPMC sought for this time period was $28,969.00

Burris objected to the total amount. As detailed by category above, fees for the

attorney to educate himself how to do a fee motion, fees incurred in settlement

negotiations and in drafting a proposed settlement agreement, fees for costs and fees

for drafting the motion for fees should all have been excluded. Finally, there was an

extra $4378 difference between Burris' edits by category to the total sought which

could not be explained. Nonetheless, the court awarded them. It was an abuse of

discretion for the District Court to award fees that do not have a causal link to the

sanctions motion.

# IX

# CONCLUSION

Burris produced 121,516 pages of ESI derived from his employment which ended in 2012. Those documents were maintained through the years by Burris who used industry standards to regularly backup, store and transfer to new computers and storage equipment. Despite this meticulous maintenance of his computer records the court dismissed his case based on an expert's report findings. The order imposing terminating sanctions is improper and should be reversed. The court approved its own expert. JPMC exercised excessive control over the court's expert. JPMC picked, paid and wrote part of the court's expert Report findings. Those findings were adopted without attestation, authentication or cross examination by Burris. The court blocked attestation, a deposition, and an evidentiary hearing testimony of its own expert. After adopting its expert's incompetent findings, the court ignored and misstated Burris' sworn declaration. Burris was ordered to provide prejudicial computer records that had no probative value. JPMC used those records to force Burris to end this litigation. A redacted Motion for Sanctions was followed by an un-redacted filing. At that time, the court should have used its inherent authority to enter judgment against JPMC. Instead, the court granted JPMC's motion for sanctions. After dismissal the court

awarded attorney fees without proper jurisdiction. Clearly, the court violated Burris' due process rights.

For the reasons set forth above, Burris respectfully requests that this Court reverse the order of dismissal, and order the District Court's expert to appear for a formal deposition to explain under oath his Report. Additionally, Burris requests that the District Court's order awarding fees be reversed. Finally, Burris requests this case be remanded for an immediate trial.

Respectfully submitted October 13, 2022

BY /s/ Marie Mirch
Marie Mirch
Attorney for Appellant

69

## STATEMENT OF RELATED CASES

None.

## CORPORATE DISCLOSURE STATEMENT

None

# CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(c) and Ninth Circuit Rule 32-1, I certify that the opening brief is proportionately spaced, has a typeface of 14 points or more and contains 16500 words.

DATED: October 13, 2022

BY <u>/s/ Marie Mirch</u>
Marie Mirch
Attorney for Appellant

## CERTIFICATE OF E-SERVICE

I hereby certify that I electronically submitted the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 13, 2022.   I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed on October 13, 2022 at San Diego, California.

Signature: /s/ Marie Mirch
Marie Mirch