Consolidated Appeal Nos. 21-16852 / 22-15775
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

Johnny Burris,

*Plaintiff-Appellant*,

v.

JP Morgan Chase & Company, et al.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Arizona
No. CV-18-03012
Hon. Dominic Lanza

_____

## APPELLEES' ANSWERING BRIEF

_____

Marian Zapata-Rossa (Arizona Bar 032021)
Andrew M. Jacobs (Arizona Bar 021146)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, AZ 85004-2202
Tel: (602) 382-6000
Email: mzapata-rossa@swlaw.com;
ajacobs@swlaw.com

Michael N. Ungar (Ohio Bar 0016989)
Brad A. Sobolewski (Ohio Bar 0072835)
Michael D. Hoenig (Ohio Bar 0093237)
J. Matthew Linehan (Ohio Bar 0085286)
ULMER & BERNE, LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1406
Tel: (216) 583-7000
Email: mungar@ulmer.com;
bsobolewski@ulmer.com;
mhoenig@ulmer.com;
mlinehan@ulmer.com

*Attorneys for Defendants-Appellees J.P.
Morgan Chase & Co. and J.P. Morgan
Securities, LLC*

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendants-Appellees JPMorgan Chase & Co. ("JPMC") and J.P. Morgan Securities LLC ("JPMS") (collectively, "Defendants" or "JPMorgan"), by their undersigned counsel, state as follows:

JPMC is a publicly held corporation. JPMC does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. However, The Vanguard Group, Inc., an investment adviser which is not a publicly held corporation, has reported that registered investment companies, other pooled investment vehicles and institutional accounts that it or its subsidiaries sponsor, manage or advise have aggregate ownership under certain regulations of 10% or more of the stock of JPMC.

JPMS is an indirect, wholly-owned subsidiary of JPMC.

Date: January 20, 2023        SNELL & WILMER L.L.P.

*s/ Marian Zapata-Rossa*

Marian Zapata-Rossa (Arizona Bar 032021)
Andrew M. Jacobs (Arizona Bar 021146)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, AZ 85004-2202
Tel: (602) 382-6000
Email: mzapata-rossa@swlaw.com;
ajacobs@swlaw.com

i

Michael N. Ungar (Ohio Bar 0016989)
Brad A. Sobolewski (Ohio Bar 0072835)
Michael D. Hoenig (Ohio Bar 0093237)
J. Matthew Linehan (Ohio Bar 0085286)
ULMER & BERNE, LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1406
Tel: (216) 583-7000
Email: mungar@ulmer.com;
bsobolewski@ulmer.com;
mhoenig@ulmer.com;
mlinehan@ulmer.com

*Attorneys for Defendants-Appellees J.P.
Morgan Chase & Co. and J.P. Morgan
Securities, LLC*

# TABLE OF CONTENTS

**Page**

**DISCLOSURE STATEMENT** ................................................................. i

**INTRODUCTION** ..................................................................................1

**ISSUE(S) PRESENTED** ........................................................................6

    A. Did the district court act within its discretion when it dismissed Burris's claims as a sanction under Rule 37 where Burris intentionally destroyed potentially relevant ESI, violated one or more court orders, was "caught red-handed in a series of other lies and acts of deception," and acted in bad faith? ........................................6

    B. Did the district court act within its discretion by denying Burris leave to file an exhibit to his sanctions briefing late—after the deadline for filing his sanctions brief—where Burris already chose not to file the exhibit before a previously-extended court-ordered deadline, and where the district court found that the exhibit would not have changed its ruling on sanctions? ..............................................................6

    C. Did the district court act within its discretion when it exercised its inherent authority to award JP Morgan its reasonable attorneys' fees caused by Burris's bad faith? ................................................6

**STATEMENT OF THE CASE** ...............................................................7

    **A. <u>Burris Was Fired for Violating Company and Industry Rules</u>** ...........7

    **B. <u>Prior Related Proceedings</u>** ................................................................8

        1. FINRA Arbitration .............................................................8

        2. SEC Investigation ..............................................................8

        3. FINRA Disciplinary Proceeding .......................................9

        4. OSHA Proceeding ............................................................9

**C. District Court Proceedings**.....................................................................9

    1. Burris decides to file suit and immediately begins wiping data .......9

    2. Burris systematically destroys relevant ESI, while feigning compliance with his discovery obligations...............................11

    3. Burris admits he did not preserve and, instead, wiped relevant ESI ...................................................................................................13

    4. Burris continues spoliating as counsel negotiate a forensic examination.............................................................................14

    5. Burris stipulates to, and the district court orders, a forensic examination, and the order expressly warns Burris about sanctions.................................................................................17

    6. Burris engaged in widespread, thorough, and brazen misconduct, causing the irrevocable loss of relevant ESI.............................18

    7. The parties jointly submit the court-appointed expert's report and agree to a bifurcated briefing and deposition schedule ............21

    8. Burris unapologetically admits to destroying ESI, and gets "caught red-handed in a series of lies"....................................................22

    9. JPMorgan moves for case-terminating sanctions, and Burris responds with demonstrably false excuses ...............................24

    10. Burris "decide[s] not to file" an exhibit until after his court-ordered deadline, and then tries to block the expert from reviewing it ...............................................................................27

    11. The district court rightly denies Burris's request, after the close of sanctions briefing, to re-classify and depose the court's expert because it was "out-of-time" and conditioned on events that never occurred...........................................................................28

    12. The district court dismisses Burris's case, the parties jointly move to extend JPMorgan's deadline to seek fees and costs ............29

13. The district court orders Burris to reimburse JPMorgan's fees and costs caused by his bad faith......................................................30

**SUMMARY OF ARGUMENT**........................................................**32**

**STANDARD OF REVIEW**............................................................**34**

A. **Abuse of Discretion Standard**................................................34

B. **Waived Issues May Not Be Reviewed or Reversed**............................35

C. **Forfeited Issues May be Reviewed Only for Plain Error**..................36

**ARGUMENT**..............................................................................**36**

I. **The District Court Acted Within Its Discretion Dismissing Burris's Lawsuit**........................................................................36

A. The district court acted within its discretion by dismissing Burris's suit under Fed. R. Civ. P. 37(e)(2)...........................................37

1 Burris willfully and irremediably destroyed ESI...................38

2. Burris destroyed potentially relevant ESI despite a duty to preserve it........................................................................40

3. Burris failed to take reasonable steps to preserve................43

4. The lost ESI could not be restored or replaced....................44

5. Burris acted with intent to deprive JPMorgan of his ESI.....45

6. Burris's bad faith warranted dismissal.................................46

B. The district court acted within its discretion by determining alternatively that Burris's suit merited dismissal under Fed. R. Civ.. P. 37(b)............................................................................49

C. Burris's claimed errors regarding the court's expert are meritless 50

1. Burris waived and forfeited all errors concerning the independent expert's appointment, qualifications, and Forensic Report...............................................................50

2. Burris waived and forfeited all issues related to Rule 706 ...52

D. The district court did not deny Burris due process or err in deciding the sanctions motion without an evidentiary hearing ...............54

**II. <u>The District Court Acted Within its Discretion by Denying Burris's Motion to File Exhibits after His Filing Deadline</u>** .........................56

**III. <u>The District Court Acted Within Its Discretion by Awarding JPMorgan's Attorneys' Fees and Taxing Costs</u>** ............................58

A. The district court properly relied on its inherent authority to award attorneys' fees ...........................................................58

B. The district court properly awarded only fees caused by Burris's bad faith......................................................................62

C. The district court had jurisdiction to award fees ...........................63

D. Burris waived all issues concerning taxable costs .........................64

**CONCLUSION**.....................................................................................65

**STATEMENT OF RELATED CASES**..................................................66

**CERTIFICATE OF COMPLIANCE** ....................................................67

**CERTIFICATE OF SERVICE** .............................................................68

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adriana International Corp. v. Theoren*,
  913 F.2d 1406 (9th Cir. 1990) ....................................................34, 49

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985)..........................................................34, 35, 42

*Anheuser-Busch, Inc. v. National Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) ................................. 34, 38, 42, 46, 48, 55

*Apple Inc. v. Samsung Electronics Co.*,
  888 F.Supp.2d 976 (N.D. Cal. 2012)....................................................43

*Aziz v. University of Colorado*,
  3 F. App'x 937 (10th Cir. 2001) ........................................................50

*Bjordahl v. Qwest Communications International. Inc.*,
  No. 2:09-cv-0776-HRH, 2010 WL 11570515 (D. Ariz. 2010 ...........................63

*C.B. v. City of Sonora*,
  769 F.3d 1005 (9th Cir. 2014) ...........................................................36

*CAT3, LLC v. Black Lineage, Inc.*,
  164 F.Supp.3d 488 (S.D.N.Y. 2016) ..................................................62

*Chambers v. NASCO*,
  501 U.S. 32 (1991)..........................................................................58, 59

*Colonies Partners, L.P. v. County of San Bernardino*,
  5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. 2020) ...................46

*CrossFit, Inc. v. National Strength and Conditioning Association*,
  No. 14-CV-1191(JLS), 2019 WL 6527951 (S.D.Cal. Dec. 4, 2019) .....59, 61, 62

*Crowley v. Epicept Corp.*,
  883 F.3d 739 (9th Cir. 2018) ...........................................................35

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  513 F.Supp.3d 839 (N.D. Ill. 2021) ..................................................43

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ........................................................................35

*Fenton v. Freedman*,
   748 F.2d 1358 (9th Cir. 1984) ............................................50, 51, 52

*G-K Properties v. Redevelopment Agency of City of San Jose*,
   577 F.2d 645 (9th Cir. 1978) ......................................................42, 48

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017)............................................5, 58, 62, 63

*Griffen v. Gomez*,
   741 F.3d 10 (9th Cir. 2014) ........................................................41

*Harkey v. Beutler*,
   817 F. App'x 389 (9th Cir. 2020) ...............................................64

*In re Phenylpropanolamine (PPA) Products Liability Litigation*,
   460 F.3d 1217 (9th Cir. 2006) ....................................................38

*In re Watkins*,
   343 F. App'x 245 (9th Cir. 2009) ...............................................51

*Independent Towers of Washington v. Washington*,
   350 F.3d 925 (9th Cir. 2003) ................................................49, 65

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*
   456 U.S. 844 (1982)........................................................................41

*Jerden v. Amstutz*,
   430 F.3d 1231 (9th Cir. 2005) ............................35, 50, 51, 52

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ......................................................56

*KCI USA Inc. v. Healthcare Essentials, Inc.*,
   14-CV-549, 2018 WL 3196950 (BYP) (N.D. Ohio June 29, 2018),
   *aff'd* 801 F. App'x 928 (6th Cir. 2020) .......................................48

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ....................................................62, 63

viii

*Klipsch Group, Inc. v. ePRO E-Commerce Limited*,
    880 F.3d 620 (2d Cir. 2018) ..........................................................................46, 61

*Lambright v. Ryan*,
    698 F.3d. 803 (9th Cir. 2012) ...............................................................................55

*League of Women Voters of California v. Federal Communications Commission*,
    751 F.2d 986 (9th Cir. 1985) ...............................................................................63

*Lee v. Max International, LLC*,
    638 F.3d 1318 (10th Cir. 2011) ...........................................................................44

*Leon v. IDX Systems, Corp.*,
    464 F.3d 951 (9th Cir. 2006) ............................................. 34, 40, 47, 48, 49, 61

*Link v. Wabash Railroad Co.*,
    370 U.S. 626 (1962) .............................................................................................56

*Liu v. Securities and Exchange Commission*,
    140 S.Ct. 1936 (2020) .........................................................................................60

*Lopez v. U.S.*,
    77 F.3d 477 (5th Cir. 1995) .................................................................................52

*Lytle v. Carl*,
    832 F.3d 978 (9th Cir. 2004) ...............................................................................62

*Marbled Murrelet v. Babbitt*,
    83 F.3d 1060 (9th Cir. 1996) .........................................................................50, 52

*Masalosalo by Masalosalo v. Stonewall Insurance Co.*,
    718 F.2d 955 (9th Cir. 1983) ...............................................................................64

*Milke v. City of Phoenix*,
    497 F.Supp.3d 442 (D. Ariz. 2020), *aff'd* 20-17210, 2022 WL
    259937 (9th Cir. 2022)..............................................................................38, 46, 48

*Morrow v. Topping*,
    437 F.2d 1155 (9th Cir. 1971) .............................................................................55

*National Hockey League v. Metropolitan Hockey Club*,
    427 U.S. 639 (1976)....................................................................................4, 34, 48

*Newberry v. County of San Bernardino*,
    750 F. App'x. 534 (9th Cir. 2018)......................................................60

*OmniGen Research v. Yongqiang Wang*,
    321 F.R.D. 367 (D. Or. 2017).....................................................37, 38

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112 (9th Cir. 2000) ........................................................55

*Paladin Association, Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ........................................................55

*Ramirez v. T&H Lemont, Inc.*
    845 F.3d 772 (7th Cir. 2016) ..........................................................37

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000).........................................................................46

*Rossbach v. Montefiore Medical Center*,
    No. 19cv5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) ................61

*Slaven v. American Trading Transportation Co. Inc.*,
    146 F.3d 1066 (9th Cir. 1998) ...................................................35, 50

*Spears v. City of Indianapolis*,
    74 F.3d 153 (7th Cir. 1996) ............................................................57

*Tan Lam v. City of Los Banos*,
    976 F.3d 986 (9th Cir. 2020) .....................................................35, 36

*Taylor v. Sentry Life Insurance Co.*,
    729 F.2d 652 (9th Cir. 1984) ..........................................................36

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ........................................................34

*United States v. Olano*,
    507 U.S. 725 (1993).........................................................................35

*Valley Engineers, Inc. v. Electric Engineering Co.*,
    158 F.3d 1051 (9th Cir. 1998) .....................................................4, 47

*Volcan Group, Inc. v. Omnipoint Communications, Inc.*,
552 F. App'x 644 (9th Cir. 2014) ...............................................40, 43

*Williams v. American College of Education, Inc.*,
No. 16-C-11746(GSF), 2019 WL 4412801 (N.D. Ill. Sept. 16,
2019) .................................................................................................61

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) .........................................................43

**Statutes**

Dodd-Frank Wall Street Reform and Consumer Protection Act of
2010, 15 U.S.C. §79u-6(h)...................................................................7

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ......................................7

**Other Authorities**

Fed. R. Civ. P. 6(b)(1)(B) .......................................................................56

Fed. R. Civ. P. 16(b) ..............................................................................56

Fed. R. Civ. P. 26(b)(4)(a) ......................................................................53

Fed. R. Civ. P. 34 ..........................................................................41, 44

Fed. R. Civ. P. 37 ........................................... 3, 4, 6, 18, 30, 32, 36, 64

Fed. R. Civ. P. 37, Advisory Committee Notes (2015) ....................37, 59

Fed. R. Civ. P. 37(b) .....................................................................24, 30, 49

Fed. R. Civ. P. 37(b)(2)...........................................................................49

Fed. R. Civ. P. 37(b)(2)(A) ......................................................................61

Fed. R. Civ. P. 37(e)........................ 24, 30, 33, 37, 49, 58, 59, 60, 61

Fed. R. Civ. P. 37(e)(1)...........................................................................60

Fed. R. Civ. P. 37(e)(2)........................... 31, 33, 37, 46, 60, 61, 62

Fed. R. Civ. P. 37(e)(2)(A) ......................................................................38

Fed. R. Civ. P. 78(b) ............................................................. 54

Fed. R. Evid. 103(a) .......................................................... 35, 51

Fed. R. Evid. 103(e) .......................................................... 36, 52

Fed. R. Evid. 706 ......................................................... 28, 52, 53

Fed. R. Evid. 706(b) ............................................................. 52

Hon. James C. Francis IV & Eric P. Mandel, *Limits on Limiting
Inherent Authority: Rule 37(e) and the Power to Sanction*, 17
Sedona Conf. J. 613 (2016) .................................................. 61

LRCiv 54.2 ......................................................................... 62

LRCiv 54.2(c)(3) ................................................................. 63

LRCiv 7.2(f) ....................................................................... 54

LRCiv 7.2(f) ....................................................................... 54

LRCiv 7.2(m)(2) .................................................................. 51

Merriam-Webster Dictionary (https://www.merriam-
webster.com/dictionary/) (last accessed Nov. 30, 2022) ................... 61

## INTRODUCTION

Plaintiff-Appellant Johnny Burris ("Burris") repeatedly and without remorse spoliated evidence, violated court orders, lied under oath, and engaged in other acts of deception and bad faith throughout litigation. In the process, Burris well-earned the district court's order terminating this case as a sanction. This Court should affirm.

Burris's misconduct predated this suit and continued through discovery. Burris filed suit against JPMorgan on September 24, 2018. That day, he received notice of his court-ordered obligation to preserve and produce relevant records in initial discovery – even though his duty to preserve relevant documents arose much earlier. Anticipating litigation and flouting his preservation duties, Burris destroyed data using aggressive wiping software ("BleachBit" and "iShredder"). He only accelerated the pace of his willful spoliation after filing suit. He disregarded his discovery obligations and, when deposed in March 2020, admitted deleting relevant data because he did not want anyone to have it. Days later, Burris activated an anti-forensics feature of the data-destroying software BleachBit to overwrite data on a laptop.

Burris repeatedly thwarted JPMorgan's multiple good faith efforts to resolve deficiencies flowing from Burris's discovery misconduct. In a particularly disturbing abuse of the litigation process, Burris purged his personal email account

and wiped a laptop while his counsel, unaware of this misconduct, negotiated in good faith the terms of a stipulated forensic examination order ("Forensic Order") to redress Burris's past deficiencies and spoliation.

Remarkably, Burris's litigation abuse worsened after the district court entered the stipulated Forensic Order on October 29, 2020. In that stipulated order, Burris agreed to the selection of a court-appointed expert and forensic protocol terms. The Forensic Order warned Burris plainly that case-terminating sanctions and expenses could be entered against him for destroying ESI or any other misconduct, which made all the more remarkable what Burris did next. One day later, Burris: wiped a flash drive; "recycled" at least 49 relevant files; and commenced deleting hundreds more files. In short order and rapid-fire succession thereafter, Burris: wiped his older iPhone; wiped, sold, and shipped his then-current iPhone to someone in Saipan; ran iShredder from his laptop; "discarded" a second laptop he was ordered to produce; tried to pass off a newly-purchased iPhone and laptop as the devices he sold and discarded; and ran data-wiping software on two flash drives. Meanwhile, Burris had ample notice of the necessity of not doing these very things – even his own counsel warned him "on the record" of the need to comply with the Forensic Order.

The record amply evidenced Burris's misconduct and well supported dismissal. The court's independent expert found in his April 8, 2021 report

("Forensic Report") that Burris "caused Potentially Relevant ESI to be irrevocably lost." Burris agreed to submit this report into evidence. While Burris offered excuses in his second deposition for spoliation, he did not meaningfully dispute the expert's findings, and admitted to purging his data in defiance of court orders and the repeated warnings of the court, JPMorgan, and his own counsel.

The district court thus acted within its broad discretion when it dismissed Burris's Complaint on October 7, 2021 ("Dismissal Order", I-ER-24) under Rule 37 and, in a subsequent May 19, 2022 order ("Fees Order", I-ER-3-20), ordered Burris to pay JPMorgan's fees and costs as sanctions given Burris's bad faith, spoliation, and serial violations of court orders.

The district court found in the Dismissal Order that Burris violated at least one court order requiring him to "preserve and produce ESI for forensic review," and "[t]he sheer scope of [his] dishonesty and spoliation efforts – which the Court explicitly [found] amounted to bad faith – make this the rare case where it is impossible to have confidence that Defendants will ever have access to the true facts." (I-ER-53-54.) Burris "systematic[ally …] destroy[ed] electronically stored information ('ESI') from his phones, laptops, email accounts, and external storage devices" over "a period of years, beginning before (but in anticipation of) this litigation and accelerating as the litigation unfolded." (I-ER-24-25.) Not only did Burris persist in destroying data even after the Forensic Order (I-ER-24-25), he

"was caught red-handed in a series of other lies and acts of deception during the forensic examination process." (I-ER-49, 51-52.)

Unwilling to accept responsibility for his misconduct, Burris presents a fabricated, revisionist history of the record, replete with baseless accusations of bias against the district court and court-appointed expert. He glosses over the extensive evidence of his bad faith, including his own "damning" admissions to destroying ESI. And he purports to suggest a multitude of new "evidentiary" and "due process" errors on appeal – each forfeited or waived, and none of which warrants reversal.

Ultimately, this appeal boils down to this Court's wise dictum that "[t]here is no point to a lawsuit, if it merely applies law to lies." *Valley Eng'rs, Inc. v. Elec. Engr. Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). As the Supreme Court has long recognized, district courts act well within their discretion under Fed. R. Civ. P. 37 to dismiss cases under circumstances far less egregious than these:

> The question, of course, is not whether … the Court of Appeals[]
> would as an original matter have dismissed the action; it is whether
> the District Court abused its discretion in so doing. … [T]he most
> severe in the spectrum of sanctions provided by statute or rule must be
> available to the district court in appropriate cases…

*Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 642-43 (1976).

Moreover, the Supreme Court recognizes that district courts properly exercise their inherent authority to "instruct a party that has acted in bad faith," like Burris here,

"to reimburse legal fees and costs incurred by the other side." *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).

This Court should affirm the Dismissal Order and the Fees Order.

## ISSUES PRESENTED

A.      Did the district court act within its discretion when it dismissed Burris's claims as a sanction under Rule 37 where Burris intentionally destroyed potentially relevant ESI, violated one or more court orders, was "caught red-handed in a series of other lies and acts of deception," and acted in bad faith?

B.      Did the district court act within its discretion by denying Burris leave to file an exhibit to his sanctions briefing late—after the deadline for filing his sanctions brief—where Burris already chose not to file the exhibit before a previously-extended court-ordered deadline, and where the district court found that the exhibit would not have changed its ruling on sanctions?

C.      Did the district court act within its discretion when it exercised its inherent authority to award JP Morgan its reasonable attorneys' fees caused by Burris's bad faith?

## STATEMENT OF THE CASE

### A.     Burris Was Fired for Violating Company And Industry Rules.

Burris was employed as a financial advisor with JPMS from June 21, 2010

to November 6, 2012.  (VI-ER-1262:¶10.)  On November 6, 2012, he was

terminated for violating company and industry rules intended to ensure oversight

and protect customers, including:  mismarking as "unsolicited" trades he solicited

from customers; failing to execute a customer's trade and then concealing the

customer's complaint from supervisors; and using fake company letterhead to

resolve the customer's complaint and tax liability himself without his supervisors'

knowledge. (*Compare* VI-ER-1274:¶19, 1266:¶49 *with* VI-ER-1251:¶19, 1254:¶49

*and* VI-ER-1134-1138.) Thereafter, Burris was employed by two other firms

before starting his own investment advisory firm.

According to Burris's Complaint, JPMorgan allegedly retaliated against him

in violation of the Sarbanes-Oxley Act of 2002 and the Dodd-Frank Act of 2010.

(VI-ER-1259.)  Burris alleged he "raised concerns" – both internally during his

employment (VI-ER-1269:¶30) and after his termination to the U.S. Securities &

Exchange Commission ("SEC"), Financial Industry Regulatory Authority

("FINRA"), Department of Justice, and media outlets (VI-ER-1270:¶37, 1271:¶38)

– that "Defendants were misleading customers" and "pushing" clients into

inappropriate products.  (VI-ER-1269:¶30-1271:¶39.)  Burris alleged JPMorgan

retaliated by terminating him, "blacklisting" him from the financial services industry, and "caus[ing] future clients…not to retain his services." (VI-ER-1271-1272.) He sought millions of dollars of past and future economic damages. (VI-ER-1279.) JPMorgan denied his claims. (VI-ER-1248-1257.)

### B. **Prior Related Proceedings.**

Burris has been litigating against JPMorgan since his November 2012 termination for cause. (IV-ER-637:25-639:6.) Indeed, he engaged the first of many attorneys to represent him just two days after being fired. (*See* V-ER-1058.)

### 1. **FINRA Arbitration.**

In January 2013, Burris filed for arbitration against JPMS with FINRA, alleging wrongful termination claims predicated on many of the same events and allegations raised in the underlying lawsuit. (*See* VI-ER-1123; IV-ER-780-787.) After a two-week hearing in July 2014, the FINRA arbitration panel unanimously denied all of Burris's claims. (IV-ER-788:7-22; VI-ER-1125.) Burris never moved to vacate or modify that decision.

### 2. **SEC Investigation.**

Burris "made disclosures to the SEC" against JPMorgan beginning December 2012 with "subsequent supplementations on and after February 6, 2013." (VI-ER-1278.) The SEC investigated and concluded by 2017, however, that "Mr. Burris provided no information that substantiated his allegations." (V-

ER-1084-1085.)

### 3. FINRA Disciplinary Proceeding.

In September 2016, FINRA's Enforcement Division initiated disciplinary proceedings against Burris, accusing him of some of the same industry rule violations that led to his termination. (VI-ER-1132, 1134, 1138.) In 2017, Burris and FINRA entered a settlement in which he consented to findings consistent with FINRA's allegations (and JPMS's reasons for terminating him), and FINRA suspended and fined him. (VI-ER-1132 and 1139; IV-ER-806.)

### 4. OSHA Proceeding.

In April 2013, Burris filed a whistleblower claim with the Occupational Safety and Health Administration ("OSHA"). (III-ER-468.) In January 2017, OSHA issued a non-binding, preliminary finding partially in favor of Burris, yet simultaneously found JPMorgan would have been justified in terminating Burris. (III-ER-476-477.) All parties appealed that decision, but then Burris chose to transfer his claims to district court.

### C.   District Court Proceedings.

### 1. Burris files suit and immediately begins wiping data.

As the district court properly found, Burris's "evidence destruction efforts took a variety of forms, including the repeated use of software programs called 'BleachBit' and 'iShredder' over a period of years, beginning before (but in

9

anticipation of) this litigation and accelerating as this litigation unfolded." (I-ER-24-25, 36-37.)

By July 8, 2018, at the latest, Burris informed his former counsel that he intended to sue JPMorgan in the District Court. (III-ER-484.) Between then and September 24, 2018, when Burris filed his Complaint, Burris installed BleachBit on his laptop. (IV-ER-1777-1778.) BleachBit is a "wiping and tracks-erasing" program that "erases many tracks left by a user on his computer and has features specifically designed to thwart forensic examinations." (*Id.*)[1] Burris also installed iShredder, a "wiping software" "designed to permanently destroy data on iPhones." (VI-ER-1164, 1167.) Burris admitted using BleachBit and iShredder on a "regular basis" to prevent "unintended disclosure of sensitive client data[.]" (IV-ER-579:¶25.) Burris later claimed to have used the software for "years…before" filing his federal lawsuit. (*Id.*) Yet, he also admitted he intended to pursue a federal lawsuit since 2013 (IV-ER-584:¶42), and it was no coincidence he installed BleachBit days before filing suit. (IV-ER-637:19-638:6.)

---

[1] BleachBit's website boasts it can "shred files to hide their contents and prevent data recovery," "overwrite free disk space to hide previously deleted files," and delete "files so completely that 'even God can't read them.'" (III-ER-495.)

**2.      Burris systematically destroys relevant ESI, while feigning compliance with his discovery obligations**.

The district court properly found that, "[a]t a minimum, [Burris] had a duty to preserve relevant documents once he initiated this action in September 2018." (I-ER-45.)  The same day he filed his Complaint (VI-ER-1259-1280), Burris was notified that his case was subject to the court-ordered Mandatory Initial Discovery Pilot ("MIDP"). (VI-ER-1288; V-ER-1058; SER-161-167.)  Burris's initial disclosures identified "correspondence with clients," "emails exchanged with JPM employees," and "mitigation income documentation" among the categories of relevant documents and ESI.  (V-ER-883:¶¶12-13.)  Yet, he failed to produce the ESI he identified, as the MIDP required (SER-166:¶C(2)(c)), instead producing just 54 pages of third-party witness statements and media articles about himself – nearly all of which were dated *after* the 2014 FINRA arbitration – that he believed bolstered his claims and undermined JPMorgan's reasons for terminating him.

On May 20, 2019, JPMorgan served Burris with requests for the production of documents seeking, among other information, Burris's communications and documents exchanged (at any time) with customers, media members, regulators, potential employers, and current and former JPMorgan employees.  (V-ER-916-930.)  With few exceptions, Burris responded he would produce "all non-privileged documents."  (V-ER-932-943.)  He did not.  Instead, Burris produced approximately 25,000 pages almost exclusively comprised of productions made by

JPMorgan in prior FINRA proceedings that Burris rebranded and reproduced as his own. (V-ER-883-885:¶¶12-17; V-ER-884-886, ¶¶13-30; IV-ER-555-556; VI-ER-1155.) [2]

Meanwhile, as the district court later found, Burris was "systematic[ally] … destroy[ing ESI] … from an array of phones, laptops, email accounts, and external storage devices." (I-ER-24, 36-37.) For example, from January 2012 through October 2020, Burris used his personal invst4u@cox.net email account to exchange information pertaining to his allegations against JPMorgan. (*See e.g.,* SER-057; V-ER-1058, 1098-99; VI-ER-1110-1111, 1113-1114; *see also* IV-ER-805 (admitting the invst4u@cox.net was a "current" account in March 2020); IV-ER-587:¶51 (admitting he had "incredibly important … regulator emails in that email address" as of October 2020)). Yet, on May 26, 2019 – *six days after receiving JPMorgan's requests for production* – Burris deleted four backups of the email account. (V-ER-1175.) And over the next year Burris systematically moved hundreds of other files – later found to "hit" on relevant search terms – into the

---

[2] Burris's bald assertion that he produced "all relevant ESI" "in 2014" (Br. 2, *see also id.* at 31) is impossible given that many of his interactions with the SEC, OSHA, FINRA, media, customers, and other witnesses occurred after 2014. It is also directly *contradicted* by the record, including JPMorgan's deficiency letters (V-ER-945-967, SER-070-076), and Burris's production of key SEC, OSHA, and other communications for the first time in this case only after falsely representing he had nothing else to produce. (V-ER-885-887:¶¶18-30.)

Recycle Bin, rendering many unrecoverable. (VI-ER-1183-1184; V-ER-899.)

On January 22, 2020, JPMorgan sent Burris a letter complaining of his failure to produce responsive documents. (V-ER-945-962.) Within days, Burris deleted four more backups of his invst4u@cox.net email account and re-installed BleachBit. (VI-ER-1175-1176, 1178.) The remaining backups were missing emails and had conspicuous gaps during key time periods. (V-ER-900-901.)

On February 20, 2020, JPMorgan sent Burris another deficiency letter, and asked him to "agree to make all relevant devices available for forensic inspection and copying." (V-ER-964-966.) Burris did not cure the deficiencies. Instead, he admitted (and attempted to excuse) his misconduct, saying "Discovery violations are a two way street." (V-ER-1058.)[3] Meanwhile, he continued destroying ESI.

### 3. Burris admits he did not preserve and, instead, wiped relevant ESI.

During his March 12, 2020 deposition, Burris testified he:

- did not know he had an obligation to preserve potentially relevant ESI or what a litigation hold is (IV-ER-779:7-12, 804:21-805:7);

- alone searched his electronic devices for responsive data without allowing anyone to watch or assist, even though he is not "tech savvy" or "technical" (IV-ER-794:9-795:2, 798:13-14; 799:5-13, 805:22-23,

---

[3] Contrary to what Burris insinuated then and now on appeal (Br. 2), Burris stipulated that JPMorgan satisfied its discovery obligations to him. (VI-ER-1215:¶12.1.)

807:14-19);

- • used Signal, the disappearing messaging app, to communicate with potential witnesses, keeping no copies of those messages (IV-ER-802:17-803:22, IV-ER-587:¶48); and

- • had no idea how many relevant communications he deleted. (IV-ER-804:11-16.)

Critically, Burris also testified that in March 2020: he had two Dell laptops, but "wiped" one because he "had client data in it, so [did not] want that data to get into anybody's hands" (IV-ER-795:21-797:13); and he used an iPhone 11 to which he transferred all the information from his prior iPhones (IV-ER-799:14-801:16) which, as discussed below, he later wiped and sold and shipped to Saipan during the court-ordered forensic examination. (IV-ER-641:18—644:24.)

### 4. Burris continues spoliating as counsel negotiate a forensic examination.

After Burris's initial deposition concluded, the parties stipulated to an order permitting JPMorgan to subpoena Burris's email, phone, and internet service providers for "'non-content' records and information," but mandating "the Parties shall first attempt to obtain the relevant content through Party discovery." (VI-ER-1291, 1222-1224.) Three days later, Burris activated an "anti-forensics feature of BleachBit called 'chaff'" to generate "gibberish files designed to fill space on a

hard drive and overwrite existing data." (VI-ER-1178-1179.)[4]

JPMorgan served many subpoenas. (*See* VI-ER-1291-1292.) Unsurprisingly, Burris's providers could provide only basic subscriber information. Subpoenas to customers Burris identified as witnesses conspicuously returned the same statements and media articles that Burris produced with his initial disclosures. Yet, the forensic examination later recovered previously-undisclosed communications revealing Burris surreptitiously pressured the customers to submit statements and complaints against JPMorgan that he drafted under their names (*See* IV-ER-655:5-671:25; V-ER-903:¶112-904:¶115; V-ER-1060-1066, VI-ER-1113-1118; SER-037:21-040:18), and, in at least one instance, Burris actually sent the subpoena response purporting to be from the customer. (*See* IV-ER-674:11-676:14; V-ER-904:¶¶116-117; VI-ER-1119-1121.)

On August 13, 2020, JPMorgan sent yet another deficiency letter demanding that Burris "produce his devices and accounts for inspection by a qualified neutral vendor[.]" (SER-070-076.)[5] Burris's counsel agreed to recommend that Burris

---

[4] BleachBit describes Chaff as a "system that creates files to confuse digital forensics", making "the files you want to keep private…difficult to find" like a needle in a haystack. (*See* VI-ER-1144.)

[5] Initially, Exhibits 9-14 to Mr. Linehan's July 2021 declaration were inadvertently filed out-of-order, but were then re-filed with corrected numbering. (SER-065-067; *see* SER-069-123 (re-filed); V-ER-968-1022 (out-of-order).)

stipulate to forensic examination. (SER-079.)

While his counsel negotiated the forensic examination protocols, Burris:

- closed and purged his invst4u@cox.net email account on or after October 12, 2020 (VI-ER-1173-1174; IV-ER-587-588:¶51; V-ER-889; SER-122:5-13);

- purchased a new Dell P91f laptop and installed Bleachbit on it (VI-ER-1177)[6]; and

- reset and wiped a Dell P56f laptop on October 16, 2020. (*Id.*)

The court-appointed expert later attempted to recover 652 deleted files (all user-generated) from the laptops Burris provided, but found "many of the files are not complete and will not properly open[.]" (VI-ER-1181.)

Meanwhile, on October 16, 2020, counsel for the parties met to finalize the terms of the forensic examination. (V-ER-887.) Critically, **Burris proposed** the term stipulating that JPMorgan "shall have the sole discretion to select and pay the forensic examiner of their choice." (SER-083.)

---

[6] Dell did not release its P91f model until June 2020. Thus, as the expert later noted, the Dell P91f could not possibly be one of the two laptops Burris testified to owning during his March 2020 deposition.

16

> **5.** **Burris stipulates to, and the district court orders, a forensic examination, and the order expressly warns Burris about sanctions.**

On October 28, 2020, the parties jointly moved to have their stipulated forensic examination protocols entered as an order. (SER-148-160.) The district court did so in its October 29, 2020 Forensic Order. (VI-ER-1207.)

Burris claims "[h]e was not compelled to provide evidence for forensic imaging." (Br. 3.) Yet, that is precisely what the Forensic Order did: it required Burris to produce stipulated categories of "Electronic Media" and "Potentially Relevant ESI" pursuant to stipulated protocols. (VI-ER-1208-1215.) It mandated "[d]ocuments and information resulting from the forensic examination" "will be produced to [JPMorgan], and [Burris] shall submit to one additional deposition regarding the same." (VI-ER-1207.)

The Forensic Order included the parties' agreement concerning the appointment, qualifications, selection, and payment of an independent expert:

> **2. Appointment of Independent Expert**. An independent expert qualified in digital forensics and electronic discovery shall be appointed as follows:
>
> **2.1.** In consideration for [JPMorgan's] acknowledgement that [Burris] will not initially accept any cost allocation for the forensic examination, [Burris] agrees that [JPMorgan] shall have the sole discretion to select the expert of their choice.

(VI-ER-1209.) The order stated "[t]he expert shall serve as an Officer of the

17

Court," and "shall be allowed to hire other outside support if necessary to Forensically Collect from Plaintiff's Electronic Media." (*Id.*) Jefford Englander of Peak Forensics was the court-appointed digital forensics expert, with TERIS LLC providing collections and e-discovery support. (*See* V-ER-887-888, *see also* SER-093.)

The Forensic Order warned:

> Defendants may seek cost-allocation, recovery of
> reasonable expenses, and/or issuing [sic] appropriate
> sanctions up to and including default as provided in
> Federal Rule of Civil Procedure 37 if Plaintiff:
> unreasonably fails to identify or provides misleading
> information concerning his Electronic Media and
> Potentially Relevant ESI; obstructs, attempts to evade, or
> unduly delays the collection, search, or production efforts
> as provided herein; deleted or failed to preserve
> Potentially Relevant ESI while under a duty to preserve
> it; or engaged in any other discovery misconduct.

(VI-ER-1213-1214:¶9; *see also* VI-ER-1215 ¶12.2.)

### 6. Burris engaged in widespread, thorough, and brazen misconduct, causing the irrevocable loss of relevant ESI.

Despite his own counsel's warnings, Burris wasted no time violating the Forensic Order. [7] To start, the Forensic Order required Burris to provide "a list

---

[7] During a recorded December 15, 2020 meet and confer call, Burris's counsel warned him: "Now let me make this clear to you because we are on a record here and I need to make this clear, because I have repeatedly explained to you that, it

18

identifying all his Electronic Media that at any point contained Potentially

Relevant ESI." (VI-ER-1210:¶¶3, 4.3.)  Burris never did.  (IV-ER-682:6-683:13,

*see also* V-ER-887:¶36-888:¶37.)

Per the Forensic Order (VI-ER-1211:¶6), JPMorgan asked the court's expert

to investigate and advise whether Burris deleted or concealed Potentially Relevant

ESI and, if so, whether it was recoverable.  (SER-106-118.)  Copied on these

communications, Burris raised no objections.  (*Id.*)

In his April 2021 Forensic Report, the court's independent expert detailed

his findings and concluded, "to a reasonable degree of scientific certainty, that Mr.

Burris caused Potentially Relevant ESI to be irrevocably lost." (VI-ER-1164.) [8]  As

detailed therein, and elsewhere in the record:

- On **October 30, 2020**—one day after the Forensic Order—Burris
  "wiped" a flash drive "using software designed to destroy data" (VI-ER-
  1164-1165); "failed to preserve any of his text messages from prior to
  this date" (*Id.*); "recycled" at least 49 files that hit on searches for
  Potentially Relevant ESI; and continued to delete at least 289 other
  similar files through December 7, 2020, rendering many unrecoverable
  because they were "overwritten." (VI-ER-1182-1184; *see also* IV-ER-
  639:6-20; IV-ER-586:¶47.)

- On **November 19, 2020**, Burris factory reset his older iPhone 6S Plus.

_____

doesn't matter that you represent that, oh, there's nothing really on [your personal
email account] that is used. We're in—we have they— there's a court order now
that requires you to give the forensic expert access to this." (SER-121:5-25.)
[8] Burris asserts that JPMorgan "wrote part of [the expert's] report findings." (Br. 4,
14, 77.)  This assertion is untrue, unexplained, and unsupported.

(VI-ER-1167.) [9]

- By **November 20, 2020**, after the Forensic Order, Burris factory reset and sold his iPhone 11 to someone in Saipan and replaced it with a new iPhone 12. (*See* VI-ER-1166; *see also* IV-ER-640:18-644:19; SER-096) Despite Burris's claimed practice of backing up and transferring "all the information" from old to new iPhones (*see* IV-ER-801, *see also* IV-ER-643; SER-096), the iPhone 12 did "not contain any recoverable text messages dated prior to Oct. 30, 2020." (VI-ER-1164, 1166, 1170-1171.)

On December 2, 2020, JPMorgan—still unaware of Burris's actions—requested that Burris produce nine iPhones, including the iPhone 11, the two Dell laptops he identified during his March 2020 deposition, his email accounts, and all other sources containing Potentially Relevant ESI. (*See* V-ER-888-889, SER-091-092).

Burris doubled down on his misconduct, as follows:

- **December 5-7, 2020,** Burris ran iShredder. (VI-ER-1164, 1167.)

- **December 7-8, 2020**, Burris produced six iPhones, a Dell P56f laptop, and two external hard drives, but not his invst4u@cox.net email account. (V-ER-889:¶40; *see also* SER-115-117.) He failed to produce his iPhone 11, producing his *new* iPhone 12 instead. (IV-ER-640:10-16; V-ER-890:¶45.) Burris also failed to produce the second Dell laptop JPMorgan requested, instead producing the *newly-purchased* Dell P91f in its place. (V-ER-889, 891.) The court's expert found the "missing laptop disclosed during Mr. Burris's March 12, 2020 deposition likely contains Potentially Relevant ESI that has not been made available for discovery." (VI-ER-1164.)

- On **December 15, 2020**, during a "meet-and-confer" with JPMorgan

---

[9] A "factory reset" permanently erases "all media, data, and settings." (*See* VI-ER-1166, 1168-1170.)

counsel, Burris's former counsel admonished him to cooperate with the forensic examination. (SER-121:5-25.)  Burris tried to excuse his failure to produce his invst4u@cox.net email account on the grounds that he closed it "two or three months" earlier.  (*See* V-ER-889, SER-122:5-13.)

- On **January 21, 2021**, JPMorgan learned Burris had not produced his iPhone 11.  Only then did Burris reveal he sold his iPhone 11 mere days after the court's Forensic Order. (IV-ER-640:10-16; SER-96.)

- On **February 17, 2021**, Burris retrieved and produced the iPhone 11. But as the expert found, Burris "factory reset every one of his [iPhones other than the new iPhone 12], thereby permanently deleting the content of each device." (VI-ER-1164; *see also* IV-ER-641:24—642:1.)

- On **March 2, 2021**, the expert alerted counsel to Burris's previously-undisclosed use of USB flash drives.  The expert requested that Burris "clarify whether these devices have, or at any point had, any possibly relevant data on them", and that the drives be presented for imaging if so. (*See* V-ER-890: ¶48, V-ER-1029.)  Burris confirmed, through counsel, that two drives contained at least relevant "copies of production documents" (V-ER-1038-1039), but he did not produce them.

- On **March 15, 2021**, JPMorgan reiterated the expert's request that Burris provide the drives. Burris did so, but the expert found both drives "had wiping software used on them on March 15, 2021, the day prior to their production" in an attempt "to remove all traces of data that existed on the drives other than the currently active files[.]" The expert identified more than 4 gigabytes that were deleted and overwritten. (VI-ER-1180-1181.) Burris later agreed "that seems right," admitting he "regularly wipe[s] client and personal data from a drive, especially key chain jump drives." (IV-ER-578:¶23.)

### 7. The parties jointly submit the court-appointed expert's report and agree to a bifurcated briefing and deposition schedule.

On April 22, 2021, the parties jointly filed the Forensic Report in the district court without objection.  (VI-ER-1158.)  By then, the parties both knew JPMorgan would move for case-terminating sanctions and costs.  The parties agreed to a

bifurcated briefing schedule with the question of costs to be addressed after the court's ruling on dismissal, and further agreed that the only depositions left to be taken in the case were Burris's follow-up deposition and the depositions of four party-retained merits and damages experts (**not** the court-appointed forensic expert).  (VI-ER-1159-1160.)[10]  On April 29, 2021, the district court entered a Case Management Order ("CMO") setting a schedule consistent with the parties' agreement.  (VI-ER-1148:¶5.)

### 8. Burris unapologetically admits to destroying ESI, and gets "caught red-handed in a series of lies."

During a follow-up deposition conducted by JPMorgan's counsel and *Burris's own counsel*, Burris did not meaningfully dispute the expert's underlying findings. Instead, he confirmed he purged his Electronic Media without seeking advice or approval from anyone.  (IV-ER-639:6-24.)  As the district court aptly put it, Burris's testimony was "damning."  (*See* I-ER-47.)

Burris offered excuses for his misconduct.  He claimed he wanted to destroy evidence of an "affair," "porn," and "client data." (IV-ER-628:8—629:18.)  The district court found the first two excuses "fell flat." (I-ER-49.)  Burris admitted his

---

[10] Although the parties initially contemplated a hearing (VI-ER-1159), it became unnecessary and all parties abandoned that idea after Burris's self-incriminating second deposition.

extramarital affair began in 2020 and occurred exclusively through phone calls and Signal—**not** the ESI types and date ranges purged from his email, laptops, flash drives, or other sources. (IV-ER-630:5-14, 631:21-24, 634:6-10.) And Burris claimed he viewed pornography, but only through an online search engine on his phone, and did not save or download it (and thus had no "porn" to delete). (IV-ER-632:1-633:24, 681:16-18, *and* 687:24-688:12.)

The district court found Burris's admission that he wanted to delete "client data" "damning" because the Forensic Order defined "Potentially Relevant ESI" to include client data. (I-ER-46-48; VI-ER-1208—1209.) **Burris unapologetically admitted to violating the Forensic Order**:

> The forensic expert notes that 'Mr. Burris factory reset every one of his previous iPhones.' That is absolutely correct. I am not going to give a device, sell a device, transfer a device, whatever to anybody that has my *client data* in it. I'm just not doing it.

(IV-ER-641:18-25—642:5, emphasis added; *see also* IV-ER-686:3-19.) Burris admitted to "delet[ing] client files and data with some regularity," even after the Forensic Order, without seeking advice or approval from anyone. (IV-ER-639:6-24.) He defiantly testified that he alone—not the court or anyone else—determined what was relevant. (IV-ER-684:2-685:20.)

Beyond his excuses and admissions, Burris was "caught red-handed in a series of lies." (*See* I-ER-49.) Burris falsely testified:

- He did not use his invst4u@cox.net account to communicate with current

or former JPMorgan employees post-termination (IV-ER-678:15-20), despite emails proving he did. (*See* V-ER-898:¶84; VI-ER-1110-1111.)

- He had no role in drafting or preparing customer statements against JPMorgan (IV-ER-790:20-23, 791:4-792:18), despite forensic evidence that he solicited and authored these statements. (IV-ER-655:23-671:25; V-ER-896:¶78, 1059-1066.)

- He had no files with "JPMorgan" in the name (IV-ER-793:9-11), but forensically-recovered metadata revealed that Burris withheld key documents in a file folder named: "VERY IMPORTANT DOCUMENTS/Original Documents/AA JPMorgan Chase Files/JPMorgan Suits." (*See* IV-ER-649:23-651:19, 657:4-7 *and* V-ER-896:¶79, 1064-1087, 1102-1108.)

- He produced by 2013 all iPhone audio recordings made during his employment (IV-ER-679-680); yet the forensic examination uncovered screenshots of texts where Burris boasted in 2017 he had "recordings [he doesn't] want discoverable by JPMorgan," and documents indicating that recordings Burris did produce were "cut" and "modified" before production. (V-ER-897:¶82-898:¶83, V-ER-1099; VI-ER-1102-1108, IV-ER-672:10-673:13.)

Thus, the Dismissal and Fees Orders find ample support in Burris's "damning" testimony.

### 9. JPMorgan moves for case-terminating sanctions, and Burris responds with demonstrably false excuses.

On July 9, 2021, JPMorgan moved for dismissal. (IV-ER-714 (with redactions), *and* IV-ER-694 (without redactions).) Consistent with the parties' agreement to bifurcate briefing, JPMorgan's initial brief sought dismissal under Fed. R. Civ. P. 37(b) and (e). (IV-ER-706.) Over 400 pages of record evidence supported JPMorgan's brief, including Burris's testimony. (*See generally* IV-ER-734 *through* VI-ER-1145.)

24

After obtaining an extension, Burris filed his opposition on August 3, 2021. (IV-ER-554-567.) With one narrow exception not relevant here, Burris made no evidentiary objections. (III-ER-564 n.18.[11]) He conspicuously chose not to proffer evidence from his "three consulting experts." (IV-ER-561.) As Burris's then-counsel explained, "we've been comfortable in our position without an expert [] that Mr. Burris has not destroyed any potentially relevant ESI." (III-ER-295:10-12.)

Burris's opposition disputed whether the ESI he destroyed was "relevant." Critically, however, Burris did not deny—and indeed **admitted to**—key facts supporting the Dismissal Order, including that Burris: ran BleachBit and iShredder "on a regular basis" (IV-ER-579:¶25); used Chaff to "protect[] sensitive client information" (IV-ER-579:¶27); "discarded" the "missing' laptop" JPMorgan requested and produced a "third laptop" in its place (IV-ER-581:¶¶32, 35); "regularly wipe[d]" his USB flash drives to protect client data (IV-ER-578:¶23); "moved many files into the recycle bin" (IV-ER-586:¶47); "eliminated" "relevant ESI" backups he deemed "not necessary and redundant" (IV-ER-586:¶46); and "closed" his invst4u@cox.net email account. (IV-ER-587-588:¶51.)

---

[11] Burris (briefly) deemed one screenshot exhibit privileged, but ultimately waived this objection by testifying about the exhibit's contents and consenting to its public filing. (*See* IV-ER-672:10-673:25; V-ER-1096; SER-054:¶3-5, SER-061.)

Elsewhere, Burris's opposition was rife with falsehoods:

- Burris argued his use of BleachBit was "**space saving** and performance enhancing." (IV-ER-561, 579:¶27.) Yet, BleachBit's Chaff, by design, generates **space-filling** gibberish to hide data. (IV-ER-1144, 1179.)

- Burris denied keeping potentially relevant ESI on his phones. (IV-ER-588:¶52.) Yet, the record shows Burris: reset his iPhones to prevent discovery of "client data" (IV-ER-641:24-642:4); used them to record JPMorgan meetings purportedly central to his case (IV-ER-672:10-673:13, 679:3-680:1; V-ER-1103-1108); and used them to text potential witnesses (*see* IV-ER-583¶40; V-ER-1089-1096.)

- Burris blamed his family and service providers for factory resetting his iPhones. (IV-ER-585:¶¶45, 52.) However, he testified earlier that he alone handled the factory resets. (IV-ER-641:18-642:9, 686:3-11; 801:6-16.)

- Burris claimed he "relie[d] on lawyers to produce ESI" (IV-ER-569), contradicting his earlier sworn testimony that he alone accessed his electronic media, decided what was relevant, and then gave it to his attorneys. (IV-ER-684:2—685:20, 686:12-19, 794:10-16, 807:11-19; SER-049:18-050:25.)

- Burris claimed he deleted files that hit on relevant search terms from a Dell laptop on December 7, 2020 (the day he produced it) to "allow [his] wife to have her files on her MacBook[.]" (IV-ER-584¶43.) Yet, Burris's own invoice proved the new MacBook actually shipped several weeks later. (IV-ER-601.)

- Burris tried to claim credit for producing 121,516 pages of ESI by the 2014 FINRA arbitration. (IV-ER-568.) In reality, the forensic examination recovered this volume. (V-ER-894:¶68—895:¶73.)

- Burris claimed he "back[ed] up everything." (IV-ER-577:¶¶19-20.) The record shows he did not, and the few "backups" and "screenshots" that survived Burris's destruction were incomplete and missing key data. (V-ER-897:¶80-898:¶83, 899:¶88-901:¶97; VI-ER-1175.)

- Burris admitted he "eliminate[d]" or "'dedup[ed],' duplicative backup ESI, including relevant ESI." (IV-ER-582:¶37.) Yet, deleting data in this

manner violated the Forensic Order too. (*Compare* VI-ER-1213:¶8.5 (order prohibiting deduplication except by exact hash value matching and requiring preservation of deduplicated metadata) *with* IV-ER-689:2-691:6 (Burris admission to deleting relevant ESI without checking hash values or preserving purportedly deduplicated data).)

The district court acknowledged and properly rejected Burris's "almost laughable"

arguments. (*See* I-ER-38-39, I-ER-49.)

> **10.** **Burris "decide[s] not to file" an exhibit until after his court-ordered deadline, and then tries to block the expert from reviewing it**.

Nearly two weeks after his deadline to oppose, on August 15, 2021, Burris

sought leave to file a proposed "Table 1" exhibit thereto, in which he claimed he

located copies of his Recycle Bin files (and nothing else). (III-ER-443.) Burris's

then-lead counsel admitted Burris had Table 1 available on the August 3 deadline,

but "decided it was better not to file" so they could keep refining it. (III-ER-401:¶5.) JPMorgan opposed Burris's motion. (III-ER-383.)

Two days later, on August 17, 2021, JPMorgan filed its reply in support of

dismissal. (III-ER-349.) Still, JPMorgan asked the court's expert whether Burris's

proposed Table 1 made any difference to the findings in the Forensic Report. (III-ER-297:3-13.) Inexplicably, Burris objected to letting the court's expert even

review it, purporting to dictate he "may not do so on any basis other than" as a

"consulting expert witness" for JPMorgan. (III-ER-297:14-18.) Regardless, the

court-appointed expert reviewed Table 1 and, on August 18, 2021, issued a

"Second Memorandum of Findings" (the "Second Report"), stating that Table 1 did not materially change his prior findings or conclusions. (III-ER-315-316.)

> **11. The district court rightly denies Burris's request after the close of sanctions briefing to re-classify and depose the court's expert because it was "out-of-time" and conditioned on events that never occurred**.

On August 26, 2021, the parties raised a discovery dispute regarding whether Burris could, over JPMorgan's opposition, unilaterally re-classify the independent court-appointed expert as "a consulting expert for JPMC" and then depose him as such. (III-ER-306-313.) Burris never, as he falsely represents on appeal, invoked Rule 706 or otherwise requested to depose the court's expert about its April 2021 Forensic Report and qualifications. Rather, Burris tried to upend the Forensic Order and CMO after his deadlines expired and sanctions briefing closed to re-classify Peak as a party expert and then depose Peak about the Second Report only. (*Id.*)

In the hearing that followed, Burris's then-counsel conceded his request was "out-of-time" (III-ER-285:18-19) and conditioned on whether the expert's Second Report, and by extension proposed Table 1, were admitted into evidence:

> [I]f this Peak [Second Report], what I call an ultra vires report, is not admissible in any matter before you … I would happily not take the deposition. I only want to take this deposition if this report is going to get into – into the record.

(III-ER-284:25—285:5.) Burris's then-counsel confirmed that Burris had no "real

problem" and was "happy" with the expert's April 2021 findings (III-ER-277:14-20, 282:22-24), and had "no problem at all conceding that he's an officer of the court up until he did the Forensic Report." (III-ER-280:7-12.)

After twice clarifying that Burris's untimely request was limited to and conditioned upon the admission of the expert's Second Report, and by extension proposed Table 1, and that neither the Second Report nor Table 1 were properly before the court, (III-ER-283:7-285:6, 300:12-302:17), the district court denied Burris's request. (*See* III-ER-304:16.) The court nonetheless encouraged Burris to email its expert any questions, which is what JPMorgan did, and to notify the court whether Burris still believed any report "needs to be provided under oath." (III-ER-302:18—303:4.) Burris never did.

### 12. The district court dismisses Burris's case, and the parties move to extend JPMorgan's deadline to seek fees and costs.

On October 7, 2021, the district court entered the Dismissal Order, denying Burris's motion for leave to file Table 1 and granting JPMorgan's motion for case-terminating sanctions. (I-ER-24-54.) On October 21, 2021, the parties jointly sought, and the district court granted, an extension of JPMorgan's deadline to file for fees and costs to let the parties discuss resolution that would have obviated JPMorgan's need to seek recovery of its fees and costs. (II-ER-176:¶2-177:¶5; VI-ER-1299; SER-018-019.)

On November 2, 2021, Burris filed a notice of appeal *pro se* from the Dismissal Order. (VI-ER-1283; SER-009.)  Burris's then-counsel withdrew. (SER-006.)

### 13.   The district court orders Burris to reimburse JPMorgan's fees and costs caused by his bad faith.

After a second unopposed extension (SER-013-014), on November 18, 2021, JPMorgan filed a motion for attorneys' fees pursuant to Rule 37 and the court's inherent authority, limiting its request to only fees caused by Burris's bad faith.  (I-ER-160-242.)  JPMorgan separately filed a Bill of Costs, requesting certain deposition and forensic examination costs be taxed against Burris.  (II-ER-243-269.)

Burris opposed JPMorgan's motion for fees (II-ER-117-130) and partially objected to the Bill of Costs. (II-ER-105-110.) JPMorgan replied. (II-ER-91-102.)

On February 18, 2022, the district court clerk taxed $29,210.50 in costs against Burris.  (I-ER-21-22.)  JPMorgan timely moved to modify the clerk's judgment to add costs erroneously excluded.  (II-ER-81-90.)  Burris neither appealed the clerk's February 2022 judgment nor opposed JPMorgan's motion to modify it.

Proceeding cautiously, on April 11, 2022, the district court ordered supplemental briefing to clarify whether Rule 37(e) displaces both Rule 37(b) and the court's inherent authority to award attorneys' fees, and whether attorneys' fees

30

are available under Rule 37(e)(2). (II-ER-76-80.) The parties filed supplemental briefs. (II-ER-60-75.)

In its May 19, 2022 Fees Order, the district court granted both: JPMorgan's motion for attorneys' fees pursuant to its inherent authority, awarding JPMorgan $296,490.50 in fees caused by Burris's bad faith (*see* I-ER-3-15); and JPMorgan's unopposed motion to modify the Clerk's judgment on taxation of costs, adding $37,763.12 in costs to the Clerk's prior award, bringing the total taxed costs to $66,973.62. (*See* I-ER-17-20.) Burris appealed the Fees Order, and his appeals were consolidated. (Dkt. 14.)

## SUMMARY OF ARGUMENT

The district court acted well within its broad discretion in issuing its Dismissal Order and Fees Order, and this Court should affirm.

First, the district court properly dismissed Burris's Complaint as a sanction under Rule 37 upon finding that Burris acted in bad faith when he brazenly and intentionally destroyed ESI in defiance of one or more court orders, lied under oath, and engaged in other acts of deception. The court's findings rest on an ample record, including the court-appointed expert's Forensic Report, which the parties *jointly submitted*; Burris's own "damning" admissions and testimony; and hundreds of pages of declarations, documents, and metadata evidence, leading the district court to observe that because Burris:

> [E]ngaged in such extensive misconduct and deception, without any obvious contrition or awareness of the wrongfulness of his conduct, **there is a serious risk that further proceedings will continue to be plagued by a 'pattern of deception and discovery abuse [which makes] it impossible for the district court to conduct a trial with any reasonable assurance that the truth would be available**.'

(I-ER-54, emphasis added.) Given "the sheer scope of [Burris's] dishonesty and spoliation efforts" (*id.*), dismissal was warranted and lesser sanctions insufficient.

Second, the district court acted within its broad discretion in denying Burris leave to file Table 1 out-of-time. He admitted he chose to not file it on time, and he failed to show good cause for filing it late. And the record shows it would not have made a difference anyway.

32

Third, the district court acted within its discretion in awarding JPMorgan reasonable attorneys' fees caused by Burris's bad faith. This is precisely the type of discovery misconduct that should be sanctioned and deterred, no matter which rule or authority applies. The district court correctly held that, while Rule 37(e) forecloses reliance on inherent authority to enter the severe sanctions for ESI loss now reserved to Rule 37(e)(2)—*i.e.* adverse inferences and case-terminating sanctions—Rule 37(e) does *not* displace inherent authority to award attorneys' fees caused by bad faith. This decision was consistent with applicable law and well supported by "detailed records" that JPMorgan presented.

Finally, this Court should decline to review the remainder of Burris's newly claimed errors, including those related to the court's expert and taxable costs, because he waived and/or forfeited these issues. To the extent any of these issues remain reviewable for lack of waiver, the Dismissal and Fees Orders nevertheless should be affirmed because none of Burris's claimed errors constitute plain error resulting in manifest injustice.

**STANDARD OF REVIEW**

This Court reviews the district court's Dismissal Order and Fees Order under the "abuse of discretion" standard, and reviews its findings of fact for "clear error." *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 957-958 (9th Cir. 2006); *citing Anheuser-Busch, Inc. v. Nat. Bev. Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *Nat'l Hockey League,* 427 U.S. at 642. Burris omits to explain, however, (1) the high deference the abuse of discretion standard affords the district court, and (2) that issues he waived and/or forfeited in the district court can at most be reviewed (if at all) under the nearly insurmountable "plain error" standard.

A. <u>**Abuse of Discretion**</u>.

The abuse of discretion standard is neither appellant friendly nor lenient. *See Nat'l Hockey League,* 427 U.S. at 642. Under it, a district court's findings may not be reversed as clearly erroneous unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 577 (1985); *Adriana Int'l Corp. v. Theoren*, 913 F.2d 1406, 1408 (9th Cir. 1990). The reviewing court may not "substitute [its] view for that of the district court, but rather must give the district court's findings deference[.]" *U.S. v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009). Moreover, "the district court's credibility determinations are entitled to special deference." *Leon,* 464 F.3d at 958. The

34

Supreme Court cautions:

> If the district court's account of the evidence is plausible in light of
> the record viewed in its entirety, the court of appeals may not
> reverse it even though convinced … it would have weighed the
> evidence differently. Where there are two permissible views of the
> evidence, the factfinder's choice between them cannot be clearly
> erroneous.

*Anderson,* 470 U.S. at 573-74 (citations omitted).

### B.  <u>Waived Issues May Not Be Reviewed or Reversed</u>.

Only issues an appellant timely and properly preserved in the district court
may be reviewed for abuse of discretion.  *Tan Lam v. City of Los Banos,* 976 F.3d
986, 1005-1006 (9th Cir. 2020); *Jerden v. Amstutz,* 430 F.3d 1231, 1236-37 & n.1
(9th Cir. 2005); *see also* Fed. R. Evid. 103(a).  Otherwise, the general rule is "that
an appellate court will not consider issues that were not properly raised before the
district court." *Slaven v. Am. Trading Transp. Co. Inc.,* 146 F.3d 1066, 1069 (9th
Cir. 1998); *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 487 (2008).

Indeed, where an appellant waived an issue by consent or by intentional
relinquishment or abandonment, the lower court's rulings must be affirmed without
review because waiver extinguishes error.  *See id.* at 1070 ("A decree, which
appears on the record to have been rendered by consent, is always affirmed,
without considering the merits of the cause.") (citations omitted); *Crowley v.
Epicept Corp.,* 883 F.3d 739, 748 (9th Cir. 2018) ("Forfeited rights are reviewable
for plain error, while waived rights are not") (citation omitted); *U.S. v. Olano*, 507

U.S. 725, 732-733 (1993) (waiver extinguishes error).

### C.    <u>Forfeited Issues May be Reviewed Only for Plain Error</u>.

Alternatively, where an appellant forfeits an issue by failing to timely and properly assert it with the district court, this Court may choose to (but need not) review the claimed error only under the much higher "plain error" standard. *Tan Lam,* 976 F.3d at 1006; *see also* Fed. R. Evid. 103(e). First, however, the appellant bears the burden of showing an "error that is plain or obvious and that is so prejudicial that it affects the parties' substantial rights such that review is necessary to prevent a miscarriage of justice." *Id.* The appellant also "must show exceptional circumstances why the issue was not raised below." *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir. 1984). Even so, a reviewing court should not upset the lower court's decision "unless necessary to prevent manifest injustice," *id.*; that is, that "the error seriously impaired the fairness, integrity or public reputation of judicial proceedings." *C.B. v. City of Sonora,* 769 F.3d 1005, 1018-1019 (9th Cir. 2014).

## ARGUMENT

### I.    <u>The District Court Acted Within Its Discretion Dismissing Burris's Lawsuit</u>.

The district court properly acted within its discretion when it dismissed Burris's suit under Rule 37. Although Burris's Opening Brief mainly focuses on claimed evidentiary errors surrounding the court's expert, his claimed errors rest

upon misstatements of law and fact and issues he long ago waived or forfeited in the district court.  JPMorgan addresses his claimed errors in their proper context below, but first explains why the district court's Dismissal Order had ample factual and legal support, regardless of how Burris tries to recast both.

## A.    The district court acted within its discretion by dismissing Burris's suit under Fed. R. Civ. P. 37(e)(2).

As amended in 2015, Rule 37(e) provides that if ESI "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," then the court may enter sanctions.  Fed. R. Civ. P. 37(e). If "the party acted with the intent to deprive another party of the information's use in the litigation," then the court may "dismiss the action[.]"  *Id*. 37(e)(2). The standard of proof is preponderance of the evidence.  *OmniGen Research v. Yongqiang Wang,* 321 F.R.D. 367, 372 (D. Or. 2017); *Ramirez v. T&H Lemont, Inc.* 845 F.3d 772, 778 (7th Cir. 2016).

On appeal, Burris incorrectly argues that Rule 37(e)(2) required JPMorgan to prove prejudice. (*Compare* Br. 11-12 *with* IV-ER-564 ("if spoliation is willful, no prejudice need be proven").)  Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information" "because the finding of intent can support … an inference that the opposing party was prejudiced[.]"  Fed. R. Civ. P. 37, 2015 advisory committee's note.  Where a party

37

intentionally spoliates evidence and/or violates a court order, the law **presumes**

prejudice. *See* Fed. R. Civ. P. 37(e)(2)(A) (if potentially relevant ESI loss is

intentional, courts may "presume that the lost information was unfavorable to the

party"); *In re Phenylpropanolamine (PPA) Prod. Liab. Lit.*, 460 F.3d 1217, 1227-

28 (9th Cir. 2006) (courts presume prejudice from a party's willful failure to

produce documents and violation of court orders); *Anheuser-Busch.,* 69 F.3d at 354

("[i]t is appropriate to presume that where documents relevant to the merits of the

litigation have been concealed the deception casts doubt on the concealing party's

case.").[12]

### 1.     Burris willfully and irremediably destroyed ESI.

The district court correctly found, consistent with the Forensic Report, that

Burris caused massive ESI loss across an array of phones, laptops, USB drives,

email, and backups.  (I-ER-36-37; VI-ER-1163-1204.)  Burris nonetheless

contends, without record support, that the court erred in so finding.  (Br. 30-50.)

In the proceedings below, Burris disputed whether the ESI he deleted was

"relevant" and made excuses, but he did not deny, and largely *admitted*, to

_____

[12] *Accord Milke v. City of Phoenix,* 497 F.Supp.3d 442, 471 (D. Ariz. 2020)
(presuming intentionally destroyed documents were "inculpatory"), *aff'd* 20-
17210, 2022 WL 259937 (9th Cir. 2022); *OmniGen,* 321 F.R.D. at 372 (burden
shifts to spoliating party to show no prejudice resulted).

destroying ESI *even after the Court ordered him to produce it*:

- On factory resetting his iPhones, Burris cavalierly admitted it was "absolutely correct" that he "'factory reset every one of his previous iPhones.'" (IV-ER-641:18-642:24.)

- On using BleachBit and iShredder, Burris admitted to using them "for years" and that he "run[s] BleachBit on a regular basis, sometimes weekly and sometimes multiple times a day." (IV-ER-579:¶25.)

- On Chaff, Burris admitted to using it, purportedly to "protect[] sensitive client information and help[] system performance[.]" (IV-ER-579:¶27.)

- On wiping flash drives, Burris admitted "that seems right" and he "regularly wipe[s] client and personal data from a jump drive[.]" (IV-ER-578:¶23.)

- On producing a newly-purchased laptop in place of a laptop previously disclosed in his deposition, Burris testified: "I got a third computer … and made two of those computers I still had available for forensic examination" (IV-ER-582:¶35), but "the discarded laptop is by definition 'missing.'" (IV-ER-581:¶32.)

- On factory resetting his newly-purchased laptop in September and October 2020, Burris testified: "I had replaced a hard drive and it could have been about that time" (IV-ER-579:¶28; *see also* IV-ER-580:¶30; *Cf.* IV-ER-576:¶16 (denying only that he reset laptops "intentionally").)

- On factory resetting the other Dell laptop, Burris admitted he previously wiped it "[a]t some point" (IV-ER-796:22-797:13) and reset it "at or near" October 2020. (IV-ER-581:¶31.)

- On purging his invst4u@cox.net account in October 2020, Burris testified: "This account was closed for data protection reasons[.]" (IV-ER-587-588:¶51.)

- On deleting backups of that account, Burris testified: "Subsequent email backups rendered the prior email backups not necessary and redundant" (IV-ER-586:¶46), and "I eliminate … duplicate backup

ESI, including relevant ESI." (IV-ER-582:¶37.)

- On deleting files that hit on searches for potentially relevant ESI after the Forensic Order, Burris testified: "That's certainly possible," "[t]hat's absolutely right," (IV-ER-639:6-24) and "[o]f course I moved many files into the recycle bin." (IV-ER-586:¶47.)

Thus, with or without the expert, the district court's findings that Burris destroyed ESI cannot be "clear error" because the record, **including Burris's own damning admissions**, amply supported those findings. *Accord Volcan Group, Inc. v. Omnipoint Commc'ns, Inc.,* 552 F. App'x 644, 645 (9th Cir. 2014) (affirming dismissal as spoliation sanction where record supported sanction even without allegedly inadmissible evidence).

## 2. Burris destroyed potentially relevant ESI despite a duty to preserve it.

Here, as below, Burris once again admits the destruction but persists in his self-serving assertion that the ESI he destroyed is "irrelevant." (*See* Br. 34-36.) The district court did not err in rejecting that assertion. (I-ER-46-48.) First, like the plaintiff in *Leon*, Burris "did not have the authority to make unilateral decisions about what evidence was relevant in this case," and is not entitled to "any presumption of irrelevance as to the destroyed documents." 464 F.3d at 957-959. Second, the district court only needed to find Burris had "some notice that the documents were *potentially* relevant" before he destroyed them. *Id.* (emphasis in original).

40

The district court had ample grounds to find Burris destroyed potentially relevant ESI. Burris had notice of what was potentially relevant from the pleadings, initial disclosures, JPMorgan's Rule 34 requests (V-ER-916-929), deficiency letters (V-ER-945-966; SER-070-076), and ultimately, the court's Forensic Order, in which the parties jointly defined "Potentially Relevant ESI." (VI-ER-1208:¶1.2.) Nonetheless, Burris admittedly purged his devices of client data to prevent its disclosure. (*See* IV-ER-641:18-642:24, *see also* 578:¶23 579:¶25, IV-ER-587:¶51.) The district court properly found such admissions "damning," in part because "client data" was encompassed by the categories of "Potentially Relevant ESI" jointly defined by the parties and the court. (I-ER-47.) The district court cannot abuse its discretion interpreting its own orders. *See Inwood Labs., Inc. v. Ives Labs., Inc.* 456 U.S. 844, 857 (1982) ("appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because [it] 'might give the facts another construction [or] resolve the ambiguities differently"); *Griffen v. Gomez,* 741 F.3d 10, 25 (9th Cir. 2014) ("courts of appeal must defer to a district court's reasonable interpretation of its own order") (Berzon, C.J., dissenting) (collecting cases).

Further undermining Burris's "irrelevance" assertion is the fact that he was caught withholding and falsely testifying about the existence of other clearly relevant categories of ESI (I-ER-48; *compare e.g.* IV-ER-678:15-20 *with* V-ER-

898 *and* VI-ER-1110) and caught proffering pretextual excuses that did nothing to explain or justify his deletions. (I-ER-49.) Given such dissembling, the district court properly concluded that the ESI he successfully destroyed was "at a minimum, potentially relevant" if not "devastating to" his claims. (I-ER-49.) *See Anheuser-Busch,* 69 F.3d at 355 (district court "may reasonably infer" a party's "case is lacking in merit" if it "falsely den[ies] the existence of and suppress[es] information that was clearly relevant").

Nonetheless, Burris posits the district court "erred in requiring [him] to provide non-relevant highly prejudicial personal information." (Br. 33-34, *see also id.* at 15-16 and 50-52.) First, Burris waived all errors concerning the terms of the Forensic Order by **stipulating** to it. Second, the same discretion afforded the district court in interpreting its own order also entitled it to reject Burris's self-serving *post-hoc* interpretations. *See Anderson,* 470 U.S. at 573 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *accord G-K Prop. v. Redev. Agency of City of San Jose,* 577 F.2d 645, 648 (9th Cir. 1978) (affirming dismissal sanction notwithstanding disagreement concerning scope of discovery order compelling production). Third, the Forensic Order did not require Burris's disclosures about his pornography, affair, or any other "non-relevant…personal information." (*See* VI-ER-1208:¶1.2.) **Burris himself** raised those excuses when he tried

42

(unsuccessfully) to justify his data purges.  Thus, the district court properly found

*Burris* "chose to place his personal and sensitive personal information at issue."

(SER-072.)

### 3.     Burris failed to take reasonable steps to preserve ESI.

As the district court found, Burris's duty to preserve arose no later than

September 2018, when he filed suit. (I-ER-45.)  *See Apple Inc. v. Samsung Elecs.*

*Co.*, 888 F.Supp.2d 976, 991 (N.D. Cal. 2012) ("[a]s soon as a potential claim is

identified, a litigant is under a duty to preserve evidence"); *Volcan Group,* 552 F.

App'x at 645.  That duty required him to "suspend [his] routine document

retention/destruction policy and put in place a 'litigation hold' to ensure the

preservation of relevant documents."  *See Apple, supra*, quoting *Zubulake v. UBS*

*Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  On the record below, the

district court did not err in finding Burris did the exact opposite. (I-ER-50.)

*Accord DR Distrib. LLC v. 21 Century Smoking, Inc.,* 513 F.Supp.3d 839, 930-934

(N.D. Ill. 2021) (finding a party did not take reasonable steps to preserve because it

failed to implement a litigation hold, self-collected ESI without qualified

supervision, and did not cease email and text deletion practices).[13]

---

[13] JPMorgan did not "instruct[] [Burris] to delete his computer documents", as
Burris falsely contends. (Br. 30.) Burris cannot in good faith excuse purging *his*

#### 4. **The lost ESI could not be restored or replaced**.

The district court properly found the lost ESI could not be restored or replaced through additional discovery. (I-ER-50.) The forensic examination was intended to "resolve all electronic discovery disputes and to bring discovery under Rule 34 to a close." (VI-ER-1215.)[14] After an extensive forensic examination of every ESI source Burris made available, including "backups," the court-appointed expert concluded that Burris "caused Potentially Relevant ESI to be irrevocably lost from his Electronic Media." (VI-ER-1164.)

Nonetheless, Burris contends without objective support that he "backed up all of the data." (Br. 13). With or without the expert, the district court did not err in rejecting Burris's claim because "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *Lee v. Max Intern. LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011).

Indeed, Burris's claim that he backed-up "all" data is contradicted by his

---

ESI after his preservation duties triggered by pointing to a 2012 request that he return *JPMorgan's* records at the time of his termination.

[14] Burris belatedly speculates his missing ESI might be subpoenaed from third parties but, as discussed above, JPMorgan already tried that approach and Burris interfered with it too.

44

admissions above that he purged "client data" and only kept "backups" of ESI he unilaterally deemed "relevant" and not "redundant." Further, unrebutted record evidence shows Burris's surviving "backups" and "screenshots" were incomplete and missing relevant information. (V-ER-897:¶80-901:¶97; VI-ER-1171-1176.) Despite his former counsels' appropriate warnings to their client that the point of the forensic examination was to test and verify Burris's assertions (SER-121:5-20 ("It's the opposite of accepting what you say."); V-ER-889:¶43), Burris provided no verifiable evidence to corroborate his bald assertion that he backed-up everything. Given this and Burris's lies and acts of deception, the district court acted well within its discretion to find Burris not credible and his ESI irrevocably lost.

### 5. Burris acted with intent to deprive JPMorgan of his ESI.

Substantial record evidence supported the district court's finding that Burris's actions "evince an unusually clear level of intent to deprive Defendants of potentially relevant ESI." (*See* I-ER-50-51.) Direct evidence of Burris's intent included his admissions that he purged his devices of client data because he did not want *anyone* (including JPMorgan) to have it (IV-ER-641:18-25-642:4; *see also* IV-ER-639:6-24; IV-ER-578:¶23), as well as forensically-recovered screenshots and watermarks wherein he stated his desire to keep relevant evidence from JPMorgan. (V-ER-1084-1085; 1090; 1096.) The district court could have

sanctioned Burris on that evidence alone. *Accord Milke,* 497 F.Supp.3d at 478-479 (dismissing case under Rule 37(e)(2) "regardless of [other] motivation" because party admittedly destroyed and concealed ESI to prevent its use in proceedings), *aff'd* 20-17210, 2022 WL 259937 (9th Cir. 2022).

But the record here contains even more. As the district court properly found, Burris's extensive efforts to purge and obfuscate his data, the temporal proximity between his acts and key discovery events and orders, and his "lies and acts of deception during the forensic examination" all provided circumstantial, cumulative, and "compelling" proof of Burris's culpable intent. (I-ER-50-52.) *Accord Klipsch Grp., Inc. v. ePRO E-Com. Ltd.* 880 F.3d 620, 628 (2d Cir. 2018) ("district court [properly] … viewed the various means of deleting data as cumulative proof" of "willful" spoliation); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, *9 (C.D. Cal. 2020) ("Courts … consider the timing of the document loss when evaluating intent."); *Anheuser-Busch,* 69 F.3d at 355; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("fact finder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'").

### 6. Burris's bad faith warranted dismissal.

The district court had cause to impose severe sanctions once the elements of Rule 37(e)(2) were met. Nevertheless, before ordering dismissal, the district court

carefully considered the following factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. While the district court need not make explicit findings regarding each of these factors, a finding of willfulness, fault, or bad faith is required for dismissal to be proper. Additionally, the district court must consider less severe alternatives than outright dismissal.

(*See* I-ER-52-55, quoting *Leon,* 464 F.3d at 958 (cleaned up).) On appeal, Burris does not dispute the court weighed these factors, nor does he even address the court's findings on this front.

Instead, Burris posits "[t]erminating sanctions were excessive" because "[h]e was not told that backing up his ESI to other devices could result in terminating his case" and the district court instead "could have issued an evidentiary sanction" to exclude "five documents [recovered in the forensic examination] into evidence." (Br. 52-53.) Burris forfeited such arguments, however, by not raising them below, which is reason enough for this Court to reject them.

Regardless, Burris's case was not dismissed because of ESI he failed to destroy. *See Valley Eng'rs*, 158 F.3d at 1056 (party cannot escape sanctions by "[p]roducing thousands of pages, but not the most important four pages"). It was dismissed because he successfully and intentionally destroyed other ESI, violated the court's orders, and repeatedly lied and acted in bad faith. *See id.* at 1058

("Dismissal is appropriate where a 'pattern of deception and discovery abuse made it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'"); *Leon*, 464 F.3d at 958 (affirming dismissal plus fees where plaintiff deleted files and used a "wiping" program before producing a laptop for forensic examination); *Anheuser,* 69 F.3d at 348 ("dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings"); *G-K Prop.*, 577 F.2d at 647-648 ("encourag[ing]" dismissal with prejudice where "a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with court orders"), citing *Nat'l Hockey League,* 427 U.S. at 643; *accord Milke*, 497 F. Supp.3d 442 (terminating sanctions where party destroyed hardcopy files, deactivated online accounts and concealed a hard drive despite a court order), *aff'd* 2022 WL 259937 (9th Cir. 2022); *KCI USA Inc. v. Healthcare Essentials, Inc.*, 14-CV-549, 2018 WL 3196950 (BYP) (N.D. Ohio June 29, 2018) (terminating sanctions plus fees where party used iShredder and wiping programs despite court-ordered forensic examination), *aff'd* 801 F. App'x 928 (6th Cir. 2020). It is particularly abusive for a plaintiff to invoke the district court's jurisdiction and to then turn the very lawsuit he brought into a sham. This Court should affirm.

**B.    The district court acted within its discretion by determining alternatively that Burris's suit merited dismissal under Fed. R. Civ. P. 37(b).**

The district court did not rest on Rule 37(e) alone; it clarified, in the alternative, "that it also would have imposed terminating sanctions under [Rule 37(b)(2)]." (I-ER-41 n.3.)  It did not err in doing so.

"A determination that an order was disobeyed is entitled to considerable weight because a district judge is best equipped to assess the circumstances of the non-compliance." *Adriana Intern. Corp.*, 913 F.2d at 1411 (citation omitted).  Rule 37(b)(2) provides that, if a party fails to obey an order to provide or permit discovery, the court may issue further just orders, including dismissal.  Upon finding its order violated, nothing required the district court to address the standards of Rule 37(b)(2) separately from Rule 37(e) because the standards for dismissal merged, and the court's "careful consideration" of the *Leon* factors met those standards.  Notably, Burris's Opening fails to address the district court's alternate grounds for dismissal under Rule 37(b).  Burris waived all errors on this front and the Dismissal Order should be affirmed. *See Indep. Towers of Wash. v. Wash.,* 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief.").

**C. Burris's claimed errors regarding the court's expert are meritless.**

**1. Burris waived and forfeited all errors concerning the independent expert's appointment, qualifications, and Forensic Report.**

On appeal, Burris challenges the appointment, qualifications, and independence of Peak Forensics. Yet, in the district court below, Burris agreed to, and jointly moved for, the Forensic Order that authorized the court to appoint the expert; gave JPMorgan sole discretion to select the expert; stipulated to the expert's independence and qualifications; and further provided that JPMorgan initially would bear the expert costs. (V-ER-887; VI-ER-1209; SER-148-160.) Thus, Burris waived these issues, and is barred from raising them on appeal. *See Slaven,* 146 F.3d at 1069-1070; *accord Aziz v. Univ. of Colo.*, 3 F. App'x 937, 939 (10th Cir. 2001) (plaintiff waived objections to court-appointed expert's qualifications by agreeing to expert's appointment).

This Court has admonished that "[c]ounsel should not 'sandbag' *Daubert* concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a severe disadvantage." *Jerden,* 430 F.3d at 1237 (citation omitted). Where a party fails to timely object to expert evidence when submitted to the factfinder, they waive their right to appeal those issues. *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1067 (9th Cir. 1996). As this Court explained in *Fenton v. Freedman*:

> The failure of a litigant to request a ruling is a waiver of the right to raise any issue before this Court concerning admissibility. … To permit a party to challenge the admissibility of evidence on appeal, after failing to direct the trial court's attention to its failure to rule, would give the appellant an unfair advantage. By remaining silent in the trial court, he denies his opponent the opportunity to lay a better foundation or to present other competent evidence. The trial court is also deprived of the opportunity to explain its ruling or to correct its error.

748 F.2d 1358, 1360 (9th Cir. 1984). Indeed, this Court held in *Jerden* it would be improper for district courts to *exclude* expert evidence for lack of foundation based on an untimely objection. *Jerden,* 430 F.3d at 1238. This Court should reject Burris's claimed errors concerning the expert for the same reasons.

Likewise, Burris waived all evidentiary issues concerning the authenticity and admissibility of the Forensic Report by jointly filing it as an exhibit with the court (VI-ER-1158) and relying on it both in his opposition to sanctions and on appeal. (IV-ER-586:¶46; Br. 41-42.) *Accord In re Watkins*, 343 F. App'x 245, 245 (9th Cir. 2009) ("Watkins waived any objection to the admissibility of the report by offering it as an exhibit."). He even agreed the expert's findings need not be submitted in sworn form *except* "[u]pon request of the Court" (VI-ER-1214:¶10; III-ER-303-304)—which never happened.

Burris also forfeited all evidentiary objections regarding the expert and the Forensic Report by failing to timely and specifically object in his opposition brief. *See* Fed. R. Evid. 103(a); LRCiv 7.2(m)(2) ("An objection to (and any argument

51

regarding) the admissibility of evidence offered in support of…a motion must be presented in the objecting party's responsive…memorandum and not in a separate motion to strike or other separate filing."). Whether Burris "agree[d]" in his declaration with his former counsel's idle side-chatter during Burris's deposition (*see* Br. 22) does not matter and, regardless, was insufficient to raise a specific and contemporaneous objection to the jointly-filed Forensic Report or to any other evidence submitted with JPMorgan's sanctions motion. Thus, to the extent any evidentiary issues concerning the court's expert remain reviewable, they may only be reviewed for "plain error," *see* Fed. R. Evid. 103(e), of which there is none. Burris fails to argue plain error, and regardless, this Court should decline such review. Indeed, as in *Jerden, Marbled Murrelet,* and *Fenton*, the law bars Burris's after-the-fact "sandbagging."

## 2. Burris waived and forfeited all issues related to Rule 706.

Burris also waived and forfeited any deposition of the court's expert under Fed. R. Evid. 706. Rule 706(b) does not require courts to present a court-appointed expert for examination nor entitle parties to a deposition *without request*. *See Lopez v. U.S.*, 77 F.3d 477 (5th Cir. 1995) (district court did not err in accepting a court-appointed expert's opinion without presenting him for examination because appellant never asked to examine the expert). Rather, the Rule merely states the expert "may be deposed by any party[.]" Fed. R. Evid.

706(b).  Burris points to nothing in the record suggesting he invoked Rule 706.  To the contrary, when given the opportunity to identify who would be deposed before the close of sanctions briefing, Burris identified only himself and four party-retained witnesses – not the court's expert.  (VI-ER-1159-1160.)  Thus, the district court could not have erred in denying Burris a Rule 706 deposition because he never requested one in the first place.

On appeal, Burris attempts to recast his untimely request to *reclassify* Peak Forensics after the close of evidence as a Rule 706 deposition request.  (Br. 17-18, 25-27.)  This revisionism fails for multiple reasons.  First, Rule 706 is inapplicable because Burris did <u>not</u> request to depose Peak as a court-appointed expert; instead, Burris sought to *reclassify* Peak as JPMorgan's "consulting expert" and depose Peak as such under Rule 26(b)(4)(a). (III-ER-306-308.) Second, Burris represented his proposed deposition would be limited to questions about Peak's Second Report only—***not*** the Forensic Report, the expert's qualifications, or any other evidence entered before the close of sanctions briefing (with which he was "happy"). (III-ER-307:¶4; III-ER-277:14-20, 280:7-12, 282:22-24.)  Third, Burris conceded his request was "out-of-time" (III-ER-285:18-19) and conditioned on whether the

53

Second Report was admitted (III-ER-283:5-285:5)—which it was not.[15]  Fourth,

deposing the court's expert at that point would have been futile because, as

detailed above, sanctions briefing was closed and Burris's own testimony and other

record evidence proved, with or without the expert, that he intentionally destroyed

potentially relevant ESI and violated the court's orders.  Thus, the district court

neither erred nor prejudiced Burris in denying his request.

> **D.    The district court did not deny Burris due process or err in deciding the sanctions motion without an evidentiary hearing**.

This Court should reject Burris's assertions that the district court denied him

due process and erred by deciding motions without an evidentiary hearing.  (Br.

25-28.)  Burris forfeited this issue.  The district court's LRCiv 7.2(f) mandates that

"a party desiring oral argument must request it … in the title of a motion or the

response to a motion."  The district court correctly found Burris did not do so. (I-

ER-29.)  Even if Burris had properly requested a hearing, the district court's rules

allowed it to decide the motions without one.  *See* Fed. R. Civ. P. 78(b) ("By rule

or order, the court may provide for submitting and determining motions on briefs,

without oral hearings"); LRCiv 7.2(f) ("The Court may decide motions without

---

[15] Burris, not JPMorgan, filed the Second Report as a potential exhibit. (III-ER-307:¶2.)

oral argument."). The district court did not err by following its rules. *See Morrow v. Topping*, 437 F.2d 1155, 1156 (9th Cir. 1971) (adhering to local rules when granting a dismissal without a hearing neither abuses discretion nor violates due process).

Moreover, entering dismissal without hearing does not violate due process if the parties are afforded notice and "[t]he opportunity to brief the issue." *See e.g.*, *Lambright v. Ryan*, 698 F.3d. 803, 825-26 (9th Cir. 2012); *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc*., 210 F.3d 1112, 1118 (9th Cir. 2000); *Paladin Assoc., Inc. v. Montana Power Co*., 328 F.3d 1145, 1164-65 (9th Cir. 2003). Here, Burris had notice that case-terminating sanctions were being considered against him. (VI-ER-1148, 1159.) Burris had months to prepare his defense, and a full and fair opportunity to respond to JPMorgan's sanctions motion with any evidence or arguments he chose.[16] The district court carefully considered the evidence and arguments both parties presented (*see* I-ER-25-52), and rendered a decision. Under the circumstances—particularly given Burris's admissions and deceptions— the district court acted in its discretion to dismiss his case without oral hearing. *Morrow, supra*; *Cf. Anheuser*, 69 F.3d at 354-355 (affirming dismissal does not

---

[16] The district court did not, as Burris argues (Br. 17), disallow Burris from introducing his own "expert" evidence. Tellingly, *Burris chose* not to proffer evidence from his three consulting "experts." (III-ER-295:10-12; IV-ER-561.)

violate due process "where a party has lied and hidden evidence so extensively");

*Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) ("when circumstances make such

action appropriate, a District Court may dismiss a complaint [without] providing

an adversary hearing").

## II. The District Court Acted Within its Discretion by Denying Burris's Motion to File Exhibits after His Filing Deadline.

Burris argues that "the Court erred in not allowing Table 1 to be considered

after it was late filed." (Br. 20-22.) The district court's CMO set a deadline for

Burris to file his opposition, including supporting exhibits, which the court

extended to August 3, 2021. (I-ER-32.) Under Rule 16(b), this deadline could be

modified "only for good cause and with the judge's consent," with the inquiry

focusing on Burris's "diligence." *See Johnson v. Mammoth Recreations, Inc*., 975

F.2d 604, 607-608 (9th Cir. 1992). Rule 6(b)(1)(B) likewise required Burris to

show "good cause" and "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The record

shows the exact opposite.

Burris "was not diligent" and had no "excuse, much less 'good cause,' for

ignoring a deadline[.]" (I-ER-33.) The district court was correct to find that

Burris's then-counsel's health was not to blame. That attorney admitted he, his co-

counsel, and Burris "possessed a draft of Table 1 before August 3, 2021, knew the

deadline was about to expire, yet still decided against filing Table 1 in favor of

continued drafting." (I-ER-33; III-ER-401:¶5.) The district court properly rejected

Burris's assertion that he "could not have anticipated" a need to prepare Table 1 earlier. Burris had notice by April 2021 that "he would need to be prepared to address the 'recycle bin' issues by the time he responded to Defendants' sanctions motion[.]" Moreover, the CMO warned him, "[t]he Court intends to enforce [its] deadlines…the parties should plan their litigation activities accordingly." (VI-ER-1150.) Nonetheless, Burris "wait[ed] until the very end of this four-month window to begin preparing the table." (I-ER-33.) Procrastinating and intentionally disregarding an (already extended) court deadline is the opposite of diligence and excusable neglect. *Accord Spears v. City of Indianapolis*, 74 F.3d 153, 157-158 (7th Cir. 1996) (no abuse of discretion denying leave to file late exhibits because parties "are playing with fire" when they "wait until the last minute to comply with a deadline").

Regardless, Burris suffered no prejudice. The district court "reviewed the lodged exhibits" anyway but found "[if] Plaintiff had been allowed to belatedly submit the missing exhibits, the Court's ultimate conclusions [regarding sanctions] would not change." (I-ER-33-34.) Indeed, Burris acknowledged Table 1 was "redundant" of his declaration and addressed limited Recycle Bin files only (III-ER-278:14-19), not any other sweeping data losses or misconduct detailed in JPMorgan's sanctions motion. (I-ER-32; III-ER-384, 387.)

**III.** **The District Court Acted Within its Discretion by Awarding JPMorgan's Attorneys' Fees and Taxing Costs.**

    **A.** **The district court properly awarded attorneys' fees in reliance on its inherent authority.**

The Supreme Court has long held that courts possess "'inherent powers,' not conferred by rule or statute," to award "legal fees and costs incurred by the other side['s bad faith]." *Goodyear*, 581 U.S. at 107; *Chambers v. NASCO,* 501 U.S. 32, 45-46 (1991). Burris misconstrues the law when he argues "the District Court cannot use its inherent authority to award fees [because] Rule 37(e) provides the specific – and sole – basis to sanction a party for failing to preserve ESI." (Br. 61.) This is wrong. As the district court found (I-ER-11-13), case law suggests the opposite, as does the language and history of Rule 37(e).

In *Chambers,* the Supreme Court examined whether "the various sanctioning provisions in the Federal Rules of Civil Procedure reflect a legislative intent to displace the inherent power [to award fees caused by bad faith]." 501 U.S. at 42. The Supreme Court found "no basis for holding that the sanctioning scheme of the [Civil Rules] displaces the inherent power to impose sanctions for bad faith" and "[a]t the very least, the inherent power must continue to exist to fill in the interstices." *Id.* Though "inherent power … can be limited by statute and rule," *Chambers* found that where a rule "says nothing about a court's power to assess fees against a party," "the inherent power of a court can be invoked even if

58

procedural rules exist which sanction the same conduct." *Id.* at 47, 49. Moreover, where a party's "conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address," inherent authority is properly invoked because "requiring a court first to apply Rules … to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct … is contrary to the aim of the Rules themselves." *Id.* at 50-51.

Critically, Rule 37(e) says nothing about fees. Instead, Rule 37(e)'s displacement effect can be traced to and is based entirely on its Advisory Notes, which state Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used. … It applies only when [ESI] is lost." Fed. R. Civ. P. 37, 2015 advisory committee's note. Thus, Rule 37(e) does not displace inherent authority (or other Rules) to address misconduct beyond ESI loss, such as violations of court orders, perjury, witness tampering, fabrication of evidence, and attempted evidence destruction. *See CrossFit, Inc. v. Nat'l Strength and Cond. Assoc.*, No. 14-CV-1191(JLS), 2019 WL 6527951 *17-18 (S.D.Cal. Dec. 4, 2019). Additionally, Rule 37(e) does not displace *all* inherent authority with respect to ESI loss, but only as to "certain measures"—*i.e.*, adverse inferences

and case-terminating sanctions now reserved to Rule 37(e)(2).[17]  As the Notes explain, before the 2015 amendments, some courts found inherent powers authorized adverse inference (or stronger) sanctions for ESI loss upon a "finding of negligence or gross negligence."  *Id.*  Rule 37(e) was amended to reject those cases and "provide a uniform standard in federal court for the use of these serious measures."  *Id.*  The Notes caution that Rule 37(e) did not foreclose all measures previously available.  Rather, "[t]he better rule" is "to preserve a broad range of measures to cure prejudice caused by [ESI] loss, but to limit the most severe measures to instances of intentional loss or destruction." *Id.*[18]

The foregoing limited displacement analysis is consistent with this Court's *Newberry v. County of San Bernardino* decision,[19] and it harmonizes the developing case law across the country regarding the intersection of Rule 37(e) and

---

[17] If the Advisory Notes were interpreted to foreclose *all* measures under inherent authority when ESI is lost, then the clause "when certain measures should be used" would be rendered superfluous.  Such an interpretation would violate the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute."  *Liu v. S.E.C.*, 140 S.Ct. 1936, 1948 (2020).

[18] The Committee's desire to restrict severe sanctions for ESI loss, but not affect other measures, explains why Rule 37(e)(2) is prefaced "only…," whereas Rule 37(e)(1) is not.

[19] In *Newberry,* this Court reiterated the Advisory Notes that "Rule 37(e) 'therefore foreclose[d] reliance on inherent authority' to determine whether terminating sanctions were appropriate."  750 F. App'x 534, 537 (9th Cir. 2018).

other sanctioning authorities, particularly where, as here, ESI loss is intertwined with other forms of bad faith. *See e.g.*, *CrossFit,* 2019 WL 6527951 *17-26 (granting case-terminating sanctions and awarding fees pursuant to Rule 37(e) and inherent authority); *Rossbach v. Montefiore Med. Ctr.,* 2021 WL 3421569 *5-10 (S.D.N.Y. Aug. 5, 2021) (same); *Williams v. Am. Coll. of Educ., Inc.*, No. 16-C-11746(GSF), 2019 WL 4412801 *10-17, (N.D. Ill. Sept. 16, 2019) (same); *Klipsch Grp.,* 880 F.3d at 632-635 (affirming fee award under inherent authority whether or not Rule 37(e) applied); *see also* Hon. James C. Francis IV & Eric P. Mandel, *Limits on Limiting Inherent Authority: Rule 37(e) and the Power to Sanction*, 17 Sedona Conf. J. 613, 643-667 (2016).

As the foregoing also demonstrates, Burris's bald assertion (Br. 58) that "it is the law" that courts cannot both grant case-terminating sanctions and award fees is wrong. *See also Leon,* 464 F.3d at 961. The Advisory Notes indicate Rule 37(e)(2)'s listed sanctions are not exclusive of others because "[t]he remedy should fit the wrong."[20] While adverse inferences and case-terminating sanctions ameliorate evidentiary prejudice, only monetary awards ameliorate economic

---

[20] Thus, the "or" in Rule 37(e), like the "or" separating Rule 37(b)(2)(A)'s subdivisions, is an inclusive disjunction. *See* https://www.merriam-webster.com/dictionary/or *and* https://www.merriam-webster.com/dictionary/inclusive%20disjunction (accessed Nov. 30, 2022).

prejudice. *CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 501-502 (S.D.N.Y. 2016). Thus, awarding fees in addition to Rule 37(e)(2)'s severe sanctions "satisfies the dictates of Rule 37(e)(2) and the principles of inherent authority," *id.*, so long as the award reimburses only expenses caused by bad faith. *Goodyear,* 581 U.S. at 107; *Crossfit,* 2019 WL 6527951 at \*21-24.

### B. The district court properly awarded only fees caused by Burris's bad faith.

Burris mistakenly argues that JPMorgan's "fees requested are not reasonable" and JPMorgan "failed to meet its burden to support its request for attorneys' fees [because t]here is no mention of the lodestar factors required by Kerr[.]"  (Br. 62-64, *citing Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975).)

First, Burris misconstrues the law.  The "lodestar" amount, *i.e.* "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the modern test for a presumptively reasonable fee award.  *Lytle v. Carl*, 832 F.3d 978, 988 (9th Cir. 2004).  In contrast, *Kerr* factors are what courts "may" consider if, "in [their] discretion," they find it necessary to adjust the award from the lodestar amount.  *Id.*  Here, *Kerr* was inapplicable because JPMorgan sought *and the district court granted* only the lodestar amount, without adjustments.

Second, JPMorgan's fees motion tracked LRCiv 54.2 (II-ER-164 n.2), and "[t]he Rule 54.2 factors are almost identical to the factors set forth in *Kerr*[.]"

62

*Bjordahl v. Qwest Comms. Int'l. Inc.*, No. 2:09-cv-0776-HRH, 2010 WL 11570515 *5 (D. Ariz. 2010); *compare Kerr,* 526 F.2d at 70 *with* LRCiv 54.2(c)(3). The district court also properly found JPMorgan provided "detailed records" demonstrating the reasonableness of their fee rates, the work performed, the hours expended, and that Burris's bad faith caused such fees. (I-ER-14-15; *see generally* II-ER-179-242.)

Finally, Burris argues the district court erred by awarding fees "beyond … the sanctions motion" and outside a "relevant time period." (Br. 64-67.) *Goodyear* rejected these arguments*,* however, because the standard is not of "temporal" limitations or "a deposition here, a motion there," but rather a **causal** standard; that is, courts may award all fees caused by, and that would not have been incurred, "but for" a party's bad faith. 581 U.S. at 110-113. Thus, the district court acted within its discretion to award JPMorgan's fees "in one fell swoop" because they "would not have been incurred but for [Plaintiff's] misconduct." (I-ER-15, quoting *Goodyear, supra.*)

### C.     The district court had jurisdiction to award fees.

Burris wrongly argues the district court lacked jurisdiction to award fees after dismissing his case. (Br. 55-57.) First, district courts retain jurisdiction to award attorneys' fees after a notice of appeal has been filed from a final judgment dismissing a case. *See League of Women Voters of Cal. v. F.C.C.*, 751 F.2d 986,

990 (9th Cir. 1985); *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983); *accord Harkey v. Beutler*, 817 F. App'x 389 (9th Cir. 2020) (affirming fee order entered after dismissal where "same bad faith conduct that motivated the Court to impose the harsh sanction of dismissal is the same conduct that warrants the award of fees and costs"). Second, Burris waived this argument by agreeing to the bifurcation briefing sequence, and by further agreeing JPMorgan could seek recovery of its expenses and case-terminating sanctions (VI-ER-1159; SER-018-019; VI-ER-1213-1214:¶9.) Third, Burris cannot manufacture issues for appeal through false representations of record. *Compare* Br. 56 (falsely representing "JPMC specifically stated that it may seek fees as an alternative sanction should the Court decline to impose terminating sanctions") *with* IV-ER-706 n.11 ("Defendants will submit a bill of reasonable costs and fees if the Court grants the [sanctions] motion.") *and* IV-ER-710 n.13 (requesting relief beyond Rule 37 under inherent authority); *compare also* Br. 56-57 (falsely representing the district court "declined to impose [fees]" and "did not leave the door open for JPMC to file a motion for attorneys' fees") *with* I-ER-10 ("the Court's October 7, 2021 order did not deny a request for attorneys' fees…") *and* VI-ER-1299 at Docs. 113, 116 (granting two motions to extend deadlines to file for fees post-dismissal).

### D. Burris waived all issues concerning taxable costs.

Burris presents no argument regarding taxable costs on appeal and thus

waived challenges to them. *Indep. Towers,* 350 F.3d at 929.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's

orders.

Date: January 20, 2023

Respectfully submitted,
SNELL & WILMER L.L.P.

*s/ Marian Zapata-Rossa*

Marian Zapata-Rossa (Arizona Bar
032021)
Andrew Jacobs (Arizona Bar 021146)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, AZ 85004-2202
Tel: (602) 382-6000
Email: mzapata-rossa@swlaw.com;
ajacobs@swlaw.com

Michael N. Ungar (Ohio Bar 0016989)
Brad A. Sobolewski (Ohio Bar 0072835)
Michael D. Hoenig (Ohio Bar 0093237)
J. Matthew Linehan (Ohio Bar 0085286)
ULMER & BERNE, LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1406
Tel: (216) 583-7000
Email: mungar@ulmer.com;
bsobolewski@ulmer.com;
mhoenig@ulmer.com;
mlinehan@ulmer.com

*Attorneys for Defendants-Appellees J.P.
Morgan Chase & Co. and J.P. Morgan
Securities, LLC*

65

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s):**     Consolidated Appeal Nos. 21-16852 / 22-15775

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/ Marian Zapata-Rossa_____ **Date:** January 20, 2023
*(use "s/[typed name]" to sign electronically filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s):**     Consolidated Appeal Nos. 21-16852 / 22-15775

I am the attorney or self-represented party.

**This brief contains 13,994 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
    Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ Marian Zapata-Rossa*_____ **Date:** January 20, 2023
*(use "s/[typed name]" to sign electronically filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellees'

Answering Brief with the Clerk of the Court for the United States Court of Appeals

for the Ninth Circuit by using the appellate CM/ECF system on January 20, 2023.

I further certify that all participants in the case are registered CM/ECF Users and

that service will be accomplished by the appellate CM/ECF system.

DATED this 20th day of January, 2023.

*s/ Marian Zapata-Rossa*

*Attorney for Defendants-Appellees J.P.*
*Morgan Chase & Co. and J.P. Morgan*
*Securities, LLC*