Case No.  21-16852
Consolidated with
Case No. 22-15775

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Johnny Burris,

        Appellant,

   vs.

JP Morgan Chase & Company, et al.

        Respondent

No. 21-16852/22-15775

USDC AZ Case No. CV-18-03012

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

## APPELLANT'S CONSOLIDATED REPLY BRIEF
_____

**FOR THE APPELLANT:**
Kevin Mirch SBN 106973
Marie Mirch SBN 200833
1180 Rosecrans Street #104-552
San Diego, CA 92106
(619) 501-6220

# TABLE OF CONTENTS

I     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II    ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     a.    The District Court erred in granting terminating sanctions pursuant to FRCP 37(e)(2)  against Burris . . . . . . . . . . . . . . . . . . . 6

          1.    Burris did not "willfully and irremediably destroy ESI" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.    Burris did not waive the evidentiary requirement for the District Court to consider the forensic expert report.  . . . . . . 8

          3.    The District Court had no basis to rule that the ESI could not be restored or replaced.  . . . . . . . . . . . . . . . . . . . . 13

          4.    Burris' intent or bad faith are not enough to warrant dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     b.    Dismissal under FRCP 37(b) is not properly before this Court . . . . 14

     c.    The district court  did not have discretion to ignore the law to achieve dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

d.     Excusable neglect for late filed documents . . . . . . . . . . . . . . . . . . . . 17

VII     APPEAL OF ORDER AWARDING FEES AND COSTS . . . . . . . . . . . . . 17

     a.     There was not basis to add monetary sanctions against Burris . . . . 17

          1.     The district court  did not have jurisdiction to impose fees as further sanctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          2.     Fees were not available under FRCP 37(e). . . . . . . . . . . . . . 20

          3.     The district court did not have inherent authority to award fees for a FRCP 37(b)(2) violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     b.     The fees requested are not reasonable . . . . . . . . . . . . . . . . . . . . . . . . 23

VIII     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF E-SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## <u>CASES:</u>

<u>Allison v. McGhan Med. Corp.</u>,184 F.3d 1300, 1311 n. 10 (11th Cir. 1999) . . . 13

<u>Anderson v. Armour</u>, 2021 WL 5985014, at *1 (9th Cir. 2021) . . . . . . . . . . . . 5, 6

<u>Best Label Co. v. Custom Label & Decal, LLC</u>, No. 19-CV-03051-SI (VKD), 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Broadous v. Target Corp.</u>, 2023 WL 417900, at *2 (9th Cir. 2023) . . . . . . . . . . . 5

<u>Burris v. JPMorgan Chase & Co.</u>, 2021 WL 4627312, (D. Ariz. Oct. 7, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Chabrowski v. Litwin</u> (D. Ariz., Apr. 16, 2019, No. CV-16-03766-PHX-DLR) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Committee for Idaho's High Desert v. Yost</u>, 92 F.3d 814, 824 (9th Cir. 1996) . . 17

<u>Compass Bank v. Morris Cerullo World Evangelism</u>, 104 F.Supp.3d 1040, 105253 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Dish Network L.L.C. v. Jadoo TV, Inc.</u>, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *2 (N.D. Cal. Oct. 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Eacret v. Crunch, LLC</u>, No. 18-CV-04374-JST-RMI, 2022 WL 4466718, at *2 n.2 (N.D. Cal. Sept. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Est. of Bosco by & Through Kozar v. Cnty. of Sonoma</u>, No. 20-CV-04859-CRB, 2022 WL 16927796, at *6 (N.D. Cal. Nov. 14, 2022) . . . . . . . . . . . . . . . . . . . . . 21

Globaltranz Enters. v. Pinnacle Logistics Grp. (D. Ariz., June 1, 2023, No. CV-22-00545-PHX-JAT) [pp. 2-4] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hall v. Baxter Healthcare Corp.,947 F. Supp. 1387, 1392 n. 8 (D. Or. 1996) . . . 13

hiQ Labs, Inc. v. LinkedIn Corp., No. 17-CV-03301-EMC, 2022 WL 18399982, at *19 (N.D. Cal. Nov. 4, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Howard v. Walker, 406 F.3d 114, 128 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 16

In re Joint Eastern and Southern Dist. Asbestos Litig., 151 F.R.D. 540, 545 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Newberry v. Cnty. of San Bernardino, 750 Fed.Appx. 534, 537 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . 5

United States v. McConney, 728 F.2d 1195 (9th Cir. 1984) . . . . . . . . . . . . . . . . . 5

Waymo LLC v. Uber Techs., Inc., No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wisk Aero LLC v. Archer Aviation Inc. N.D. Cal. 3:21-cv-02450, (Feb. 27, 2023) 21

**STATUTES:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**OTHER:**

Fed. R. Civ. P. 6(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 37(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15,19

Fed. R. Civ. P. 37(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,15,17,18,19,21

Fed. R. Civ. P. 37(e)(2) ............................................... 1,6,20

Fed. R. Civ. P. 52 (a)(5) ............................................... 13

Fed. R. Evid. 603. ...................................................... 15

Fed. R. Evid. 702 ................................................ 12, 13, 15

Fed. R. Evid. 703 ...................................................... 15

Fed. R. Evid. 705 .................................................... 12,13

Fed. R. Evid. 706 ...................................................... 13

Fed. R. Evid. 706(b) ................................................... 12

Fed. R. Evid. 706(c) ................................................... 15

Wright Miller, 29 Fed. Prac. Proc. Evid. § 6303 ......................... 13

# I

## INTRODUCTION

This appeal seeks to reverse the draconian sanctions imposed upon the Appellant Johnny Burris "Burris". The district court imposed the most severe discovery sanction available- dismissal- for alleged spoilation of evidence. I ER 24. In doing so, the district court adopted a court- appointed forensic expert's report. Id. The district court should not have considered, let alone adopt, the forensic expert's report because it was not admissible evidence. The report was not signed under oath nor authenticated in compliance with Fed. R. Evid. 901(a). II- ER- 275-305,306-309. The Court refused to allow Burris to question the expert under oath, and on October 7, 2021, dismissed Burris' case as a discovery sanction under FRCP 37(e)(2). Burris filed a Notice of Appeal on November 2, 2021. VI-ER-1283.

JPMC was still not satisfied, and after jurisdiction of the discovery sanction order was assumed by this Court, JPMC filed a second motion for monetary discovery sanctions pursuant to FRCP 37(b)(2). II ER 160. The district court granted the motion and awarded JPMC $296,490.50 as an additional discovery sanction. I ER 20. These sanctions violated due process, did not follow the Federal Rules of Evidence and are not supported by the record.

1

## II

## ISSUES

In his Opening Brief, Burris defined the four issues for appeal. In the Answering Brief, JPMC presents three of the four issues, but adds a commentary on each:

> A. Did the district court act within its discretion when it dismissed Burris's claims as a sanction under Rule 37 where Burris intentionally destroyed potentially relevant ESI, violated one or more court orders, was "caught red-handed in a series of other lies and acts of deception," and acted in bad faith?
>
> B. Did the district court act within its discretion by denying Burris leave to file an exhibit to his sanctions briefing late—after the deadline for filing his sanctions brief—where Burris already chose not to file the exhibit before a previously-extended court-ordered deadline, and where the district court found that the exhibit would not have changed its ruling on sanctions?
>
> C. Did the district court act within its discretion when it exercised its inherent authority to award JP Morgan its reasonable attorneys' fees caused by Burris's bad faith?

Notably, JMPC ignores the second issue of "Whether the district court denied Burris due process and err in adopting the Findings of Fact contained within the unauthenticated unsworn Memorandum of Findings from the Independent Forensics Expert" which Burris believes to be the strongest issue against the dismissal order.

///

///

///

2

### III

### STATEMENT OF THE CASE

Each party has included its version of the statement of the case, which need not be repeated here. Frankly, the history of the prior litigations (SEC, FINRA and OSHA) and the facts related to Burris' employment at JPMC and alleged whistle blowing are not decisive in this appeal. The parties also differ on Burris' conduct. The district court decided the dispute against Burris and adopted the findings of the inadmissible forensic expert report. I ER24.

As noted in the Opening Brief, initially the court's forensic expert did not opine as to whether the computer files were "retrievable". *Opening Br. p.*4. The expert then supplemented his opinion, but only after JPMC solicited an "irrevocably lost" opinion. III-ER-734-774 (Doc 78-21), (SER-106-118). In his April 2021 Forensic Report, the court's independent expert detailed his findings and concluded, "to a reasonable degree of scientific certainty, that Mr. Burris caused Potentially Relevant ESI to be irrevocably lost." (VI-ER-1164). This statement addresses the element of "replaceability" which the district court discussed and adopted from the forensic expert's opinion at page 27 of its Order. I ER 49. Because the expert's opinion was not made under oath nor authenticated, Burris asked to question him under oath. The district court denied the request and ultimately adopted its expert's

Report findings of fact and imposed terminating sanctions. III-ER-275-305,306-309

(Doc. 109) Transcript of Discovery Hearing, (Doc. 101 Joint Statement of Discovery

Dispute), 1-ER-24-55 (Doc 110 Order).

While the dismissal order was on appeal, JPMC filed a second motion for

monetary discovery sanctions (i.e. fees). II ER 160. The district court thereby

imposed additional discovery sanctions in the amount of $296,490.50. I ER 20.

## IV

## SUMMARY OF ARGUMENT

The district court abused its discretion by accepting and adopting as Findings

of Fact the forensics expert's inadmissable report, without affording Burris his right

to examine the expert under oath. Burris did not waive this argument. The district

court further abused its discretion by acting beyond its jurisdiction when it imposed

monetary discovery sanctions when the case was on appeal. Even if the district court

had jurisdiction, the amount of fees went well beyond those incurred for the discovery

abuse.

## V

## STANDARD OF REVIEW

The parties agree that the abuse of discretion standard of review applies to the

issues presented in this appeal. However, when the district court applies the

incorrect legal rule or its application of the law without support in the record, reversal is necessary . United States v. Hinkson,585 F.3d 1247, 1262 (9th Cir. 2009). The district court's selection of the applicable legal standards is reviewable de novo. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984).

The Arizona district court recently analyzed the appropriate legal standard for spoliation of evidence and acknowledged that FRCP 37(e) does not allow the court to rely on inherent authority to determine whether sanctions are appropriate

> Under Rule 37(e) sanctions may be appropriate where ESI "that should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ P. 37(e). If the Court finds that the loss of the ESI prejudiced the moving party, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ P. 37(e)(1). Separately, where the despoiling party "acted with the intent to deprive" the moving party "of the information's use in the litigation," the Court may "instruct the jury that it may or must presume the information was unfavorable to the [despoiling] party."
>
> The party seeking sanctions has the "burden to affirmatively prove" these prerequisites. See Anderson v. Armour, 2021 WL 5985014, at *1 (9th Cir. 2021); see also Broadous v. Target Corp., 2023 WL 417900, at *2 (9th Cir. 2023). "The relevant standard of proof for spoliation sanctions is preponderance of the evidence." Fast, 340 F.R.D. at 335 (citing Burris v. JPMorgan Chase & Co., 2021 WL 4627312, at *11 (D. Ariz. Oct. 7, 2021); Compass Bank v. Morris Cerullo World Evangelism, 104 F.Supp.3d 1040, 105253 (S.D. Cal. 2015)).

Globaltranz Enters. v. Pinnacle Logistics Grp. (D. Ariz., June 1, 2023, No. CV-22-00545-PHX-JAT) [pp. 2-4][ emphasis added].

# VI

# ARGUMENT

### a.     The District Court erred in granting terminating sanctions pursuant to FRCP 37(e)(2)  against Burris

In its Answering Brief, JPMC argues that the district court  acted within its discretion to dismiss Burris' suit under FRCP 37(e). *Ans. Br. P 36.*   JPMC further argues that Burris' "claimed errors rest upon misstatements of law and fact and issues he long ago waived or forfeited in the district court".   *Id.*   JPMC's argument is misplaced and not consistent with the record.  For example, on page 37, JPMC states that "Burris incorrectly argues that Rule 37(e)(2) required JPMorgan to prove prejudice".  *Ans. Br. Page 37, referring to Opening Br. at pp. 11-12.*   A review of pages 11-12 of the Opening Brief contains no such argument.  Under FRCP 37(e)(2), JPMC has burden to "affirmatively prove" the prerequisites for sanctions, which includes evidence that the lost ESI cannot be replaced. <u>Anderson v. Armour,</u> supra.

JPMC acknowledges that FRCP 37(e) requires proof that the lost ESI "cannot be restored.  *Ans. Br. p. 37.*   This is an essential element that has not been proven by competent evidence.  In the present case, there is no admissible evidence that the "lost ESI" could not be restored.

///

6

1.    **Burris did not "willfully and irremediably destroy ESI**"

In the Answering Brief, JPMC asserts "the district court correctly found, consistent with the Forensic Report, that Burris caused massive ESI loss across an array of phones, laptops, USB devices, emails and backups". *Ans. Br. Page 38.* Burris has admitted that over a span of at least nine years, he has obtained a number of electronic devices and transferred or backed up the data before wiping the older ones clean. Specifically, in response to the "Updated Memorandum of Findings," Burris provided a sworn declaration explaining how the ESI was  backed up, maintained and provided to JPMC.  Burris also provided  a twenty eight page chart that showed  where each of the computer files was located. IV-ER-568-590 (Doc 88-1) Burris Declaration;  III- ER- 402-430 (Doc. 95 Burris Table).

JPMC concedes the district court relied on the expert report, but argues that there is evidence, other that the expert report, to conclude that Burris destroyed ESI. *Ans. Br. p. 40.* Destruction of ESI in itself is not dispositive.  Regardless of whether the district court found Burris destroyed ESI, which Burris disputes, there must also be proof that the ESI cannot be replaced. FRCP 37(e).   The only evidence in the record that supports this conclusion is the inadmissible Forensic Expert Report as adopted by the district court. I ER 24.

///

**2.** **Burris did not waive the evidentiary requirement for the District Court to consider the forensic expert report.**

On Page 42 of its Answering Brief, JPMC states, "Burris waived all errors concerning the terms of the Forensic Order by **stipulating** to it" [emphasis in original]. This is not an accurate statement. In the October 29, 2020 Second Addendum to Stipulated Protective Order, (which is the Order appointing the independent expert), the parties agreed and the district court ordered , "Nothing in this Order shall serve to waive any party's right to object to the admissibility of any evidence at a hearing or trial in this manner". VI ER 1216:21-22. The stipulation specifically reserved the right to object to evidence.

Moreover, Burris' counsel did raise the issue of the propriety of the unsworn Expert Report when he asked to depose him, or otherwise examine him under oath:

> MR. GUYER:
> And Table 1, of course, is the list of recycle bin documents and files that Peak Forensic and Mr. Englander found had been put in this -- into this recycle bin, and suggested that they could be found
> ....
> That all changed when the motion for sanctions was filed. And when that motion for sanctions was filed by JPMC,  they ratcheted up what the Peak report had said and made statements to the effect that none of those documents that were in the recycle bin could be found.
> ...
> But the long and the short of it was, Mr. Burris was able to track down all of those files. They had been produced,  they were -- to TERIS. TERIS, of course, is the collector, Peak is the analyzer. And all of them had been imaged and they were there. Now to some extent Table 1 is redundant, because what it really does is it sets forth the date for a

conclusion that was timely submitted. So what we had was, in our opposition we timely submitted Mr. Burris' declaration, and Mr. Burris cited in there that he had tracked down these files and explained what the files were.

So his statement in that declaration remained unrebutted.

III ER 277, 278  (Hearing Transcript at p 4 :10-25 - p. 5: 1-25)

MR. GUYER:

Now, it's important to note that, as we stated -- as I state in our position statement for this motion, is that although this is nominally an officer of the court, and we have no problem at all conceding that he's an officer of the court up until he did his final report, he's not an officer of the court afterwards where he's being asked to essentially review declarations and legal argument and factual argument, and then to render an opinion on that.

And that is that is what happened here, and that's why I said, well, I'm going to need to take his deposition if we're moving into that.

Now I had timely submitted an objection to Mr. Englander.

...

And I would note that on August 5th, 2021 because this is an important point, because JPMC says that at any time  I wanted to ask him questions that I could. And so on August 5th of 2021, when I sent this to him questioning what his authority was, then JPMC immediately sent this to him, like within 30 minutes, Mr. Englander, plaintiff's position is baseless and does not require you to respond, unquote.

And then, of course, I lay out -- I don't just say, oh, we need to take a deposition, I lay out matters as one would do with a Rule 30(b)(6), and lay out exactly what subjects that I would want to depose him on. And I'll just  reference three of them.

But the three most important ones are, number one, to detail the steps he had taken to now suddenly, which he had never said before in his previous report, what's called his question one findings in the supplemental report that I want to depose him on, is say that these were irretrievable. They're totally retrievable. So I want to know what method did he use to  make such a statement.

Secondly, he stated that -- he does not state that he actually searched for any of the other media on the documents, which is, you

have all the files there, they're all imaged by TERIS. Did you even try to? And it's obvious that he did not try to, but maybe he is going to claim that he did. He doesn't reveal that.

And then thirdly, he appears kind of obliquely to concede that Mr. Burris may well have found all of these files, but says that because file names can be the same, there's no assurance that what Mr. Burris found were the -- were the files that were listed here. And there may be some technical possibility in Windows 10 of having two identical documents with the same file name, or two of the same file name and different. That really -- that's a heavy lift, and that requires some -- that would require some testimony by him.

...

I want to do 60 minutes with this witness. And while it is true that we did not designate him ever as an expert, we never had any reason to believe we would. Again, we were happy with how he described the recycle bin in the final report that he filed with the Court. It is only after only after JPMC then sent this to him, said you don't have to respond to Guyer, and he issues this report just saying that this stuff is irretrievable, it simply has to be testimony that would need to be tested, Your Honor.

THE COURT: All right. Thank you. I have a couple questions.

...

[I]t's just not clear to me why a deposition is the tool, because it's an expensive thing, it's going to take the time -- the parties' time and resources to prepare for. It's not currently authorized under the scheduling order. Why we need to do a deposition at this point.

...

Or alternatively, if there remain disputed issues that need further exploration, why we can't address those things by having someone from Peak testify at any future evidentiary hearing as opposed to holding a deposition right now.

So I guess those are some of my concerns on why it's not clear to me that a deposition is what we need to do at this point.

MR. GUYER: All right, Your Honor. Thanks for giving me the opportunity to address that. And the fairly simple response is, if this Peak, what I call an ultra vires report, is not admissible in any matter before you, then I'm not going to face this report, I would happily not

take the deposition. I only want to take this deposition if this report is going to get into -- into the record.

THE COURT: Okay. I appreciate that. But another part of the question is, let's say it's part of the record, why is an expensive and outside the discovery schedule deposition the answer, as opposed to you propounding additional written questions to Peak that they could answer in writing, or alternatively, to the extent there's a future evidentiary hearing, having the person testify at the hearing and have the parties ask questions in that forum, which would be more efficient, I think, than holding a deposition ...

MR. GUYER:

I would say this, Your Honor, is if -- if I am going to be allowed to ask Peak questions about this, I would ask that you allow me to do it by written interrogatory. The order -- order 60 specifically states that the Court may ask Peak to submit an affidavit. And I would like to get this in sworn form, because as you say, is if you do end up holding an evidentiary hearing, I'm fine with doing the cross-examination there, and I would be fine with not doing the deposition. But I'd sure like to have -- on such a critical matter, I'd really like to have that done in sworn form.

III ER 280- 284  (Hearing transcript at pp 8: 1-25, 9: 1-25, 10:1-25, 12:1-14, 21-25, 13:1-5 .

THE COURT: (to Mr. Unger)

Another question I have. You know, I'm looking back at the order at docket number 61 that Judge Liburdi signed at the joint request of the parties that appointed the expert in the first instance, and paragraph 10, which is on page 8, talks about documentation by the expert.  The final sentence is, upon request of the Court, the expert shall provide a signed affidavit that details the steps taken of the results of any search or investigation.

...

I'm just -- I'm trying to figure out the question about whether statements by Peak need to be signed under oath like Mr. Guyer stated earlier. And I see that the supplemental report that Peak issued on August 18th, Exhibit 1, the second memorandum of findings, it's a two-page memo that's sort of Q and A form, and it's not signed.

11

I'm just trying to understand why this report was provided in this format as opposed to an affidavit format, and whether that distinction matters.

THE COURT:

I didn't mean unsigned.

MR. UNGAR:

-- is signed.

THE COURT:

I guess affidavit -- I guess implicit in affidavit is that it is signed under penalty of perjury, and this memo is signed, but --

MR. UNGAR: Yes.

THE COURT: -- I don't know if this would qualify as an affidavit.

...

MR. GUYER:

So -- however, one of the things that we -- everything in that order 61 is negotiated. And I wanted to emphasize that the Court could require Mr. Englander and Peak Forensics to submit a -- an affidavit to the Court explaining what it is he did. That's not some mere boilerplate surplusage, that's a really important thing. And one way to do that is through a deposition. And another way to do that is through -- is through interrogatories.

...

So this is somebody who -- you know, oath is there for a reason. It's a very important system in our system of justice. And I'd like to get this guy under oath.

III ER 292- 296 (Hearing transcript at pp. 19:18-25, 20:1-12, 22-25, 21:1-4, 22:18-25, 23:14-16).

Although the specific number of the applicable rule of evidence was not stated,

the requirements of FRE 702, 705, and 706(b) (right to depose independent expert)

were. This subject was discussed in at page 18 of Burris' Opening Brief:

A party is entitled to cross-examine an expert witness as to the underlying facts or bases of his conclusions. See Fed. R. Evid. 702, 705.

12

Fed.R.Evid Rule 706 requires the Court's expert to "advise the parties of the witness' findings." The Court's conduct blocked the full and meaningful development of its expert's correct findings. See In re Joint Eastern and Southern Dist. Asbestos Litig., 151 F.R.D. 540, 545 (E.D.N.Y. 1993) ("[a]ll parties are entitled to receive the fullest practicable disclosure from the 706 Panel"). Moreover, the parties have the right to depose an expert witness. Allison v. McGhan Med. Corp.,184 F.3d 1300, 1311 n. 10 (11th Cir. 1999) ("FRE 706 requires the experts . . . are subject to depositions. . . .") (citing Hall v. Baxter Healthcare Corp.,947 F. Supp. 1387, 1392 n. 8 (D. Or. 1996)); Wright Miller, 29 Fed. Prac. Proc. Evid. § 6303 ("Rule 706(a) recognizes the right to depose court-appointed experts.") The Court abused its discretion is blocking the cross examination of its expert and subsequently adopting his Report findings.

Further, FRCP 52 (a)(5) permits a party to later question the sufficiency of the evidence at any stage, whether it objected to them or not.

### 3. The District Court had no basis to rule that the ESI could not be restored or replaced.

JPMC admits that the district court relied on the court-appointed expert to conclude that Burris "caused Potentially Relevant ESI to be irrevocably lost from his Electronic Media". *Ans. Br. P 44.* This supports Burris' argument that without the expert report, there is no evidence that the ESI is not replaceable. JMPC does not address that the initial expert report did not find the ESI was not retrievable or could not be replaced. It was only after JPMC solicited this opinion that the expert added this language. As the district court noted, the Expert's Memorandum was not signed

under oath, and did not qualify as an affidavit, which JPMC agreed. III ER 293-294 (Hearing transcript pp. 20:24-25, 21:1-6).

As discussed below and in the Opening Brief, the Federal Rules of Evidence disqualify the expert report from consideration. There is no evidence, other than the expert report, that the ESI cannot be replaced. The only admissible evidence before the district court was that it could. IV ER 568 - 587 (Decl Burris at ¶¶ 1, 16, 19, 20, 21, 26, 30,32,34, 36,37,41,43,45, 46, 47). Even if the district court chose not to believe Burris, JPMC still had the burden to prove that the ESI was not replaceable. It failed to do so.

### 4.  Burris' intent or bad faith are not enough to warrant dismissal

JPMC argues that Burris' intent and bad faith warrant dismissal. *Ans. Br. pp. 45-46.* Burris disputes that he acted with intent or bad faith. Nonetheless, the district court found otherwise. I ER 24. However, this does not excuse JPMC from proving that the ESI was not replaceable. As discussed in the Opening Brief, and throughout this reply, the only evidence is the expert witness report which is not competent evidence.

### b.   Dismissal under FRCP 37(b) is not properly before this Court

JPMC argues that "The district court acted within its discretion by determining alternatively that Burris' suit merited dismissal under Fed. R. Civ. P. 37(b)". *Ans.*

*Br. P. 49*.     Dismissal under FRCP 37(b) is not an issue in this appeal because the district court did not order dismissal pursuant to FRCP 37(b). Because terminating sanctions were not imposed under FRCP 37(b)(2), it is improper to argue this on appeal. However, the rule is discussed in the attorneys' fees section of the Opening Brief. JPMC raised FRCP 37(b) as a basis to impose discovery sanctions. IV ER 714. When the district court imposed terminating sanctions Burris appealed. VI ER 1283. The district court did not have jurisdiction to revisit the subject again to impose monetary sanctions of attorneys' fee.

**c.     The district court did not have discretion to ignore the law to achieve dismissal.**

The court must make evidentiary rulings based on the rules of evidence. <u>Chabrowski v. Litwin</u> (D. Ariz., Apr. 16, 2019, No. CV-16-03766-PHX-DLR) [pp. 5]"when documents are offered into evidence the court must make evidentiary rulings based on the rules of evidence. The Federal Rules of Evidence are clear" <u>Id.</u> Experts are subject to all the Federal Rules of Evidence. For example, all witness testimony must be taken under oath. Fed. R. Evid. 603. Appointed experts must be "qualified" under Fed. R. Evid. 702 ("knowledge, skill, experience, training, or education"). Their opinions are subject to scrutiny under Fed. R. Evid. 703 (reasonable "facts and data"). A party has an absolute right to cross-examine appointed expert witnesses. See Fed. R. Evid. 706(c). The court erred in blocking its expert's deposition and/or

15

testimony at an evidentiary hearing it suggested. *See Hearing transcript quoted above.*

The Answering Brief fails to address the fact that Burris was entitled to meaningful examination under oath of the Forensic Expert. Rather, JPMC claims that Burris waived or forfeited this issue. As discussed above, Burris did not waive or abandon his right to question the Forensic Expert under oath. The district court's refusal to allow Burris to examine the expert under oath, and its ultimate adoption of the findings of the expert violated the Confrontation Clause. See Howard v. Walker, 406 F.3d 114, 128 (2d Cir. 2005). *See Opening Br. 18.*

The Court abused its discretion in ignoring the rules of evidence and law that entitled Burris to examine the expert under oath. The expert's report was not admissible and should not have been considered.

JPMC also does not dispute the ""Terminating sanctions must be supported by admissible evidence. U.S. ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 243 (S.D. Cal. 2015) (noting terminating sanctions "must be supported by some credible evidence, not implications and innuendo".)"A request for sanctions is a serious matter for all involved. The foundation for a motion for sanctions must be solid." Zimmerman AG & Cattle Co. v. Nau Country Ins. Co. (D. Mont., Aug. 1, 2019, CV 18-5-BLG-TJC) [pp. 3]." *Opening Br. p. 11.*

The Expert's Report was not admissible. Therefore the district court erred in adopting the findings of fact especially that the ESI was not retrievable.

**d.     Excusable neglect for late filed documents.**

Federal Rule of Civil Procedure 6(b)(1) allows a party to secure an extension of time to file a document after the due date for good cause.   Excusable neglect is accepted as good cause as is illness of counsel.  <u>Committee for Idaho's High Desert v. Yost</u>, 92 F.3d 814, 824 (9th Cir. 1996). JPMC files to address the four factors the court must consider when determining whether a late filing  was the result of excusable neglect.

In this case, the district court did not accept Burris' late - filed Table 1, and said it would not have made a difference anyway.  In addition to Burris' declaration, the table would have made a difference to rebut the inadmissible expert report, which should never have been considered in the first place.

## VII

## APPEAL OF ORDER AWARDING FEES AND COSTS

(Appellate Case No. 22-15775)

**a.     There was not basis to add monetary sanctions against Burris**

There is no legal basis to affirm the award of attorneys' fees.   JPMC had already sought sanctions pursuant to FRCP 37(b)(2) in its first motion for sanctions.

JPMC argues that a second discovery motion for fees was contemplated and Burris agreed to it.  This is false.  A second motion was only contemplated in the event the court did not grant terminating sanctions.

Moreover, FRCP 37(e) does not allow an award of fees, and  the district court had already imposed the most drastic sanction of dismissal, which was appealed and thus beyond the jurisdiction of the district court.

### 1. <u>The district court  did not have jurisdiction to impose fees as further sanctions</u>.

The district court  did not have jurisdiction to impose additional sanctions in the form of fees pursuant to FRCP 37(b)(2) or its inherent authority.  As discussed above and in the Opening Brief, the appeal seeks to revisit the issues raised and decided it the first motion for sanctions, which also asked for fees.  Further, the parties contemplated bifurcating the issue of lesser sanctions, including monetary sanctions for fees, only in the event JPMC's request for terminating sanctions was denied.  In the motion for sanctions, JPMC specifically stated that it may seek fees <u>as an alternative sanction</u> should the Court decline to impose terminating sanctions. That was clearly stated in the Motion for Fees at page 12 footnotes 10 and 11. Now, JPMC incorrectly  argues that Burris agreed that a separate motion for fees could be filed when terminating sanctions were already imposed.  This is simply false.

18

JPMC further agues that the district court has jurisdiction to consider a motion for fees after judgment even if the judgment is on appeal. However, this particular motion revisited the sanctions request under FRCP 37(b) that was made in the motion for sanctions. On page 12 of the motion for sanctions, JPMC stated:

> In conformance with this well-established case law, and pursuant to Rules 37(b)(2) and 37(e), <u>the Court should sanction Burris, dismiss this case with prejudice, and award Defendants their costs and attorneys' fees associated with this motion</u>.

IV-ER-706 Motion for Sanctions (Doc. 84 at 12:6-8))

This is the same issue (discovery sanctions) that was considered by the district court when it ruled on terminating sanctions. It is the same issue that was put before this Court when the order imposing terminating discovery sanctions was appealed. The district court did not have jurisdiction to alter its prior ruling on sanctions and impose additional monetary sanctions. 28 U.S.C. § 1291, also see <u>United Nat'l. Ins. Co. v. R&D Latex Corp.</u>, 242 F. 3d 1102, 1109 (9th Cir. 2001).

The Motion for Sanctions sought relief under FRCP 37(b)(2) and 37(e). III-ER -694-793 (Doc. 84). The district court considered both. I-ER-41 (Doc 110 Order page 18 note 3). JPMC does not address Burris' argument that its subsequent motion for attorneys' fees effectively sought reconsideration of this order by seeking additional sanctions in addition to the terminating sanctions that had already been imposed. In the motion for sanctions, JPMC specifically stated that it may seek fees

<u>as an alternative sanction</u> should the Court decline to impose terminating sanctions.

When Burris appealed the Order granting the Motion for Sanctions, the district court lost jurisdiction to impose additional sanctions. Nonetheless, the district court granted the motion for fees and awarded fees under FRCP 37 and its inherent authority. This altered the final order on the motion for sanctions that was on appeal and under the exclusive jurisdiction of the Court of Appeals.

### 2. <u>Fees were not available under FRCP 37(e)</u>.

There is no statutory authority for an award of fees under FRCP 37(e). In fact, all other subsections of Rule 37 allow for an award of fees. The drafters clearly did not contemplate a fee award to be available under subsection (e) of Rule 37. Because the drafters included "attorneys' fees" as a possible sanction under the other subsections of FRCP 37, and did not include it under subparagraph (e), it is clear the drafters did not intend to permit an award of attorneys fees under FRCP 37(e).

The authority to impose attorneys' fees is not included in the language of FRCP 37(e). Nonetheless, the district court exercised its inherent power and awarded fees. In the present case, because the district court had already opted to apply FRCP 37(e)(2)(C), and imposed terminating sanctions, it did not have the authority nor jurisdiction, to also impose attorneys fees under Rule 37(e)(1).

**3.** **The district court did not have inherent authority to award fees for a FRCP 37(b)(2) violation**

The district court ultimately invoked its inherent authority to impose the additional discovery sanction of an award of attorneys' fees. I-ER-13 Doc. 141- Order on Fees. The district court did not have inherent authority to award fees under FRCP 37(e). The vast majority of courts and this Court's unpublished guidance on the matter that FRCP 37(e) limits the court's discretion. See Wisk Aero LLC v. Archer Aviation Inc. (N.D. Cal., (Feb. 27, 2023), 3:21-cv-02450, *citing:*) Newberry v. Cnty. of San Bernardino, 750 Fed.Appx. 534, 537 (9th Cir. 2018) (unpublished) (first citing Fed. R. Civ. Proc. 37(e); and then citing Fed. R. Civ. Proc. 37 Advisory Committee Notes to the 2015 Amendment); Est. of Bosco by & Through Kozar v. Cnty. of Sonoma, No. 20-CV-04859-CRB, 2022 WL 16927796, at *6 (N.D. Cal. Nov. 14, 2022) (citing Newberry and the Advisory Committee Notes with approval and stating, "[a]s amended in 2015, [FRCP] 37(e) exclusively governs the remedies available for spoliation of electronically stored information" (citations omitted)); hiQ Labs, Inc. v. LinkedIn Corp., No. 17-CV-03301-EMC, 2022 WL 18399982, at *19 (N.D. Cal. Nov. 4, 2022) (stating that "[t]he Ninth Circuit has indicated that Rule 37(e) 'foreclose[s] reliance on inherent authority'" (quoting Newberry, 750 App'x at 537)); Dish Network L.L.C. v. Jadoo TV, Inc., No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *2 (N.D. Cal. Oct. 19, 2022) (noting the 2015 Amendments to FRCP

21

37(e) foreclosed sanctions under the court's inherent authority); Best Label Co. v. Custom Label & Decal, LLC, No. 19-CV-03051-SI (VKD), 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022) ("The Court concludes that Rule 37(e), as amended in 2015, displaces the Court's inherent authority to award sanctions with respect to ESI." (first citing Waymo LLC v. Uber Techs., Inc., No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018); then citing Newberry, 750 Fed.Appx. at 537; and then citing Fed. R. Civ. Proc. 37(e) Advisory Committee's Note to 2015 Amendment)); see also Eacret v. Crunch, LLC, No. 18-CV-04374-JST-RMI, 2022 WL 4466718, at *2 n.2 (N.D. Cal. Sept. 26, 2022) (analyzing sanctions for spoliation of ESI only under FRCP 37(e) without discussing inherent authority).

Pursuant to Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), the 2015 Amendment to Rule 37(e) precludes reliance on inherent authority to sanction ESI spoliation. With respect to the present case, the advisory notes commentary expressly confirms that Rule 37(e) "forecloses reliance on inherent authority . . . to determine when certain measures [including relief requested in the instant Motion] should be used [to sanction ESI spoliation]," Fed. R. Civ. P. 37 Advisory Comm.'s Note, 2015 amend., subdiv. (e). Chambers thus supports the conclusion that the Court should look exclusively to Rule 37(e) in resolving the Motion for Attorneys Fees.

22

**b.** <u>**The fees requested are not reasonable**</u>

There exists no basis for an award of fees. JPMC failed to meet its burden to support its request for attorneys' fees. The request goes far beyond what was caused by Burris' conduct in discovery that lead to the sanctions motion. The district court awarded fees that went well beyond the scope of the motion for sanctions. Burris presented the relevant time frame for assessment of fees incurred for the sanctions motion - 7.9.21-8.17.21

Defendants submit detailed fees totaling $262,984.00 covering the period of November 24, 2020 to September 30, 2021. II-ER-212- 238 See Defendant's Motion for Fees at Sobolewski Aff. Ex. 5 - Excel spreadsheet. This is well beyond the scope of the sanctions motion. All entries that do not pertain to the motion for sanctions should be stricken. Exhibit 1 to Burris' opposition to fees contained JPMC's fee spreadsheet and identified those that were sought either outside of the relevant time period or for tasks that are not related nor caused by Burris. The total amount of fees that were incurred in the relevant time period that have a causal connection to Burris is $69,258.50. *See Chart at Opening Brief page 74.*

Next, the Court must look at the remaining $69,258.50 and determine if that was reasonable. The $8053.50 "anticipation fees" should be disallowed. Fees incurred for preparing a proposed settlement agreement or drafting an anticipated

motion for summary judgment should also be disallowed. It is an abuse of discretion for the district court to award fees that do not have a causal link to the sanctions motion.

As detailed in the Opening Brief at pages 70-77, Burris should not be charged for fees for the attorney to educate himself how to do a fee motion, fees incurred in settlement negotiations and in drafting a proposed settlement. Finally, JPMC does not explain the $4378 discrepancy between Burris' computation to the total amount of fees sought.

## VIII

## CONCLUSION

For the reasons set forth above, Burris respectfully requests that this Court reverse the order of dismissal, and order the district court 's expert to appear for a formal deposition to explain under oath his Report and for an immediate trial. Additionally, Burris requests that the district court 's order awarding fees be reversed.

Respectfully submitted June 14, 2023.

BY /s/ Marie Mirch
Marie Mirch
Attorney for Appellant

24

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the reply brief is proportionately spaced, has a typeface of 14 points or more and contains 6164 words.


DATED: June 14, 2023

BY /s/ Marie Mirch
Marie Mirch
Attorney for Appellant

**CERTIFICATE OF E-SERVICE**

I hereby certify that I electronically submitted the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 14, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

        Executed on June 14, 2023 at San Diego, California.

Signature: /s/ Marie Mirch
Marie Mirch